Joanna A. Diakos (JD 7269)
Sarah P. Kenney (SK 5642)
K&L Gates LLP
599 Lexington Avenue
New York, New York  10022-6030
Email: joanna.diakos@klgates.com
        sarah.kenney@klgates.com
Phone: (212) 536-3900
Fax:    (212) 536-3901

Jeffrey B. Maletta (admitted *pro hac vice*)
Nicholas G. Terris (admitted *pro hac vice*)
1601 K Street, NW
Washington, DC 20006-1600
E-mail: jeffrey.maletta@klgates.com
        nicholas.terris@klgates.com
Phone: (202) 778-9000
Fax:    (202) 778-9100

*Counsel for Defendants Direxion Shares ETF Trust,*
*Daniel D. O'Neill, Daniel J. Byrne, Gerald E. Shanley, III,*
*John Weisser and Rafferty Asset Management, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re DIREXION SHARES ETF TRUST | Civil Action No. 1:09-CV-08011-RJH |

**DIREXION DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT.................................................................................................................3

I.      THERE ARE NO MISREPRESENTATIONS OR ACTIONABLE OMISSIONS ..........4

        A.      The Trust Repeatedly and Clearly Disclosed That the Funds Seek Only
                Daily Leveraged Investment Results ...................................................................4

        B.      Plaintiffs' Allegations That the Funds Failed to Achieve Their Daily
                Investment Objectives Are Meritless ...................................................................6

II.     PLAINTIFFS HAVE FAILED TO FILE THE REQUIRED CERTIFICATIONS .........9

III.    STATE STREET COMPELS DISMISSAL...................................................................12

IV.     PLAINTIFFS SUFFERED NO LOSSES ATTRIBUTABLE TO THE
        ALLEGED MISREPRESENTATIONS ..........................................................................13

V.      PLAINTIFFS FAIL TO ADEQUATELY ALLEGE COMPLIANCE WITH
        THE STATUTE OF LIMITATIONS ..............................................................................14

VI.     PLAINTIFFS MAY NOT PROCEED WITH CLAIMS REGARDING FUNDS
        OTHER THAN THE FINANCIAL BEAR AND ENERGY BEAR..............................17

CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

Page

American Pipe & Constr. Co. v. Utah,
    414 U.S. 538 (1974)..................................................................................16

Asher v. Unarco Material Handling, Inc.,
    596 F.3d 313 (6th Cir. 2010) ......................................................................16

Atlas Air Worldwide Holdings, Inc. Sec. Litig.,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004) .........................................................10

Bellikoff v. Eaton Vance,
    481 F.3d 110 (2d Cir. 2007) .......................................................................19

Boos v. Runyon,
    201 F.3d 178 (2d Cir. 2000) .......................................................................16

Brown v. Medtronic,
    628 F.3d 451 (8th Cir. 2010) ......................................................................14

Brown v. Option One Mortg. Corp.,
    No. C 09-5705 MHP, 2010 WL 1267774 (N.D. Cal. Apr. 1, 2010) ...................14

Charles Schwab Corp. Sec. Litig.,
    257 F.R.D. 534 (N.D. Cal. 2009) ................................................................12

Enders v. Countrywide Home Loans, Inc.,
    No. C 09-3213 SBA, 2009 WL 4018512 (N.D. Cal. Nov. 16, 2009)...................3

Fait v. Regions Fin. Corp.,
    No. 10-2311-CV, 2011 WL 3667784 (2d Cir. Aug. 23, 2011) ....................... 2, 9

Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,
    159 F.3d 723 (2d Cir. 1998) .........................................................................5

In re Bank of America Corp. Sec. Derivative and ERISA Litig.,
    Master File No. 09 MD 2058 (PKC), 2011 WL 3211472 (S.D.N.Y. July 29, 2011).......... 17

In re Bausch & Lomb, Inc., Sec. Litig.,
    941 F. Supp. 1352 (W.D.N.Y. 1996) .............................................................16

In re Chaus Sec. Litig.,
    801 F. Supp. 1257 (S.D.N.Y. 1992) .............................................................15

In re Eaton Vance Corp. Sec. Litig.,
    219 F.R.D. 38 (D. Mass. 2003)................................................................... 10

In re Eaton Vance Mutual Fund Fee Litig.,
    403 F. Supp. 2d 310 (S.D.N.Y. 2005) ........................................................ 19

In re Initial Pub. Offering,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ........................................................10

In re Lehman Bros. Sec. and ERISA Litig.,
    No. 09 MC 2017 (LAK), 2011 WL 3211364 (S.D.N.Y. July 27, 2011)............................17

In re Morgan Stanley Info. Fund Sec. Litig.,
    592 F.3d 347 (2d Cir. 2010) ...........................................................4, 5, 7

In re Morgan Stanley Mortg. Pass-Through Certificates Litig.,
    Master File No. 09 Civ. 2137 (LTS)(MHD), 2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010)
    .........................................................................................15, 16

In re N2K Sec. Litig.,
    82 F. Supp. 2d 204 (S.D.N.Y. 2000) ........................................................3

In re Noah Educational Holdings, Ltd. Sec. Litig.,
    No 08 Civ. 9203 (RJS), 2010 WL 1372709 (S.D.N.Y. March 31, 2010)...........…........…17

In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.,
    774 F. Supp. 2d 584 (S.D.N.Y. 2011) ......................................................2, 12

In re Vivendi Universal, S.A. Sec. Litig.,
    381 F. Supp. 2d 158 (S.D.N.Y. 2003) ......................................................14

In re Wachovia Equity Sec. Litig.,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ......................................................17

Kasalo v. Harris & Harris, Ltd.,
    No. 10-2755, 2011 WL 3800124 (7th Cir. Aug. 26, 2011) ....................................18

Kennecott Copper Corp. v. Curtiss-Wright Corp.,
    584 F.2d 1195 (2d Cir. 1978) .............................................................4

Lapin v. Goldman Sachs Group, Inc.,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006) ......................................................6

Lentell v. Merrill Lynch & Co.,
    396 F.3d 161 (2d Cir. 2005) .............................................................12

Levine v. AtriCure, Inc.,
   594 F. Supp. 2d 471 (S.D.N.Y. 2009) ...................................................................14

Levy v. United States Gen. Accounting Office,
   175 F.3d 254 (2d Cir. 1999) ..............................................................................16

Makarova v. United States,
   201 F.3d 110, 113 (2d Cir. 2000) ........................................................................14

McCall v Chesapeake Energy Corp.,
   No. 10 Civ. 8897 (DLC), 2011 WL 4056310 (S.D.N.Y. September 13, 2011) ...............17

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
   547 U.S. 71 (2006) ...........................................................................................11

Miller v. Fed. Land Bank of Spokane,
   587 F.2d 415 (9th Cir. 1978) ..........................................................................13

Morin v. Trupin,
   778 F. Supp. 711 (S.D.N.Y. 1991) ....................................................................16

Nelson v. County of Allegheny,
   60 F.3d 1010 (3d Cir. 1995) ...............................................................................16

N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.,
   No. 08 CIV 5310 (DAB), 2011 WL 1338195 (S.D.N.Y. Mar. 31, 2011) ..........................18

Norniella v. Kidder Peabody & Co., Inc.,
   752 F. Supp. 624 (S.D.N.Y. 1990) .......................................................................15

Olkey v. Hyperion 1999 Term Trust, Inc.,
   98 F.3d 2 (2d Cir. 1996) ...............................................................................7, 8

OSRecovery, Inc. v. One Groupe Intern. Inc.,
   354 F. Supp. 2d 357 (S.D.N.Y. 2005) ...................................................................4

Press v. Quick & Reilly, Inc.,
   218 F.3d 121 (2d Cir. 2000) ...............................................................................5

Rafton v. Rydex Series Funds,
   No. 10-Civ-01171-LHK, 2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ........................5, 12

Rafton v. Rydex Series Funds,
   No. 10-CV-01171-LHK, 2011 WL 1642588 (N.D. Cal. May 2, 2011) ........................6

Rodriguez Canet v. Morgan Stanley & Co.,
    419 F. Supp. 2d 90 (D.P.R. 2006) ................................................................15

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004) ........................................................................15

Santa Fe Indus., Inc. v. Green,
    430 U.S. 462 (1977)...................................................................................1, 7

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) ........................................................................11

Steinberg v. Ericsson LM Tel. Co.,
    No. 07 CV 9615 (RPP). 2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008)................8

Tuchman v. DSC Commc'ns Corp.,
    14 F.3d 1061 (5th Cir. 1994) .........................................................................8

Vinole v. Countrywide Home Loans, Inc.,
    571 F.3d 935 (9th Cir. 2009) ........................................................................18

White v. Melton,
    757 F. Supp. 267 (S.D.N.Y. 1991)..................................................................5

Young v. Lepone,
    305 F.3d 1 (1st Cir. 2002).............................................................................16

## STATUTES

15 U.S.C. § 77z-1 ............................................................................... *passim*

## RULES

Fed. R. Civ. P. 9(b) ............................................................................. *passim*

Fed. R. Civ. P. 15(a) ..................................................................................10

Fed. R. Civ. P. 15(c) ............................................................................*passim*

## OTHER AUTHORITIES

21B Charles Alan Wright & Kenneth W. Graham Jr., Federal Practice and Procedure: Evidence
2d § 5105 at 175 (2d ed. 2005) ........................................................................13

Adoption of Registration Form Used by Open-End Management Investment Companies, Securities Act Release No. 6479, Investment Company Act Release No. 13,436, 48 Fed. Reg. 37928 (August 22, 1983) ........................................................................... 5

Registration Form Used by Open-End Management Investment Companies, Securities Act Release No. 33-7512, Exchange Act Release No. 34-39748, 63 Fed. Reg. 13916, 13940 (March 23,1998).................................................................................................5

The Direxion defendants hereby reply to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Consolidated Class Action Complaint (filed August 15, 2011, dckt. no. 67) (hereinafter, the "Opposition" or "Opp."). Defendants' initial Memorandum in Support of their Motion to Dismiss (filed June 10, 2011, dckt. no. 65) will be referred to as the "Memorandum" or "Mem." This reply memorandum uses the same structure and defined terms as the Memorandum.

## PRELIMINARY STATEMENT

As defendants demonstrated in the Memorandum, the Funds' registration statements very clearly and prominently disclosed that the Funds do not seek to track their benchmarks for periods longer than one day. See Mem. 8-17. The Funds also plainly and repeatedly disclosed the impact that volatility could have on the Funds' investment performance. See Mem. 1-2, 9-13. The Opposition does little more than rehash the Complaint's allegations on this subject. Accordingly, except for responding to a handful of erroneous legal arguments raised in the Opposition, defendants stand on the arguments and authorities set forth in the Memorandum on this issue.

The Memorandum also demonstrated that the Funds made clear that they sought to achieve only approximate daily tracking. Any alleged failure to meet this objective to plaintiffs' satisfaction is no more than a non-actionable claim of corporate mismanagement. See Mem. 18-19; see generally Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477 (1977). Plaintiffs respond by reiterating their allegations from the Complaint that the Funds failed to disclose supposed risks that plaintiffs call "price pressure" risk, Compl. ¶ 308, "timing risk," Compl. ¶ 311, "holding period risk," or "hedging risk." Compl. ¶¶ 331-39; see Opp. 2-3, 11, 13. But use of plaintiffs' unhelpful terminology would not have furthered investor understanding and would have

duplicated the substance of disclosures already made by the Trust.  Further, plaintiffs effectively ignore that the SEC's Form N-1A only requires investment companies to disclose "principal risks" – not every conceivable risk that a plaintiff's lawyer might imagine.  Even with the benefit of hindsight, plaintiffs have failed to allege facts plausibly indicating that, as an objective matter, any of plaintiffs' so-called risks was a "principal risk."  Plaintiffs also have failed to allege subjective falsity as required by the recent decision in <u>Fait v. Regions Fin. Corp.</u>, --- F.3d ---, No. 10-2311-CV, 2011 WL 3667784, at *3 (2d Cir. Aug. 23, 2011).

For these reasons, the Complaint must be dismissed for failure to properly allege a material misstatement or omission.

Plaintiffs also fail to successfully rebut any of the multiple alternative grounds for dismissal.

<u>First</u>, plaintiffs' belated filing of additional Reform Act certifications should be rejected. The new certifications are out of time and insufficient because, among other reasons, they fail to indicate that the plaintiffs have "reviewed" and "authorized" the current, operative Complaint. <u>See</u> 15 U.S.C. § 77z-1.

<u>Second</u>, while it is evident that plaintiffs disagree with this Court's decision in <u>In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.</u>, 774 F. Supp. 2d 584 (S.D.N.Y. 2011), the Opposition offers no cogent basis for distinguishing it.  As in <u>State Street</u>, therefore, it is clear that the alleged misstatements did not cause plaintiffs any loss, and the Complaint must be dismissed.

<u>Third</u>, plaintiffs do not contest defendants' calculations demonstrating that certain plaintiffs would have lost more money from their investments in the Funds if, instead of seeking only daily leveraged investment results, the Funds had performed as plaintiffs allegedly expected.  Plaintiffs err in arguing that these calculations – which are based on nothing more

than plaintiffs' certifications, publicly available share prices, and math – may not be considered on a Rule 12(b)(6) motion to dismiss.  In any event, the calculations may bear on plaintiffs' Article III standing to pursue certain claims.

Fourth, plaintiffs are incorrect that the conclusory allegation that all putative class members "were without knowledge of the facts," Compl. ¶ 352, meets each plaintiff's obligation to plead how and when he personally learned of the alleged misstatements.  And, contrary to the Opposition, relation back does not apply where, as here, new plaintiffs simply slept on their rights and there was no "mistake" within the meaning of Fed. R. Civ. P. 15(c)(1)(C)(ii).  Further, the only claim that plaintiff Stoopler may have timely filed is one he lacks standing to bring.  Thus, plaintiffs have failed to adequately plead compliance with the statute of limitations.

Fifth, while the Opposition cites some contrary cases, the weight of recent authority in this district persuasively demonstrates that plaintiffs lack Article III standing to pursue claims concerning Funds that plaintiffs never personally owned.  Irrespective of the Article III analysis, claims regarding such Funds must be dismissed because (as plaintiffs all but concede) such claims are precluded by the Reform Act and this Court's August 12, 2010 order, dckt. no. 43.

## ARGUMENT

Plaintiffs assert, without analysis, that they need not comply with heightened pleading standards because the "gravamen of the Complaint certainly is not in fraud." Opp. 10.  However, the Complaint repeatedly asserts that defendants acted "purposely," and incorporates these allegations into the § 11 claim.  See Mem. 7 n.6.  The Complaint is therefore subject to Fed. R. Civ. P. 9(b).  See, e.g., In re N2K Sec. Litig., 82 F. Supp. 2d 204, 210 n.10 (S.D.N.Y. 2000) (Fed. R. Civ. P. 9(b) applies to a claim where plaintiff alleges defendants acted "purposely"); see also Enders v. Countrywide Home Loans, Inc., No. C 09-3213 SBA, 2009 WL 4018512, at *3

(N.D. Cal. Nov. 16, 2009) (allegations that defendants "purposely" made misrepresentations triggered Fed. R. Civ. P. 9(b)); OSRecovery, Inc. v. One Groupe Intern. Inc., 354 F. Supp. 2d 357, 379-80 (S.D.N.Y. 2005) (negligent misrepresentation claim subject to Fed. R. Civ. P. 9(b) where fraud claims were incorporated by reference).

## I.   THERE ARE NO MISREPRESENTATIONS OR ACTIONABLE OMISSIONS

The Opposition merely confirms that the Complaint consists of the type of "nit-picking" that cannot be the basis for a federal securities law claim. See Kennecott Copper Corp. v. Curtiss-Wright Corp., 584 F.2d 1195, 1200 (2d Cir. 1978).

### A.   The Trust Repeatedly and Clearly Disclosed That the Funds Seek Only Daily Leveraged Investment Results

The Trust's registration statements were extraordinarily clear that the Bear Funds did not seek to track their benchmarks for periods longer than one day. See Mem. 8-17.

Plaintiffs apparently concede that there can be no liability in this case unless the Complaint adequately pleads: (1) a material affirmative misstatement, (2) a material failure to disclose a specific item required by the SEC's Form N-1A, or (3) a failure to make a material disclosure necessary to avoid making another affirmative statement misleading. See Opp. 10, 11-12; Mem. 8-10, 15-16; In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 360-61 (2d Cir. 2010). As demonstrated in the Memorandum, plaintiffs have failed to sufficiently allege any of these bases for liability.

Plaintiffs nonetheless fault the Funds for including certain information in the SAI rather than the Prospectus. See Opp. 16 n.23. This is meritless. As defendants have previously noted, the SEC requires a mutual fund's registration statement to include both a prospectus and an SAI. See Mem. 5-6. The SEC's Form N-1A spells out the information that must be included in each portion of the registration statement and, to make the prospectus more readable for investors, the

4

SEC has sought to limit the information in that document.[1]  Further, the SAI is easily available to investors, and plaintiffs are charged with notice of its contents.  The SAI is incorporated by reference in the Prospectus, see Mem. 7 n.5, and is part of the Prospectus "as a matter of law." White v. Melton, 757 F. Supp. 267, 269 (S.D.N.Y. 1991); see Press v. Quick & Reilly, Inc., 218 F.3d 121, 124, 130 (2d Cir. 2000) (considering disclosures made both in prospectus and SAI); Hunt v. Alliance N. Am. Gov't Income Trust, Inc., 159 F.3d 723, 730-31 (2d Cir. 1998) (similar); Adoption of Registration Form Used by Open-End Management Investment Companies, Securities Act Release No. 6479, Investment Company Act Release No. 13,436, 48 Fed. Reg. 37928, 37930 (August 22, 1983).

Plaintiffs rely on Rafton v. Rydex Series Funds, No. 10-Civ-01171-LHK, 2011 WL 31114 (N.D. Cal. Jan. 5, 2011), in which the court denied a motion to dismiss a prospectus liability case regarding a fund with daily inverse return objectives.  Opp. 18-19.  But Rydex can be easily distinguished.  The disclosures made by the Funds in this case are significantly clearer than those at issue in Rydex.  And the fund at issue in Rydex charged investors an extra fee if they sold their shares less than a year or eighteen months after purchasing them.  Rydex, 2011 WL 31114, at *7.  The Rydex court thought that the complaint adequately alleged that this "discouraged investors from selling shares over the shorter term."  Id.  Plaintiffs here do not, and indeed cannot, allege that any such fee applies to the Direxion Funds.  More fundamentally,

---

[1]     The "purpose of the prospectus is to provide essential information about the Fund."  In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 361 (2d Cir. 2010) (citation and internal quotation marks omitted).  See also Mem. 15-16; Terris Decl. (filed June 10, 2011, dckt. no. 63) Exs. H & I (relevant versions of Form N-1A); Adoption of Registration Form Used by Open-End Management Investment Companies, Securities Act Release No. 6479, Investment Company Act Release No. 13,436, 48 Fed. Reg. 37928 (August 22, 1983)(adoption of two-part format of N-1A, where additional information is available in the SAI); Registration Form Used by Open-End Management Investment Companies, Securities Act Release No. 33-7512, Exchange Act Release No. 34-39748, 63 Fed. Reg. 13916, 13940 (March 23, 1998)(overhaul of prospectus pursuant to "plain English" initiatives).

significant aspects of <u>Rydex</u> are simply unpersuasive and inconsistent with the law in this Circuit and district. <u>See</u> <u>Rafton v. Rydex Series Funds</u>, No. 10-CV-01171-LHK, 2011 WL 1642588, at *1 (N.D. Cal. May 2, 2011) (expressing disagreement with this Court's rulings on loss causation issues).

Plaintiffs also suggest that the Court may consider "post-class period statements to confirm what a defendant [knew or] should have known during the class period" about the material risks. Opp. 34 (<u>citing</u> <u>Lapin v. Goldman Sachs Group, Inc.</u>, 506 F. Supp. 2d 221, 237 (S.D.N.Y. 2006), and other authorities). However, with the exception of its bearing on one issue discussed separately below, defendants' knowledge is not pertinent in the context of this motion.[2] The question is simply whether the defendants made a material misrepresentation or omitted a material, legally required disclosure. They clearly have not. Plaintiffs' belief that subsequent disclosures were better or different is beside the point and (according to more persuasive authorities construing Fed. R. Evid. 407) should not even be considered for the purpose of determining the legal adequacy of the registration statements at issue. <u>See</u> Mem. 14 (collecting cases); <u>cf.</u> <u>Lapin</u>, 506 F. Supp. 2d at 237 (post-class period statements survive the motion to dismiss "for the limited purpose of showing what Defendants should have known during the Class Period").

## B. Plaintiffs' Allegations That the Funds Failed to Achieve Their Daily Investment Objectives Are Meritless

The Funds clearly disclosed that they sought to achieve approximate daily tracking of their respective benchmarks (<u>i.e.</u>, daily tracking before fees and expenses). <u>See</u> Mem. 18. At the

---

[2]   Plaintiffs erroneously state that "it now appears from Defendants' post class period disclosures that Bear Funds were only appropriate investments if they were both bought and sold between the opening of the financial markets at 9:30 a.m. and the closing of the markets at 3:30 p.m. each day." Opp. 3 n.7. Plaintiffs fail to cite any portion of the April 2009 prospectus supplement in which this supposed revelation appears, and there is none.

same time, the Funds' registration statements also explained that there were a number of important factors that might preclude them from meeting this goal.  See Mem. 18-19.  Plaintiffs' claim that the Funds failed to achieve their respective objectives to plaintiffs' satisfaction are (at most) allegations of mismanagement that are not cognizable under the federal securities laws.  See Mem. 18; Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477 (1977) (claim of corporate mismanagement does not support liability under the disclosure provisions of the federal securities laws); Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 8 (2d Cir. 1996) (rejecting allegations that fund trading strategy was not executed with sufficient skill).

Plaintiffs seek to overcome these difficulties by repeating their allegations that the Funds failed to disclose supposed risks that plaintiffs dub "price pressure" risk, Compl. ¶ 308, "timing risk," Compl. ¶ 311, "holding period risk," or "hedging risk."  Compl. ¶¶ 331-39.  See Opp. 2-3, 11, 13.  This strategy fails for at least three reasons.

First, plaintiffs have "present[ed] a moving target of sorts, describing the allegedly omitted risks only vaguely." In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 362 (2d Cir. 2010).[3]

Second, to the extent that plaintiffs' descriptions of these supposed risks is comprehensible, plaintiffs' alleged risk factors are nothing more than minor variations on risks that the Funds clearly disclosed.  For example, the Trust disclosed that "[t]he Funds' use of leverage means that they will incur financing charges which will affect the performance of the Funds."  Prospectus at 10; see also id. at 10-11 (Funds may incur transaction costs due to shorting techniques).  These disclosures belie plaintiffs' claim that the Funds failed to disclose

---

[3]      The Opposition includes such unilluminating statements as "[s]hares bought and held for one full trading day or longer were subject to both price pressure and timing risk.  This is holding period risk."  Opp. 3 n.7.

that the Funds might incur transaction costs related to hedging.  Compl. ¶¶ 331-39; see Mem. 18-19 (other examples).  Plaintiffs' semantic quibbling cannot support a federal securities law claim.  See Mem. 8, 17; see also Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1069 (5th Cir. 1994) (defendants are "under no duty to employ the adjectorial characterization that the plaintiffs believe is more accurate")(citation and internal quotation marks omitted); Steinberg v. Ericsson LM Tel. Co., No. 07 CV 9615 (RPP), 2008 WL 5170640, at *11 (S.D.N.Y. Dec. 10, 2008) (same).

Third, plaintiffs have failed to plead that any allegedly omitted risk was of the type that must be disclosed.  A mutual fund need not disclose every conceivable risk.  Instead, as plaintiffs acknowledge, Opp. 11, Item 4(c) of the version of Form N-1A applicable during the putative class period requires a fund to disclose "the principal risks of investing in the Fund, including the risks to which the Fund's particular portfolio as a whole is expected to be subject and the circumstances reasonably likely to affect adversely the Fund's net asset value, yield, or total return."[4]

Because defendants' disclosure obligations are limited to the "principal risks of investing in the Fund," plaintiffs must plead facts plausibly indicating that the allegedly omitted risks had a significant impact on the Funds.  See Mem. 19; Olkey, 98 F.3d at 8 ("It should also be noted that the alleged undisclosed bias had no direct relationship to the losses claimed to have been incurred.").  The Complaint fails to do so.  Indeed, in some instances, plaintiffs effectively acknowledge that their allegations of supposed undisclosed risks currently have no factual basis, and that plaintiffs merely hope to find support for them in discovery.  See Mem. 19 n.17; Compl. ¶ 305.

---

[4]     See Terris Decl. Ex. H., dckt. no. 63.  A similar disclosure requirement is set forth in Item 9(c) of the current version of Form N-1A, Ex. I to the Terris Decl.

Moreover, as the language of Item 4(c) of Form N-1A indicates, determining principal risk factors involves judgments and projections about what "is expected" and what is "reasonably likely" for a Fund. The Second Circuit recently made clear in a § 11 case that, when an issuer makes disclosures that require the exercise of judgment or that depend at least in part on subjective or uncertain factors, a plaintiff must allege that "the statement was both objectively false and disbelieved by the defendant at the time it was expressed." Fait v. Regions Fin. Corp., --- F.3d ---, No. 10-2311-CV, 2011 WL 3667784, at *3 (2d Cir. Aug. 23, 2011). Thus, for example, a claim based on loan loss reserves requires allegations of subjective falsity because such reserves "reflect management's opinion or judgment about what, if any, portion of amounts due on the loans ultimately might not be collectible." Id. at *6. Similarly, absent subjective falsity, "projections of future performance [are] not actionable under the 1933 or 1934 Acts." Id. at *5 (citation and internal quotation marks omitted). Yet, plaintiffs here have alleged nothing to suggest that defendants did not subjectively believe that they had accurately disclosed the principal risks of investing in the Funds.

In short, plaintiffs should not be permitted to bootstrap their way into a securities law claim by concocting an essentially meaningless list of possible risks and then alleging that an issuer is liable for failing to disclose these supposed risks.

## II.   PLAINTIFFS HAVE FAILED TO FILE THE REQUIRED CERTIFICATIONS

Plaintiffs have filed a number of certifications with the Opposition.[5] This belated half measure is insufficient to comply with the Reform Act's mandates. See 15 U.S.C. § 77z-1.

---

[5]     One of the certifications is from Michael Salach, a person who is not named as a plaintiff in the current complaint. See Declaration of Kenneth G. Gilman, dckt. no. 68, filed August 15, 2011 Ex. G. Because Mr. Salach is not a party to these proceedings, defendants will not further discuss his certification. Some of the untimely certifications indicate that some plaintiffs may have purchased prior to the issuance of the December 9, 2008 Prospectus Supplement. However,

The Reform Act requires a plaintiff to file the requisite certifications "with complaint," 15 U.S.C. § 77z-1(a)(2) – not afterwards.  Accord In re Eaton Vance Corp. Sec. Litig., 219 F.R.D. 38, 42 (D. Mass. 2003).

Even if plaintiffs' untimely filing could be excused, plaintiffs should have, but did not, seek leave of Court.  See Fed. R. Civ. P. 15(a)(2); In re Initial Pub. Offering, 241 F. Supp. 2d 281, 347 n.76 (S.D.N.Y. 2003) (Reform Act certification was "integral to the complaint").

Most fundamentally, the certifications plaintiffs filed with their Opposition still fail to comply with the Reform Act.  With one exception, plaintiffs have submitted certifications that were executed well before the preparation and filing of the currently operative Second Amended Complaint.[6]  And in three instances (the certifications of plaintiffs Stoopler, Remmells, and Schwack), plaintiffs apparently re-filed the same certifications that they provided with earlier pleadings.

These stale certifications are inadequate.

A certification executed prior to the preparation of the second amended complaint cannot possibly meet the Reform Act's requirement that "the plaintiff has reviewed the complaint and authorized its filing."  15 U.S.C. § 77z-1(a)(2)(A)(i).  Notwithstanding Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F. Supp. 2d 474, 500 (S.D.N.Y. 2004), defendants respectfully

---

plaintiffs do not dispute that the earlier version of the prospectus was similar, see Mem. 6-7, and it would be unduly prejudicial if, as a result of plaintiffs' tardiness, defendants were forced to detail the relatively minor differences between the two documents.  Accordingly, like the Memorandum, this reply brief discusses only the December 9 Prospectus.

[6]     The operative third complaint was filed on April 8, 2011, dckt. no. 59 and its predecessor (the first consolidated amended complaint), dckt. no. 46 was filed on November 23, 2010. Plaintiffs' respective certifications, see dckt. no. 68, are dated as follows: September 11, 2009 (Stoopler), September 25, 2009 (Haas), November 5, 2009 (Behnken), November 11, 2009 (Remmells), January 13, 2010 (Schwack).  James Killmon's certification is the exception.  It is dated March 30, 2011.

submit that "the complaint" that a plaintiff must "review[]" and "authorize[]," 15 U.S.C. § 77z-1(a)(2)(A)(i), is necessarily the current, operative pleading. "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (citations and internal quotation marks omitted). Further, dispensing with the requirement that a plaintiff review substantively new amended pleadings would undermine one of the major purposes of the Reform Act – curbing lawyer driven litigation. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 81 (2006) (Congress enacted the Reform Act because "the class-action device was being used to injure 'the entire U.S. economy'" including through the "manipulation by class action lawyers of the clients whom they purportedly represent") (quoting H.R. Conf. Rep. No. 104-369 (1995)).

Plaintiffs' outdated certifications also lack current information on prior securities class actions filed by the would-be representative plaintiff, and thus preclude a determination of plaintiffs' eligibility. See 15 U.S.C. § 77z-1. Further, as noted in the Memorandum (at pp. 20 n.19, 22-23 & 22 n.20), some of the certifications plaintiffs provided are ambiguous and incomplete, thus hindering the ability of the Court and defendants to ascertain whether plaintiffs can establish the requisite standing and/or loss causation.[7] Merely re-submitting the same defective certifications does nothing to address this issue.

_____

[7]   Competing plaintiffs' counsel also previously recognized the insufficiency of the lead plaintiff certifications in his filings concerning lead plaintiff appointment. See Memorandum of Law in Support of Scott Woska's Motion for Appointment as Lead Plaintiff (dckt. nos. 21 and 23, filed December 7, 2009) ("Stoopler's loss chart is grossly inaccurate and fails to provide a credible analysis to determine the actual losses suffered by Stoopler…submission is wrought with similar inconsistencies and provides absolutely no basis for a competing movant to credibly test his damages calculation…").

III.   **STATE STREET COMPELS DISMISSAL**

The Opposition makes clear that plaintiffs disagree with In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig., 774 F. Supp. 2d 584 (S.D.N.Y. 2011).   Plaintiffs expend considerable ink discussing non-binding cases that State Street rejected and plaintiffs' erroneous interpretation of Second Circuit precedents that State Street carefully considered.   See Opp. 23-26 (discussing cases such as  Rafton v. Rydex, 10-CV-01171-LHK, 2011 WL 31114 (N.D. Cal. Jan 5, 2011), and Charles Schwab Corp. Sec. Litig., 257 F.R.D. 534 (N.D. Cal. 2009), both discussed and ultimately rejected in State Street, 774 F. Supp. 2d at 591-95); Opp. 22-23 (discussing Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005), addressed in detail at pages 590-91, and 593-94 of State Street).

Plaintiffs also inexplicably suggest that the State Street plaintiffs did not allege a "materialization of the risk" theory.  Opp. at 27.  This is demonstrably incorrect.  See State Street, 774 F. Supp. at 591 ("Under plaintiff's theory, the 'risk' hidden by the prospectus's statements … 'materialized' when defendants wrote down the market value of the Fund's mortgage-related investments, causing a commensurate decline in the Fund's NAV, which in turn resulted in losses and caused investors to abandon the Fund") (citations and internal quotation marks omitted).

But plaintiffs make little attempt to *distinguish* State Street.  They opine that, unlike traditional mutual funds, the Funds: (1) are intended to be short-term investments, (2) were investing in market movements, (3) are rebalanced daily, and (4) are allegedly rebalanced based on economic models.  Opp. 27.  Plaintiffs also assert that, unlike this case, the allegations in State Street addressed the composition and valuation of the fund's investment portfolio.  Opp. 27. These purported distinctions simply make no difference given State Street's *ratio decidendi*: when (as here) a supposed misrepresentation or omission has no effect on NAV, and when (as here)

12

NAV is determinative of the price paid and received by an investor, there can be no loss causation under the statutory language of § 11, and the Complaint must be dismissed.[8]

## IV.   PLAINTIFFS SUFFERED NO LOSSES ATTRIBUTABLE TO THE ALLEGED MISREPRESENTATIONS

Plaintiffs do not (because they cannot) contest the accuracy of defendants' calculations demonstrating that certain plaintiffs' alleged losses were attributable to erroneous bets on market direction and had nothing to do with the Funds' alleged failure to disclose that they tracked their indices only on a daily basis.  Loss causation regarding other claims is unclear due to plaintiffs' faulty certifications.

Plaintiffs erroneously contend that defendants' calculations may not be considered on a motion to dismiss.  Opp. 30.  But the calculations are based on plaintiffs' own certifications and publicly available stock prices, which unquestionably are subject to judicial notice and thus properly considered on a 12(b)(6) motion.  See Mem. pp. 3 n.2, 20 n.19.  Mathematical calculations also may be judicially noticed.  See, e.g., Miller v. Fed. Land Bank of Spokane, 587 F.2d 415, 422 (9th Cir. 1978) (court below should have taken judicial notice that if half of a settlement were applied to a mortgage debt the total amount of interest to be paid would have been reduced by $4,377.90 as a result of reduction of principal and shortening of the amortization period; this was a matter of mathematics which need not be proved).  Moreover, in appropriate cases such as this, "a court can judicially notice a fact that is not generally known by a process of combining facts that are generally known."  21B Charles Alan Wright & Kenneth W. Graham Jr., Federal Practice and Procedure: Evidence 2d § 5105 at 175 (2d ed. 2005).  "Most

---

[8]    Plaintiffs do not, and cannot, dispute that SEC regulations and market forces ensure a close correspondence between an ETF's secondary market price and its NAV, and that secondary market trading has no impact on the NAV of ETF shares held by other investors.  See Mem. 5, 21.

of the cases of 'combinatorial common knowledge' use commonly known mathematical techniques." Id. at 176.

Further, it appears that the issue of whether plaintiffs suffered any injury fairly traceable to some or all of the alleged misstatements may implicate plaintiffs' Article III standing and hence the Court's subject matter jurisdiction.  See Brown v. Medtronic, 628 F.3d 451, 455-59 (8th Cir. 2010) (to establish Article III constitutional standing, plaintiff "must allege a net loss in investment value that is fairly traceable to the defendants' challenged actions"); but cf. Levine v. AtriCure, Inc., 594 F. Supp. 2d 471, 476-77 n.3 (S.D.N.Y. 2009) (noting but declining to resolve argument that, even absent monetary damages, "a traceable injury in fact arises from the purchase of shares pursuant to a misleading registration statement").  If so, defendants challenge plaintiffs' standing and put plaintiffs to their burden of providing sufficient evidence to show that they suffered an injury fairly traceable to defendants' alleged misstatements.  See, e.g., In re Vivendi Universal, S.A. Sec. Litig., 381 F. Supp. 2d 158, 165 (S.D.N.Y. 2003); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (unlike with a Rule 12(b)(6) motion, a court resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction may refer to evidence outside the pleadings).

## V.   PLAINTIFFS FAIL TO ADEQUATELY ALLEGE COMPLIANCE WITH THE STATUTE OF LIMITATIONS

The Opposition suggests that the Complaint's bald allegations that all putative class members "were without knowledge of the facts," Compl. ¶ 352, are sufficient.  See Opp. 32.  To the contrary, allowing plaintiffs to proceed based on the "conclusory representation that they 'did not know' would effectively eliminate all statutes of limitations." Brown v. Option One Mortg. Corp., No. C 09-5705 MHP, 2010 WL 1267774, at *4 (N.D. Cal. Apr. 1, 2010).  And, as demonstrated in the Memorandum (and to no relevant response in the Opposition), in the unusual

context of this case, plaintiffs should have discovered the alleged false statements well before the supposed corrective disclosures – and perhaps even before investing. See Mem. 23-24.[9]

It is therefore clear, at a minimum, that the Complaint lacks sufficient factual allegations regarding plaintiffs' compliance with the statute of limitations. See In re Chaus Sec. Litig., 801 F. Supp. 1257, 1265 (S.D.N.Y. 1992) (plaintiffs must plead time and circumstances of their discovery of alleged misstatements); In re Morgan Stanley Mortg. Pass-Through Certificates Litig., Master File No. 09 Civ. 2137 (LTS)(MHD), 2010 WL 3239430, at *6 (S.D.N.Y. Aug. 17, 2010) (dismissing on limitations grounds a § 11 case where plaintiff did "not allege the precise timing or the means by which it gained knowledge of the facts"). Enforcement of the relevant pleading requirements is particularly important where, as here, the required additional specificity may show that a plaintiff knew of the supposed misrepresentations at the time of investment, and thus has no claim. See Mem. 24; see also Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) ("Rule 9(b) serves to ... prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.") (citation and internal quotation marks omitted).

The Opposition suggests that plaintiffs will be able to successfully replead. It asserts that all plaintiffs' claims necessarily were timely because plaintiff Stoopler filed the first of the consolidated actions before the Court on September 18, 2009, which is less than one year after

---

[9]    The relevant limitations period requires a plaintiff to allege both that he was subjectively unaware of the facts and that he filed within one year after "discovery *should have been made* by the exercise of reasonable diligence." 15 U.S.C. § 77m (emphasis added). See also Rodriguez Canet v. Morgan Stanley & Co., 419 F. Supp. 2d 90, 96 (D.P.R. 2006) (periodic statements reflected declining account values that were inconsistent with plaintiff's alleged belief about her investments triggered limitations period); Norniella v. Kidder Peabody & Co., Inc., 752 F. Supp. 624, 628 (S.D.N.Y. 1990) (similar).

the November 3, 2008 supplement to the registration statement. The claims of other plaintiffs who did not file timely individual claims are said to relate back to Stoopler's claim. Opp. 33.

Plaintiffs' relation back argument fails.[10] For relation back to apply in this context, the failure to add the new plaintiffs earlier must have been due to a mistake concerning the proper party's identity. See e.g. In re Morgan Stanley Mortg. Pass-Through Certificates Litig., Master File No. 09-Civ. 2137 (LTS)(MHD), 2010 WL 3239430, at *8-*9 (S.D.N.Y. Aug. 17, 2010); Fed. R. Civ. P. 15(c)(1)(C). Where, as here, the newly added plaintiffs simply did not step forward earlier, there is no mistake and hence no relation back. See Levy v. United States Gen. Accounting Office, 175 F.3d 254, 254 (2d Cir. 1999) (no relation back for claims of new plaintiffs added to amended complaint; the original plaintiff "did not seek to add the [new parties] as plaintiffs because of a mistake, as required by Fed. R. Civ. P. 15(c)(3)(B)"; instead, new parties were added because they had "filed a separate complaint that was time barred"). Accord Nelson v. County of Allegheny, 60 F.3d 1010, 1014-15 (3d Cir. 1995).[11] Further, the relation back rule of Fed. R. Civ. P. 15(c) is inapplicable to the named plaintiffs who filed separate actions that were later consolidated. See, e.g., Morin v. Trupin, 778 F. Supp. 711, 733-34 (S.D.N.Y. 1991).

---

[10]    While the relation back rule of Fed. R. Civ. P. 15(c) deals only with changing defendants, courts in this Circuit "have applied it to amendments substituting or adding plaintiffs." In re Bausch & Lomb, Inc., Sec. Litig., 941 F. Supp. 1352, 1364 (W.D.N.Y. 1996). Class action tolling of the claims of putative class members pursuant to American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974), involves a different analysis and is not presently at issue. Plaintiffs ultimately will bear the burden of showing that they are entitled to such tolling. See Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).

[11]    See also Young v. Lepone, 305 F.3d 1, 15 (1st Cir. 2002)("Persons who are identified with each other only by their ownership of stock in the same publicly-traded corporation share some of the same rights, but that fact, standing alone, does not place them in the kind of proximity needed to invoke Rule 15(c)(3)."); Asher v. Unarco Material Handling, Inc., 596 F.3d 313, 318-20 (6th Cir. 2010).

Plaintiff Stoopler has failed to adequately allege compliance with the statute of limitations for an additional reason. Stoopler's initial pleading was limited to the theory that the Funds failed to adequately disclose that they sought only daily tracking. As noted in Section IV above, however, plaintiff Stoopler lacks standing to maintain this claim. It was not until the Consolidated Amended Complaint filed on November 23, 2010 (dckt. no. 46) that Stoopler alleged for the first time that the Funds did not closely track their benchmark indices on a daily basis. That new theory is too dissimilar to Stoopler's initial claim to qualify as the same conduct, transaction or occurrence within the meaning of Fed. R. Civ. P. 15(c), and thus does not relate back. See In re Noah Educational Holdings, Ltd. Sec. Litig., No 08 Civ. 9203 (RJS), 2010 WL 1372709, at *9 (S.D.N.Y. March 31, 2010).

## VI.   PLAINTIFFS MAY NOT PROCEED WITH CLAIMS REGARDING FUNDS OTHER THAN THE FINANCIAL BEAR AND ENERGY BEAR

While some cases support plaintiffs' view, see Opp. 30-32, the better reasoned recent authorities in this district persuasively demonstrate that fundamental Article III standing principles require that a plaintiff own shares in each fund at issue in a lawsuit regardless of whether the case is brought as a putative class action. See Mem. 24; see also In re Wachovia Equity Sec. Litig., 753 F. Supp. 2d 326, 368-370 (S.D.N.Y. 2011) ("Because the Bond/Notes Plaintiffs have suffered no injury from Defendants' conduct with respect to securities they did not purchase, all claims arising from the 16 offerings in which none of the named Plaintiffs purchased any securities are dismissed for lack of standing."); McCall v Chesapeake Energy Corp., No. 10 Civ. 8897 (DLC), 2011 WL 4056310, at *4 (S.D.N.Y. September 13, 2011); In re Bank of America Corp. Sec. Derivative and ERISA Litig., Master File No. 09 MD 2058 (PKC), 2011 WL 3211472, *at 13-14 (S.D.N.Y. July 29, 2011); In re Lehman Bros. Sec. and ERISA Litig., --- F. Supp. 2d ---, No. 09 MC 2017 (LAK), 2011 WL 3211364, at *7 & nn.91-96

(S.D.N.Y. July 27, 2011); N.J. Carpenters Health Fund v. NovaStar Mortg., Inc., No. 08 CIV 5310 (DAB), 2011 WL 1338195, at *6 (S.D.N.Y. Mar. 31, 2011).

Moreover, plaintiffs apparently concede that (as discussed at Mem. 24-25) their effort to litigate on behalf of Funds other than the Financial Bear and Energy Bear contravenes the Court's August 12, 2010 order, dckt. no. 43 at p. 9, and would short circuit the ability of shareholders of those Funds to apply for lead plaintiff status as the Reform Act requires. See Opp. 30-32.

Plaintiffs nonetheless propose to defer until the class certification stage consideration of plaintiffs' violation of the Court's order and of their lack of Article III standing to sue concerning funds other than Financial Bear and Energy Bear. Opp. 32. As illustrated by the cases cited above and in the Memorandum, however, "[c]ourts should dismiss these claims even at the pre-class certification stage." N.J. Carpenters Health Fund v. NovaStar Mortg., Inc., 2011 WL 1338195, at *6.[12]

---

[12]    Cf. Kasalo v. Harris & Harris, Ltd., --- F.3d ---, No. 10-2755, 2011 WL 3800124, at *5 (7th Cir. Aug. 26, 2011) ("a court may deny class certification even before the plaintiff files a motion requesting certification"); Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 939-41 (9th Cir. 2009) (similar).

**CONCLUSION**

Notwithstanding plaintiffs' allusion to the possibility of yet another (unspecified) amendment, Opp. 35, the Complaint should be dismissed with prejudice.  See In re Eaton Vance Mutual Fund Fee Litig., 403 F. Supp. 2d 310, 318-19 (S.D.N.Y. 2005), aff'd sub nom., Bellikoff v. Eaton Vance, 481 F.3d 110, 118 (2d Cir. 2007).

Dated:  September 28, 2011

<div style="margin-left:40%">

K&L GATES LLP

By:   /s/ Nicholas G. Terris

Joanna A. Diakos (JD 7269)
Sarah P. Kenney (SK 5642)
K&L Gates LLP
599 Lexington Avenue
New York, New York  10022-6030
Email:    joanna.diakos@klgates.com
              sarah.kenney@klgates.com
Phone:    (212) 536-3900
Fax:        (212) 536-3901

Jeffrey B. Maletta (admitted *pro hac vice*)
Nicholas G. Terris (admitted *pro hac vice*)
1601 K Street, NW
Washington, DC 20006-1600
E-mail:   jeffrey.maletta@klgates.com
              nicholas.terris@klgates.com
Phone:    (202) 778-9000
Fax:        (202) 778-9100

*Counsel for Defendants Direxion Shares
ETF Trust, Daniel D. O'Neill, Daniel J.
Byrne, Gerald E. Shanley, III, John Weisser
and Rafferty Asset Management, LLC*

</div>

19