USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED **MAR 0 6 2012**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- X
                                  :
                                  :        09 Civ. 8011 (KBF)
IN RE DIREXION SHARES ETF TRUST   :
                                  :        MEMORANDUM OPINION &
---------------------------------- X       ORDER

KATHERINE B. FORREST, District Judge:

On January 27, 2012, this Court dismissed certain claims in
plaintiffs' Second Amended Complaint, including, inter alia,
claims by purchasers in ERY for failure to plead adequately
compliance with the statute of limitations under section 13 of
the Securities Act, 15 U.S.C. § 77m.[1]  In re Direxion ETF Trust,
No. 09 Civ. 8011, 2012 WL 259384, at *8-9 (S.D.N.Y. Jan. 27,
2012).  The Court granted plaintiffs leave to replead their
statute of limitations allegations.  Id. at *9, 17-18.  On
February 10, 2012, plaintiffs filed the Third Consolidated
Amended Class Action Complaint ("TAC").  (Dkt. No. 87.)
Pursuant to the schedule set by the Court, see 2012 WL 259384,
at *18, defendants' motion to dismiss the TAC for plaintiffs'
failure to plead compliance with section 13 was fully briefed on
March 1, 2012.  (See Dkt. Nos. 89, 90, 91.)

Defendants' arguments for dismissal are four-fold:  (a) the
all plaintiffs' statute of limitations allegations are
"impermissibly conclusory"; (b) plaintiffs have failed to file

---

[1] Proper names and defined terms used herein have the same meaning as in the
Court's opinion on defendants' motion to dismiss the SAC.  See In re Direxion
ETF Trust, No. 09 Civ. 8011, 2012 WL 259384 (S.D.N.Y. Jan. 27, 2012).

1

new PSLRA certifications with the TAC; (c) claims related to ERY are barred by the statute of repose (and thus, cannot be saved by tolling or relation back) because those claims were dismissed in the SAC, and the TAC was filed three years after ERY was first bona fide offered to the public; and (d) the TAC impermissibly includes claims related to funds other than FAZ and ERY.  (See generally Mem. of Law in Support of Mot. to Dismiss TAC ("MTD TAC Mem.") (Dkt. No. 90).)  Upon due consideration of each of those arguments, the Court concludes that none warrant dismissal of the TAC (except to the extent the TAC includes claims previously dismissed by the Court in its January 27, 2012 opinion).[2]

For the reasons set forth below, defendants' motion to dismiss the TAC is DENIED.

### BACKGROUND

The Court's SOL Decision on the SAC

Familiarity with the facts underlying this action, and its procedural history, is assumed.  See 2012 WL 259384, at *1-6.

---

[2] Defendants argue that the TAC improperly includes claims on behalf of funds other than FAZ and ERY such that plaintiffs should be required to "refile a complaint limited to claims relating" to plaintiffs whose claims are properly part of this action.  (MTD TAC Mem. at 9-10.)  In its opinion on defendants' motion to dismiss the SAC, the Court granted plaintiffs leave to replead their compliance with the statute of limitations only.  2012 WL 259384, at *18.  The TAC complied with the Court's directive--and the Court's prior opinion on defendants' motion to dismiss the SAC leaves no doubt as to what claims remained in this action.  There is no need to expend the Court's and parties' time and resources in requiring plaintiffs to file a further amended complaint.

The Court recites only those facts below that have particular relevance to its decision on the instant motion.

The Court previously found that "simple math" conclusively established that lead plaintiff Stoopler's FAZ claims were timely brought--*i.e.*, he commenced his putative class action on behalf of FAZ purchasers less than one year after public disclosure of the misrepresentations and omissions that are the subject of this action.  Id. at *9.  In other words, even if plaintiffs could have discovered the misrepresentations the moment Direxion publicly disclosed them in the November 3 Supplement (and there is no allegation or indication that was the case), Stoopler's claims, brought on September 18, 2009, fall within section 13's one-year limitations period.  See id. Thus, the Court allowed Stoopler to proceed, at least at this time, in a representative capacity for a putative class of FAZ purchasers--and that the claims of plaintiffs Remmells, Haas, and Benhken fell within that class by virtue of American Pipe tolling.  Id.  The Court found that "neither math nor American Pipe tolling saves plaintiffs Schwack's or Killmon's ERY claims, however."  Id.

Accordingly, this opinion addresses whether plaintiffs Schwack and Killmon, the only plaintiffs who purportedly made purchases in ERY (TAC ¶¶ 352(d)-(f), (m)-(o)), have adequately alleged compliance with the one-year limitations period.

Schwack and Killmon's SOL Allegations

Schwack alleges that he purchased shares in ERY on April 1, 2009.  (TAC ¶ 352(d).)  Upon realizing that "he was losing money on his investment in ERY," although "not understand[ing] why," Schwack allegedly "sought legal advice in connection with [that] loss" on November 24, 2009.  (Id. ¶ 352(e).)  Schwack alleges that he "did not know that ERY shares were intended to be bought and sold during the same trading session" before that date and "made no [prior] inquiry concerning" that fact.  (Id.)  Schwack then commenced his individual putative class action on January 13, 2010.  (Id. ¶ 352(f).)

Killmon made his initial purchase in ERY on November 14, 2008, and a second purchase on March 16, 2009.  (Id. ¶ 352(m).)  Killmon alleges that prior to defendants' "materially alter[ing] their disclosures with the filing of the April 10, 2009 prospectus, [he] did not know, and had no reason to know, that the shares were intended to be bought and sold during the same trading period . . . ."  (Id.)  Killmon alleges that on October 27, 2010, "he sought legal advice in connection with loss on the investment," and "first learned that ERY shares were intended to be bought and sold during the same trading period."  (Id. ¶ 352(n).)  Before that date, he alleges that he did not make any inquiry into "whether ERY shares were intended to be bought and sold during the same trading period."  (Id.)  Killmon joined

4

in this action with the filing of the SAC on April 8, 2011, but

asserts that his claims relate back to Schwack's putative class

action on behalf of ERY filed January 13, 2010.  (Id. ¶ 352(o).)

DISCUSSION

## Standard

Section 13 of the Securities Act states,

> No action shall be maintained to enforce any liability
> created under section 11 or section 12(a)(2) unless
> brought within one year after the discovery of the
> untrue statement or the omission, or after such
> discovery should have been made by the exercise of
> reasonable diligence, or, if the action is to enforce
> a liability created under section 77l(a)(1) of this
> title, unless brought within one year after the
> violation upon which it is based.  In no event shall
> any such action be brought to enforce a liability
> created under section 77k or 77l(a)(1) of this title
> more than three years after the security was bona fide
> offered to the public, or under section 77l(a)(2) of
> this title more than three years after the sale.

15 U.S.C. § 77m.

The Supreme Court's ruling in Merck & Co. v. Reynolds, ---

U.S. ---, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010), altered the

standard as to the second clause of the statute's first

sentence--i.e., "after such discovery should have been made by

the exercise of reasonable diligence," known as "inquiry

notice."  Prior to Merck, the law in this Circuit provided that

"a plaintiff was on 'inquiry notice' when public information

would lead a reasonable investor to investigate the possibility

of fraud."  Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc., 637

F.3d 169, 173 (2d Cir. 2011).  Merck overruled that analysis,
holding that "the limitations period begins to run only after 'a
reasonably diligent plaintiff would have discovered the facts
constituting the violation . . . .'"  Id. (quoting Merck, 139
S.Ct. at 1798).  Interpreting that holding, the Second Circuit
has found that "a fact is not deemed 'discovered' until a
reasonably diligent plaintiff would have sufficient information
about that fact to adequately plead it in a complaint."  Id. at
175.[3]  Thus, to survive the instant motion to dismiss, plaintiffs
must set forth plausible allegations of their purported
"discovery" of facts sufficient to plead adequately the Section
11 claim at issue here--and that such claims were brought within
three years of the bona fide offering of the relevant
securities.  See 15 U.S.C. § 77m.

Facial Plausibility of the ERY Plaintiffs' Statute of
Limitations Allegations

     Here, Schwack and Killmon allege that the statute of
limitations triggered when they learned from their respective
attorneys that ERY was meant to be bought and sold in the same
trading period, when they sought legal advice in connection with

---

[3] Although both Merck and Pontiac addressed the statute of limitations in the
Exchange Act context, and although the language of Exchange Act's and
Securities Act's limitations statutes differ slightly, courts in this
District have applied the new standard promulgated in Merck, and interpreted
in Pontiac, to Securities Act claims.  See, e.g., In re Direxion ETF Trust,
2012 WL 2593984, at *8; In re Wachovia Equity Secs. Litig., 753 F. Supp. 2d
326, 370-72 & n. 39 (S.D.N.Y. 2011); Plumbers & Pipefitters' Local No. 562
Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I, No. 08 CV 1713,
2012 WL 601448, at *10-11 (E.D.N.Y. Feb. 23, 2012).

their alleged ERY-investment losses--Schwack on November 24, 2009, and Killmon on October 27, 2010.  (TAC ¶¶ 352(e), (n).)  Both plaintiffs allege that they had no way of knowing--and no reason to know--that defendants intended ERY to be bought and sold in the same trading period prior to consulting with their respective attorneys.  (Id. ¶¶ 352(e), (n).)

The Court finds those allegations in tension with the Supplements' caution that such instruments "should be utilized only by sophisticated investors who . . . intend to actively monitor and manage their investments."  (See, e.g., Terris Decl. (Dkt. No. 63) Ex. C at 1 (Dec. 9 Supplement); April 10 Supp. at 1.)  The TAC does not allege, as it cannot, the substance of plaintiffs' respective discussions with their attorneys.  More importantly, however, the TAC does not allege why plaintiffs, presumably "sophisticated investors" as the Prospectuses cautioned Bear Funds' investors should be, needed their attorneys (and not their investment advisors or other financial professionals) to inform them of facts sufficient to state a section 11 violation related to ERY.  Regardless, given the facts discussed below in relation to both Direxion's ETFs and certain ETFs issued by ProShares in which Schwack invest, see infra, and on the findings in its prior opinion and plaintiffs' allegations (borderline as they may be), the Court finds that plaintiffs plead facially plausible compliance with the statute

of limitations--at least for purposes of this motion.[4]  See
Pontiac Gen. Emps.' Ret. Sys., 637 F.3d at 175.

The Court previously found that the April 10 Supplement
disclosed the "magnitude of the risks" associated with holding
the Bear Funds (including ERY) for longer than a single trading
period.  2012 WL 259384, at *10-11.  Although, the TAC is devoid
of allegations as to when either Schwack or Killmon first
realized they sustained losses on their ERY investment, on the
facts alleged in the TAC, the earliest both factors--i.e., their
alleged losses and the disclosures in the April 10 Prospectus--
could have been before them was April 10, 2009.  Those
disclosures coupled with plaintiffs' realization of their
alleged ERY-investment losses would have provided facts that
would have lead to sufficient information about the daily nature
of the funds to adequately plead a facially plausible section 11
violation.  See Pontiac Gen. Emps.' Ret. Sys., 637 F.3d at 175.

Schwack commenced his putative class action for ERY
purchasers on January 13, 2010, and Killmon joined this action
on April 8, 2010.  Even assuming that the April 10 Prospectus
triggered the statute of limitations, plaintiffs' claims were
timely brought.  See 15 U.S.C. § 77m.

---

[4] If upon development of the factual record in this action, facts come to
light indicating that plaintiffs have not timely brought their claims, the
Court will entertain the appropriate motion at that time.

Schwack's *ProShares* Action

Although the Court found above that Schwack's claims were timely brought, it finds Schwack allegations that he had no way of knowing--or no reason to know--of the daily nature of ERY prior to November 24, 2009, not credible.  Nevertheless, as discussed below, his claims are timely.

As defendants point out, Schwack has filed another action related to "similar leveraged inverse ETFs" (i.e., similar to Direxion's Bear Fund ETFs) in September 2008, that suggests there was publicly-available information as early as June 11, 2009 that leveraged inverse ETFs were only suitable to be held for a single trading period.[5]  (See Compl., Schwack v. ProShares Trust, et al., 10 Civ. 272 (S.D.N.Y.) (Dkt. No. 1) (the "ProShares Compl.");[6] see also MTD TAC Mem. at 4.)  In his ProShares complaint, Schwack alleged that the Securities and Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), and others issued a series of warnings relating to leveraged inverse ETFs like those at issue here and those at issue in Schwack's ProShares action.  (See ProShares Compl. ¶¶ 19-31, 74-82.)  The earliest of those is a FINRA warning flare issued June 11, 2009, in which it "cautioned" that

---

[5] The Court may take judicial notice of pleadings in other actions pursuant to Fed. R. Evid. 201(b).  Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000).

[6] Schwack's ProShares action has since been consolidated into In re ProShares Trust Securities Litigation, 09 Civ. 6935 (S.D.N.Y.).  (See Order, Schwack v. ProShares (Dkt. No. 19) (Apr. 28, 2010).)

"'inverse and leveraged ETFs . . . typically are unsuitable for retail investors who plan to hold them for longer than one trading session, particularly in volatile markets.'" (ProShares Compl. ¶ 19 (quoting FINRA Regulatory Notice 09-31); see also id. ¶ 74.)

In the ProShares complaint, Schwack alleges that FINRA issued a subsequent warning, among others, on July 13, 2009, via a podcast on its website which added further color to the original warning--i.e., that "most leveraged and inverse ETFs reset each day and are designed to achieve their stated objective on a daily basis--but with the effects of compounding over a longer time frame, results differ significantly." (ProShares Compl. ¶ 22; see also id. ¶ 75.) According to Schwack, after various warnings for a number of other sources, the SEC issued a similar warning on August 18, 2009. (Id. ¶ 28; see also id. ¶¶ 23-27.)

At the earliest, assuming Schwack had already sustained losses on his ERY investment, Schwack could have been in possession of information sufficient to plead a facially plausible section 11 claim relating to Direxion's ETFs as early as June 11, 2009, but more likely, as of August 18, 2009, after the lengthy series of warnings. (See ProShares Compl. ¶¶ 19, 74; see also id. ¶¶ 19-31.) Even with those facts and that assumption in mind, Schwack filed this action on January 13,

2010 (TAC ¶ 352(f)), well within the one-year limitations period triggered by the FINRA warning.  See 15 U.S.C. § 77m.  Using either the earlier June 11, 2009 date, Schwack's claims on behalf of a putative class of purchasers in ERY were timely brought.

Defendants argue, without pointing to any source, that Schwack's "alleged 2008 losses in ProShares" should have alerted him to the "allegedly omitted risks more than a year before" the January 2010 filing of this and his ProShares complaints.  (MTD TAC Mem. at 4.)  That argument overlooks not only the above-discussed events that allegedly triggered the statute of limitations in Schwack's ProShares action, but also two other key points.

First, it overlooks caselaw which holds that merely sustaining losses on an investment, without more, is insufficient to put a potential plaintiff on notice of the facts that constituted a violation.  See Valentini v. Citigroup, Inc., --- F. Supp. 2d ---, 2011 WL 6780915, at *11-12 (S.D.N.Y. Dec. 27, 2011) (applying Merck and Pontiac in the 10(b) context and finding that alleged losses sustained by the plaintiffs did not give them adequate information to infer the defendants' scienter).

Second, it also ignores the Court's inability to resolve fact-intensive issues relating to the statute of limitations on

11

a motion to dismiss.  Cf. LC Capital Partners, LP v. Frontier Ins. Grp., Inc., 318 F.3d 148, 156 (2d Cir. 2003).  That is precisely what would be required to determine when Schwack sustained losses on his ProShares ETF investment.  See id.  (See also ProShares Compl., Pl.'s Certification (Dkt. No. 1).)  There is no indication on the face of the ProShares complaint or Schwack's PSLRA certification annexed thereto--or anything else before the Court--stating precisely when Schwack sustained losses on his ProShares investment.  (See generally ProShares Compl.)  Indeed, Schwack's ProShares PSLRA certification simply provides the dates of Schwack's purchases and sales.  (Id. at Pl.'s PSLRA Certification.)  In any event, defendants do not argue why that date should trigger the statute of limitations with respect to Schwack's Direxion's ERY ETF investment, and the Court declines to credit the conclusory argument that losses were sustained in 2008 and 2009.  (See MTD TAC Mem. at 4.)  See LC Capital Partners, LP, 318 F.3d at 156.

Because there is at least one plaintiff--i.e., Schwack--whose ERY claims fall within section 13's limitations period, claims of other ERY purchasers (e.g., Killmon) were tolled by the statute of limitations and are included in this action.  See Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

The Statute of Repose

In a final attempt to rid this action of plaintiffs' ERY claims, defendants argue that those claims are barred by the statute of repose.  Specifically, defendants assert that because the TAC was filed more than three years after ERY was first bona fide offered to the public, the ERY claims are barred by section 13's statute of repose, and cannot be salvaged by tolling or relation back.  (TAC MTD Mem. at 5-9.)

The clause of section 13 known as the "statute of repose" provides:  "In no event shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public . . ."  15 U.S.C. § 77m.  Courts in this District have interpreted that proviso to set an absolute time period within which a plaintiff "must bring his claim or else the defendant's liability is extinguished."  Footbridge Ltd. Trust v. Countrywide Fin. Corp., 770 F. Supp. 2d 618, 622-23 (S.D.N.Y. 2011); accord In re Lehman Bros. Secs. & ERISA Litig., 799 F. Supp. 2d 258, 310 (S.D.N.Y. 2011); In re IndyMac Mortgage-Backed Secs. Litig., 793 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2011); In re Lehman Bros. Secs. & ERISA Litig., 800 F. Supp. 2d 477, 481-83 (S.D.N.Y. 2011).  The "absolute" nature of the statute of repose has been interpreted such that neither tolling (American Pipe or otherwise) nor relation back under Fed. R. Civ. P. 15(c) stops the repose clock.  Footbridge Ltd.

Trust, 770 F. Supp. 2d at 624-27; In re Lehman Bros. Secs. &
ERISA Litig., 799 F. Supp. 2d at 310; In re IndyMac Mortgage-
Backed Secs. Litig., 793 F. Supp. 2d at 643; In re Lehman Bros.
Secs. & ERISA Litig., 800 F. Supp. 2d at 482-83.

Simply comparing dates on a calendar, there is no question
that the TAC (filed February 10, 2012) brings claims related to
ERY three-years after those securities were first bona fide
offered to the public (i.e., on November 8, 2008). But, as
plaintiffs assert, simply using the dates alone "treats the TAC
as if it were the original complaint--rather than the amended
complaint--filed by any of the ERY plaintiffs, effectively
erasing more than two years of litigation." (Pls.' Mem. of Law
in Opp'n to Defs.' Mot. to Dismiss the TAC ("Pls. Opp'n") (Dkt.
No. 91) at 6.) The first pleading to assert claims on behalf of
ERY purchasers was filed on November 23, 2010 (Dkt. No. 46)--
i.e., within the three-year statute repose (which closed claims
first filed after November 8, 2011). See 15 U.S.C. § 77m.

In addition, using dates alone ignores the rule (of which
defendants are clearly aware) that "when a complaint is filed
within the statute of limitations but is subsequently dismissed
without prejudice in an order containing conditions for
reinstatement within a specified period of time, the statute of
limitations is tolled provided that the plaintiff meets those
conditions." Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir.

14

2005) (quoted in TAC MTD Mem. at 6).  That is precisely the case
here--_i.e._, the Court dismissed the ERY claims in the SAC
subject to reinstatement upon adequately alleging compliance
with the statute of limitations.  See 2012 WL 259384, at *9.

Thus, the argument that the ERY claims are barred by the
statute of repose has no place in the Court's analysis of the
timeliness of Schwack's and Killmon's claims.

Failure to File New Certifications

Relying on In re Eaton Vance Corp. Securities Litigation,
219 F.R.D. 38 (D. Mass. 2003), defendants (again) seek to have
plaintiffs dismissed from this action for failure to file new
PSLRA certificates with the TAC.  (TAC MTD Mem. at 9-10; see
also Defs. Mem. in Support of Mot. to Dismiss SAC (Dkt. No. 65)
at 20-21.)  Given the current posture of this action, on the
particular circumstances here, that omission does not require
dismissal.

In re Eaton Vance dismissed the claims of a newly-added
plaintiff who had failed to provide any PSLRA certification with
his complaint.  219 F.R.D. at 42.  Here, none of plaintiffs
named in the TAC is newly-added.  (Compare TAC ¶¶ 68-73 with SAC
¶¶ 68-73.)  As this Court found in considering this same
argument on defendants' motion to dismiss the SAC, all named
plaintiffs have filed PSLRA certifications (timely or otherwise)
and plaintiffs' counsel's representations at oral argument cured

any deficiencies in those certifications. In re Direxion Shares ETF Trust, 2012 WL 259384, at *12. The Court found that defendants suffered no prejudice from belated filings of PSLRA certifications, and declined to dismiss the action on those grounds. Id. Although compliance with the PSLRA advances Congress' "important policy goals," In re Eaton Vance, 219 F.R.D. at 42, which is important in its own right, dismissal for failure to file new certifications where, as here, the operative pleading states a facially plausible securities law violation would defeat the equally-important policy goal of the "efficiency and economy of litigation," Am. Pipe, 414 U.S. at 553. See In re Atlas Worldwide Holdings, Inc. Secs. Litig., 324 F. Supp. 2d 474, 500 (S.D.N.Y. 2004) (finding that requiring "a class representative [to] file a new certification each time his attorney makes an amendment to the complaint" "would be a useless burden"; denying a motion to strike for failure to file a new PSLRA certification with an amended pleading).

However, given that the TAC contains new allegations that are critical to the maintenance of this action, and given that discovery will commence promptly, all named plaintiffs are directed to file and serve new PSLRA certifications for the TAC no later than March 20, 2012. As the Court previously found with respect to the SAC certifications, defendants will not

suffer prejudice with plaintiffs' filing of PSLRA certifications for the TAC after they filed the TAC.

The Court finds that Schwack and Killmon have alleged adequately compliance with the one-year statute of limitations, and nothing else requires dismissal of those claims.   Purchasers of ERY are now included in this action.

CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss the third consolidated amended complaint is DENIED.

This action is proceeding as a purported class action of purchasers in FAZ and ERY.

The PSLRA stay of discovery is lifted.   The parties are directed to appear for an initial pretrial conference on **March 16, 2012, at 1:00 p.m.**   The parties should comply with all of Judge Forrest's Individual Practices for initial pretrial conferences.

The Clerk of the Court is directed to terminate defendants' motion to dismiss the TAC (Dkt. No. 89).


SO ORDERED:

Dated:   New York, New York
          March _6_, 2012


                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge