**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re DIREXION SHARES ETF TRUST | Civil Action No. 1:09-CV-08011-KBF |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

William B. Federman
wbf@federmanlaw.com
Stuart Emmons
swe@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112

*Lead Counsel for the FAZ Plaintiffs and the Class*

Kenneth G. Gilman
kgilman@gilmanpastor.com
**GILMAN LAW LLP**
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Phone: (239) 221-8301
Fax: (239) 676-8224

Mark C. Rifkin
rifkin@whafh.com
Maja Lukic
lukic@whafh.com
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Phone: (212) 545-4600
Fax: (212) 545-4653

*Co-Lead Counsel for the ERY Plaintiffs and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................ 1

LEGAL ARGUMENT................................................................................................................... 4

    A.    The Class Meets All Four Prerequisites Of Rule 23(a) ......................................... 5

            1.    The Class Is Sufficiently Numerous ........................................................... 5

            2.    There Are Common Questions Of Law And Fact ..................................... 6

            3.    Plaintiffs' Claims Are Typical Of The Class .............................................. 9

            4.    Plaintiffs Will Fairly and Adequately  Protect
                 The Interests Of The Class......................................................................... 11

    B.    The Class Should Include Purchasers Of All  Four Series
        Of Bear Funds In The Direxion Trust.................................................................. 13

    C.    The Class Also Meets The Requirements Of Rule 23(b)(3)................................ 18

            1.    Common Questions Of Law And Fact  Predominate
                 Over Any Possible Individual Questions................................................... 18

            2.    A Class Action Is Superior To  Alternative Methods
                 For Resolving This Dispute ....................................................................... 23

CONCLUSION............................................................................................................................ 25

## TABLE OF AUTHORITIES

## CASES

*In re Arakis Energy Corp. Securities Litigation*,
No. 95-cv-3431
1999 U.S. Dist. LEXIS 22246 (E.D.N.Y. April 27, 1999) ....................................................8, 19

*In re Bank of America Corp. Securities, Derivative, and ERISA Litigation*,
No. 09 MD 2058,
2012 U.S. Dist. LEXIS 14978 (S.D.N.Y. Feb. 6, 2012) (Castel, J.)........................4, 5, 6, 15, 16

*Banyi v. Mazar*,
205 F.R.D. 160 (S.D.N.Y. 2002) ...................................................................................................5

*Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.*,
269 F.R.D. 340 (S.D.N.Y. 2010) .................................................................................................24

*Caridad v. Metro-North Commuter Railroad*,
191 F.3d 283 (2d Cir.1999).............................................................................................................9

*In re Citigroup Inc. Bond Litigation*,
723 F. Supp. 2d 568 (S.D.N.Y. 2010) (Stein, J.) ........................................................................14

*In re Colonial Partnership Litigation*,
No. H-90-829(JAC)
1993 U.S. Dist. LEXIS 10884 (D. Conn. 1993) ..........................................................................11

*Consolidated Rail Corp. v. Hyde Park*,
47 F.3d 473 (2d Cir. 1995)..............................................................................................................5

*Cordes & Co. Financial Services. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)............................................................................................................14

*In re Countrywide Financial Corp. Securities Litigation*,
588 F. Supp. 2d 1132 (C.D. Cal. 2009) .......................................................................................15

*Cromer Finance Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001) .................................................................................................24

*Cross v. 21st Century Holding Co.*,
No. 04 Civ. 4333,
2004 U.S. Dist. LEXIS 2283 (S.D.N.Y. Feb. 18, 2004) (Mukasey, J.) ......................................20

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ......................................................................................7, 11, 12

*DeMaria v. Andersen*,
  318 F.3d 170 (2d Cir. 2003)................................................................................6

*Dura-Bilt v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) ...............................................................11, 18, 21

*In re Dynex Capital, Inc. Securities Litigation*,
  No. 05-cv-1897,
  2011 U.S. Dist. LEXIS 22484 (S.D.N.Y. Mar. 7, 2011) ......................................7, 8

*In re Flag Telecom Holdings Ltd Securities Litigation*,
  574 F.3d 29 (2d Cir. 2009)...............................................................9, 11, 12, 25

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)..............................................................................24

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)..........................................................................................19

*Hicks v. Morgan Stanley & Co.*,
  No. 01-cv-10071,
  2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) .....................................12

*IndyMac Mortgage–Backed Securities Litigation*,
  718 F. Supp. 2d 495 (S.D.N.Y. 2010) (Kaplan, J.)..............................................17

*In re Initial Public Offerings Securities Litigation*,
  471 F.3d 24 (2d Cir. 2006).............................................................................4, 20

*In re Initial Public Offering Securities Litigation*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ...........................................................................7

*Katz v. Image Innovations Holdings, Inc.*,
  No. 06-cv-3707,
  2010 U.S. Dist. LEXIS 73929 (S.D.N.Y. July 22, 2010) ...................................7, 10

*Korn v. Franchard Corp.*,
  456 F.2d 1206 (2d Cir. 1972)...............................................................................7

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................5, 20, 21, 22

*In re Lehman Bros. Secs. & ERISA Litigation*,
  684 F. Supp. 2d 485 (S.D.N.Y. 2010) (Kaplan, J.)..............................................16

*Marisol A. by Forbes v. Giuliani*,

126 F.3d 372 (2d Cir. 1997)...........................................................................................7

*In re Marsh & McLennan Cos. Inc. Securities Litigation*,
No. 04-cv-8144,
2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) .................................9, 10, 11, 21, 24

*Menkes v. Stolt-Nielsen, S.A.*,
270 F.R.D. 80 (D. Conn. 2010)....................................................................................22

*In re Merrill Lynch Tyco Research Securities Litigation*,
249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................................23

*In re Monster Worldwide Securities Litigation*,
251 F.R.D. 132 (S.D.N.Y. 2008) ...........................................................................11, 23

*In re Morgan Stanley Information Fund Securities Litigation*,
592 F.3d 347 (2d Cir. 2010)........................................................................................19

*In re NASDAQ Market-Makers Antitrust Litigation*,
172 F.R.D. 119 (S.D.N.Y. 1997) ...................................................................................9

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*,
No. 08 Civ. 5653 (PAC),
2010 U.S. Dist. LEXIS 47512
(S.D.N.Y., Mar. 29, 2010) (Crotty, J.).......................................................................17

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*,
No. 08 Civ. 5653 (PAC),
2011 U.S. Dist. LEXIS 92597
(S.D.N.Y., Aug. 16, 2011) (Crotty, J.)..............................................................19, 20, 21

*New Jersey Carpenters Health Fund v. NovaStar Mortgage, Inc.*,
No. 08 Civ. 5310,
2011 U.S. Dist. LEXIS 36363 (S.D.N.Y. Mar. 31, 2011) (Batts, J.)..........................................17

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
No. 08 CV 8781,
2011 U.S. Dist. LEXIS 32058 (S.D.N.Y. March 31, 2010) (Baer, J.)........................................17

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,
720 F. Supp. 2d 254 (S.D.N.Y. 2010) (Baer, J.)..................................................................16, 17

*In re NYSE Specialists Securities Litigation*,
260 F.R.D. 55 (S.D.N.Y. 2009) ..............................................................................11, 18

*In re Prestige Brands Holdings, Inc. Securities Litigation*,

No. 05-cv-6924,
2007 U.S. Dist. LEXIS 66199 (S.D.N.Y. Sept. 5, 2007)..............................................................8

*Public Employees Retirement System v. Merrill Lynch & Co.*,
714 F. Supp. 2d 475 (S.D.N.Y. 2010) (Rakoff, J.) ....................................................................16

*Public Employees Retirement System of Mississippi v. Goldman Sachs Group, Inc.*,
No. 09-cv-1110,
2012 U.S. Dist. LEXIS 13548 (S.D.N.Y. Feb. 3, 2012) (Baer, J.) ..................................... *passim*

*Public Employees Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*,
277 F.R.D. 97 (S.D.N.Y. 2011) ........................................................................................... *passim*

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)......................................................................................................6

*Seijas v. Republic of Arg.*,
606 F.3d 53 (2d Cir. 2010)................................................................................................22, 23

*Sumitomo Copper Litigation v. Credit Lyonnais Rouse, Ltd.*,
262 F.3d 134 (2d Cir. 2001).....................................................................................................14

*Teachers' Retirement System of Louisiana v. ACLN Ltd.*,
No. 01-cv-1184,
2004 U.S. Dist. LEXIS 25927 (S.D.N.Y. Dec. 27, 2004) ..................................................5, 6, 10

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*,
546 F.3d 196 (2d Cir. 2008).......................................................................................................4

*UFCW Local 1776 v. Eli Lilly and Co.*,
620 F.3d 121 (2d Cir. 2010)......................................................................................................18

*In re Visa Check/Master Money Antitrust Litigation*,
280 F.3d 124 (2d. Cir. 2011).....................................................................................................23

*In re Vivendi Universal S.A. Securities Litigation*,
242 F.R.D. 76 (S.D.N.Y. 2007) (Holwell, J.) ..........................................................................5, 7

*In re Wachovia Equity Securities Litigation*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011) (Sullivan, J.)..................................................................16

*In re WorldCom, Inc. Securities Litigation*,
219 F.R.D. 267 (S.D.N.Y. 2003) .......................................................................................12, 25

## RULES AND STATUTES

15 U.S.C. § 77k ............................................................................................................................8
15 U.S.C. § 77k(e) ......................................................................................................................22
15 U.S.C. § 77m .............................................................................................................................2
15 U.S.C. § 77o ..............................................................................................................................8
15 U.S.C. § 77o(a) ......................................................................................................................22

17 C.F.R. 230.430B(f)(2)..............................................................................................................2

Federal Rule of Civil Procedure
   23(a) .................................................................................................................................4, 5, 25
   23(a)(1) .................................................................................................................................5, 6
   23(a)(2) .................................................................................................................................7, 9
   23(a)(3) .....................................................................................................................................9
   23(a)(4) .......................................................................................................................11, 12, 13
   23(b) ..........................................................................................................................................4
   23(b)(3) ...........................................................................................................................passim
   23(c)(1)(C) ......................................................................................................................14, 25
   23(c)(5) ...................................................................................................................................25
   23(d)........................................................................................................................................25

Court-appointed Lead Plaintiffs Evan Stoopler and Howard Schwack and named Plaintiffs Jason Haas, David Remmells, and James Killmon, by and through their undersigned counsel, hereby submit this Memorandum of Law in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant Direxion Shares ETF Trust ("Direxion") is a registered investment company. TAC ¶¶ 74, 93. *See* Declaration of Mark C. Rifkin in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel ("Rifkin Decl.") ¶ 3.[1] On September 16, 2008, Direxion filed with the Securities and Exchange Commission ("SEC") a registration statement for shares in various triple-leveraged exchanged traded funds ("ETFs") and filed a Prospectus for the ETFs on October 3, 2008 (the "Prospectus"). TAC ¶¶ 10, 23. The Registration Statement also included a statement of additional information ("SAI"). TAC ¶ 106. The SAI was not a part of the Prospectus and was not furnished to Plaintiffs or the other members of the Class with the Prospectus.

On November 3, 2008, Direxion filed with the SEC a supplement to the Registration Statement and Prospectus (the "November 3 Supplement"). TAC ¶¶ 23, 103. On December 9, 2008, Defendants filed a second supplement to the Registration Statement and Prospectus on December 9, 2008 (the "December 9 Supplement"). TAC ¶ 152. The November 3 and December 9 Supplements (the "Offering Documents") offered four particular inverse, triple-leveraged ETFs, which seek a daily investment return of three times (*i.e.*, 300%) the inverse of

---

[1] The factual background and procedural history of the litigation are summarized herein. A more complete statement of the factual background and procedural history is set forth in the accompanying Rifkin Decl.

the daily performance of the underlying index to which it relates.  TAC ¶ 12.  The four inverse, triple-leveraged ETFs are: (i) the Financial Bear 3X ETF ("FAZ"); (ii) the Energy Bear 3X ETF ("ERY"); (iii) the Large Cap Bear 3X ETF ("BGZ"); and (iv) the Small Cap Bear 3X ETF ("TZA") (collectively, the "Bear Funds").  Rifkin Decl. ¶ 5.  Each Bear Fund was a series of the Direxion trust, and all four were covered by the November 3 Supplement.  Rifkin Decl. ¶ 6.

The Bear Funds were first "bona fide offered to the public" as Creation Units on November 3, 2008.  Rifkin Decl. ¶ 7.  *See also* 15 U.S.C. § 77m; 17 C.F.R. ¶ 230.430B(f)(2). Once sold to the public, the Bear Funds traded in the secondary market on the New York Stock Exchange.  TAC ¶¶ 74.  Lead Plaintiff Stoopler and named Plaintiffs Remmells, and Haas, purchased FAZ shares between November 3, 2008, and April 9, 2009 (the "Class Period").  TAC ¶¶ 17(a)-(c).  Lead Plaintiff Schwack and named Plaintiff Kilmmon purchased shares of ERY shares during the Class Period.  TAC ¶¶ 19(a)-(b).  The shares purchased by Plaintiffs were traceable to the Offering Documents.  *See* Rifkin Decl. ¶ 12.

Lead Plaintiff Stoopler commenced the first class action against Defendant Direxion and certain of its officers on September 18, 2009, on behalf of FAZ purchasers.  Dkt. No. 1.  On January 13, 2010, Lead Plaintiff Schwack filed a similar class action on behalf of ERY purchasers.  Dkt. No. 44.  On August 12, 2010, the Court consolidated the FAZ and ERY actions, appointed Stoopler as Lead Plaintiff and Federman & Sherwood as Lead Counsel to represent the holders of the FAZ Fund, and appointed Schwack as Lead Plaintiff and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") and Gilman & Pastor LLP n/k/a Gilman Law LLP as Lead Counsel to represent the holders of the ERY Fund.  Dkt. No. 44.  On April 8, 2011, Lead Plaintiffs and other named plaintiffs filed their Second Amended Class Action Complaint ("SAC").  Dkt. No. 59.

Defendants moved to dismiss the SAC on June 10, 2011.  Dkt. No. 62.  On January 27, 2012, the Court entered its Opinion and Order ("Opinion") granting in part and denying in part Defendants' motion to dismiss, and granting Plaintiffs leave to further amend the SAC to allege compliance with the statute of limitations.  Dkt. No. 85, at 41-42.  Plaintiffs filed their Third Amended Class Action Complaint ("TAC") on February 10, 2012.  Dkt. No. 87.  Defendants moved to dismiss the TAC on February 24, 2012.  Dkt. Nos. 89 and 90.  On March 6, 2012, the Court entered its Memorandum Opinion and Order ("Memorandum Opinion") denying the Defendants' motion to dismiss the TAC.  Dkt. No. 94.  On April 9, 2012, following a scheduling conference, the Court entered a Scheduling Order setting forth the schedule for, *inter alia*, class certification briefing.  Dkt. No. 99.

Plaintiffs allege that Bear Funds investors were required to buy and sell their entire positions within a single trading day if they were to achieve the investment objectives set forth in the Prospectuses.  TAC ¶¶ 25, 40, 113, 151, 153, 174, 176, 203, and 325.  Plaintiffs allege that the Offering Documents did not disclose or disclose adequately "that holding shares in the Funds for longer than a single day could result in significant loss."  Opinion, at 6; *see* TAC ¶ 3. Plaintiffs allege that they and all other members of the Class who held Bear Fund shares for longer than a single trading period suffered huge losses when the undisclosed volatility, compounding, and rebalancing risk, holding period risk, and hedging risk materialized.  TAC ¶¶ 49, 303, 318-19, 329, 338-39.

Plaintiffs now seek to represent a Class of purchasers of any Bear Funds during the Class

Period who held their shares for longer than a single trading period.[2]

## LEGAL ARGUMENT

To certify the Class, Plaintiffs must prove that the four prerequisites of Rule 23(a) have been met. Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008) (internal quotation marks and citation omitted). In addition, the Class must satisfy at least one of the three requirements of Rule 23(b). Plaintiffs seek certification of the Class pursuant to Rule 23(b)(3), which is met when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Teamsters Local*, 546 F.3d at 202.

The Court must "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006). Plaintiffs must meet the requirements of Rule 23 by a preponderance of the evidence. *See Teamsters Local*, 546 F.3d at 202. However, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *In re IPO*, 471 F.3d at 41; *see also In re Bank of Am. Corp.*

---

[2] Lead Plaintiff for the FAZ Fund, Stoopler, and his counsel Federman & Sherwood do not join the request of Lead Plaintiff for the ERY Fund, Schwack, that the Class be certified as to the BGZ and TZA Funds.

*Sec., Deriv., and ERISA Litig.*, No. 09 MD 2058, 2012 U.S. Dist. LEXIS 14978, at \*8-9 (S.D.N.Y. Feb. 6, 2012) (Castel, J.); *In re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (Holwell, J.).

For the reasons that follow, this action meets all four prerequisites of Rule 23(a) and satisfies the predominance and superiority requirements of Rule 23(b)(3) as well.

## A.  The Class Meets All Four Prerequisites Of Rule 23(a)

### 1.  The Class Is Sufficiently Numerous

Rule 23 permits class certification if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Certification is proper when "the number of class members is sufficiently large so that joinder of all members would make litigation needlessly complicated and inefficient."  *Banyi v. Mazar*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).  *See also Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 174-75 (S.D.N.Y. 2008) (numerosity requirement met where difficult or inconvenient to join all members).  Plaintiffs do not expect that Defendants will dispute numerosity.

In the Second Circuit, as elsewhere, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Moreover, the exact number of class members need not be proven; the Court "may make common sense assumptions regarding numerosity."  *In re Vivendi*, 242 F.R.D. at 83.  The "'[d]etermination of practicability depends on all the circumstances surrounding the case, not on mere numbers.'"  *Public Empls. Ret. Sys. Of Mississippi v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 104 (S.D.N.Y. 2011) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

In class actions such as this, relating to publicly owned and nationally listed securities, "'the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'"  *Teachers' Ret. Sys. of Louisiana v. ACLN*

*Ltd.*, No. 01-cv-1184, 2004 U.S. Dist. LEXIS 25927, at \*10-11 (S.D.N.Y. Dec. 27, 2004) (seven million actively traded public shares) (quoting *Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397, 1401 (D. Conn. 1988)).  Thus, "[c]ourts have certified classes based on the volume of outstanding shares."  *In re Bank of Am.*, 2012 U.S. Dist. LEXIS 14978, at \*10 (collecting cases).

By the end of the first week of the Class Period, there were ***at least*** six hundred thousand Bear Fund shares outstanding and in public hands.  Rifkin Decl. ¶ 12.  The number of Bear Fund shares outstanding grew throughout the Class Period, so that there were ***at least*** 70.5 million shares outstanding and in public hands when the Class Period ended.  Rifkin Decl. ¶ 12.  Those shares were actively traded on the New York Stock Exchange throughout the Class Period.  Rifkin Decl. ¶ 10.[3]  All of the Bear Fund shares were traceable to the November 3 and December 9 Supplements – the ***only*** offering documents effective during the Class Period.  Rifkin Decl. ¶ 12.  *See also DeMaria v. Andersen*, 318 F.3d 170, 175-78 (2d Cir. 2003) ("long-standing practice" in Second Circuit permits Section 11 claim by open market purchasers who can "trace" shares to defective registration statement).  Since the Bear Funds were traded on the New York Stock Exchange, a national exchange, it is virtually certain that the members of the Class are geographically dispersed throughout the United States.  *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (geographical dispersion is relevant consideration under Rule 23(a)(1)).

Thus, the numerosity requirement of Rule 23(a)(1) is met.

## 2.   There Are Common Questions Of Law And Fact

---

[3] Plaintiffs believe there were at least hundreds of purchasers of Bear Fund shares during the Class Period.  However, Defendants have not produced any documents (except for the Prospectuses) and have not answered any interrogatories.  Plaintiffs intend, and reserve their right, to submit an expert declaration in support of their motion for class certification on June 15, 2012, pursuant to the Court's Scheduling Order.

Rule 23(a)(2) requires that Plaintiffs' claims share at least one common question of law or fact with the other members of the Class.  Fed. R. Civ. P. 23(a)(2); *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).   Courts liberally interpret the Rule 23(a)(2) commonality requirement.  *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008).   Therefore, commonality "does not mean that all issues must be identical to each member."  *Id.*; *see also Katz v. Image Innovations Holdings, Inc.*, No. 06-cv-3707, 2010 U.S. Dist. LEXIS 73929, at *10-11 (S.D.N.Y. July 22, 2010) (commonality does not require identical claims and arguments).   The party seeking class certification is merely required to "identify some unifying thread among the members' claims that warrant class treatment."  *Damassia*, 250 F.R.D. at 156; *In re Vivendi*, 242 F.R.D. at 84.   "Even a single common question of law or fact may suffice to satisfy the commonality requirement."  *Public Empls. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. at 105 (citing *Marisol A.*, 126 F.3d at 376).

In securities actions such as this, the commonality requirement is satisfied when "class members have been injured by similar material misrepresentations and omissions."  *In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79, 85 (S.D.N.Y. 2007).   As a result, the requirement is "plainly satisfied [where] the alleged misrepresentations in the prospectus relate to all investors, and the existence and materiality of such misrepresentations obviously present important common issues."  *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972); *see also Pub. Empls. Ret. Sys. of Miss. v. Goldman Sachs Group, Inc.*, 09 CV 1110, 2012 U.S. Dist. LEXIS 13548 (S.D.N.Y. Feb. 3, 2012) (Baer, J.) (commonality met because "questions regarding the alleged misstatements in the Offering Documents and other issues articulated by Plaintiffs are susceptible to common answers"); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05-cv-1897, 2011 U.S. Dist. LEXIS 22484, at *6 (S.D.N.Y. Mar. 7, 2011) (finding commonality for mortgage-

backed bonds collateralized by impaired loans because class members "are alleged to have been impacted by the same misrepresentations and omissions"); *In re Prestige Brands Holdings, Inc. Sec. Litig.*, No. 05-cv-6924, 2007 U.S. Dist. LEXIS 66199, at \*9-10 (S.D.N.Y. Sept. 5, 2007); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-cv-3431, 1999 U.S. Dist. LEXIS 22246, at \*19 (E.D.N.Y. April 27, 1999) ("where all class claims arise out of publicly announced, allegedly false statements, common questions of law and fact are virtually assured").  That the registered securities are inverse, triple-leveraged ETFs rather than common stock or bonds does not change that analysis.

Here, the claims arise out of statements in each Registration Statement and Prospectus that Defendants used to sell shares in the Bear ETFs to the Class.  Questions of law and fact common to the Class therefore include:

(1)  whether the Offering Documents adequately disclosed the risk of holding Bear Funds for longer than a single trading day;

(2)  whether the Offering Documents adequately disclosed the magnitude of the risk of holding Bear Funds for longer than a single day;

(3)  whether the risk of holding Bear Funds for longer than a single trading day was material, meaning whether a reasonable investor would consider the risk important to her investment decision;

(4)  whether the Offering Documents were materially untrue or misleading within the meaning of Section 11 of the Securities Act, 15 U.S.C. § 77k;

(5)  whether the Bear Fund shares were traceable to the misleading offering documents;

(6)  whether the Individual Defendants participated in the preparation of the false and misleading Offering Documents or were "control persons" within the meaning of Section 15 of the Securities Act, 15 U.S.C. § 77o; and

(7)  whether Class members were injured when the risks of holding Bear Funds for longer than a single trading session materialized and, if so, what measure of damages is appropriate under Section 11 of the Securities Act, 15 U.S.C. § 77k.

All these common questions of law and fact are susceptible to common answers.  *Merrill Lynch*,

277 F.R.D. at 106 ("the common questions presented by this case – essentially, whether the Offering Documents were false or misleading in one or more respects – are clearly susceptible to common answers").

Accordingly, the commonality requirement of Rule 23(a)(2) is plainly satisfied.

### 3.   Plaintiffs' Claims Are Typical Of The Class

The typicality requirement of Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings Ltd Sec. Litig.,* 574 F.3d 29, 35 (2d Cir. 2009).  As courts in the Second Circuit have held, "the 'typicality requirement is not demanding.'"  *Merrill Lynch,* 277 F.R.D. at 107 (quoting *In re Prestige Brands Holdings, Inc.,* No. 05 Civ. 6924 (CLB), 2007 U.S. Dist. LEXIS 66199, *10-11 (S.D.N.Y. 2007) (Brieant, J.)).

When, as here, "'the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'"  *Merrill Lynch,* 277 F.R.D. at 106 (quoting *Robidoux,* 987 F.2d at 936-37).  Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members." *Caridad v. Metro-North Commuter R.,* 191 F.3d 283, 293 (2d Cir. 1999).  Rather, it "requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *Id.* (internal citation and quotation marks omitted).

Plaintiffs are not required to show that their situations and those of the proposed Class members are identical.  *See Merrill Lynch*, 277 F.R.D. at 108 (allegations of individualized damages for class representatives do not preclude finding of typicality); *see also In re NASDAQ Market-Makers Antitrust Litigation*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997) (Sweet, J.); *In re*

*Marsh & McLennan Cos. Inc. Sec. Litig.*, No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953, at *10 (S.D.N.Y. Dec. 23, 2009) (McMahon, J.).   When, as here, Plaintiffs allege "a common pattern of wrongdoing and will present the same evidence, based on the same legal theories" to support their claims as would all other members of the Class, "factual variances in the position of each member" do not defeat typicality. *Teachers Ret. Sys. of Louisiana,* 2004 U.S. Dist. LEXIS 25927, at *12.   That Plaintiffs purchased inverse, triple-leveraged ETFs rather than common stock or bonds does not compel a different outcome.

Plaintiffs' claims are typical of the claims of the Class.  Like all other Class members, Plaintiffs purchased Bear Fund shares during the Class Period traceable to defective offering documents: the November 3 and December 9 Supplements.  The Offering Documents uniformly contained the same untrue and misleading statements about the risks of holding Bear Funds for longer than one trading session, the effect of volatility, rebalancing, compounding, and holding period on performance, and the fact that investors could lose nearly their entire investment despite correctly predicting the "direction" of the underlying index for all members of the Class. Thus, Defendants' wrongdoing was directed at or affected Plaintiff and the other members of the Class similarly, Plaintiffs' claims arise from the same course of conduct that gives rise to the claims of every other Class member who purchased Bear Fund shares during the Class Period, and they will focus on the same misrepresentations and omissions and assert the same legal theories in proving Defendants' liability. *See Katz*, 2010 U.S. Dist. LEXIS 73929, at *12-13.

Differences in purchase dates, damages, or any affirmative defenses that might be unique to Plaintiffs or any absent Class members do not render these claims atypical. *See Marsh & McLennan*, 2009 WL 5178546, at *10 ("Factual differences involving the date of acquisition, type of securities purchased, and manner by which the investor acquired the securities will not

destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct."); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 72-73 (S.D.N.Y. 2009) ("As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner, against all members of the class, they establish [the] necessary typicality.") (internal quotation marks and citation omitted); *In re Colonial P'ship Litig.*, No. H-90-829 (JAC), 1993 U.S. Dist. LEXIS 10884, at *16-17 (D. Conn. 1993) ("fact that a 'representative party may be barred from recovery by defenses peculiar to him which would not bar other members' need not in itself defeat certification") (citations omitted).

Plaintiffs easily have established typicality here.  Plaintiffs and all other Class members assert the same claims under the Securities Act based upon the same material misstatements and omissions in the Offering Documents and on the same allegations of "control person" liability; they predicate their claims on the same unlawful conduct.  There will be no unique defenses that could become the focus of the litigation, and as such, Plaintiffs satisfy the typicality requirement. *See In re Monster Worldwide Sec. Litig.*, 251 F.R.D. 132, 134-35 (S.D.N.Y. 2008); *In re Colonial P'ship*, 1993 U.S. Dist. LEXIS 10884, at *16-17.

### 4.    Plaintiffs Will Fairly and Adequately Protect The Interests Of The Class

Rule 23(a)(4) also requires Plaintiffs to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Adequacy entails inquiry as to whether: (1) plaintiffs' interests are antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Flag Telecom*, 574 F.3d at 35 (quotation marks omitted).  Typicality and adequacy overlap considerably.  *See Dura-Bilt v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).  A finding that the class representative satisfies the typicality requirement is "strong evidence that [her] interests are not

antagonistic to those of the class; the same strategies that will vindicate plaintiff[s'] claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

To defeat class certification, any conflict between Plaintiffs and the Class must be "fundamental." *Flag Telecom*, 574 F.3d at 35. There are no conflicts – fundamental or otherwise – between Plaintiffs and the Class in this case. Plaintiffs' interests are aligned with those of the Class, since all Class members purchased Bear Fund shares during the Class Period traceable to the same material untrue or misleading statements and omissions in the Offering Documents. *See Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071, 2003 U.S. Dist. LEXIS 11972, at *8 (S.D.N.Y. July 16, 2003) (proposed class representative adequate where the complaint alleged "a common course of conduct and unitary legal theory for the entire class period"); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) ("named plaintiffs' interests are directly aligned with those of the absent class members; they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments").

Plaintiffs have demonstrated their willingness and commitment to this litigation on behalf of the Class. Plaintiffs have retained experienced counsel, received regular updates, participated in strategic decisions, and are actively participating in discovery. In summary, Plaintiffs have shown considerable interest in ensuring the Class attains a recovery, and therefore satisfy the adequacy requirement of Rule 23(a)(4).

Plaintiffs' counsel is unquestionably qualified and capable of prosecuting this action. Federman & Sherwood has years of experience in prosecuting analogous securities class and shareholder actions to successful conclusions in both state and federal courts nationwide. *See*

Federman & Sherwood Firm Resume, Rifkin Decl. Ex. 9.  William B. Federman has more than 30 years of complex and securities litigation experience, has lectured nationally on securities and complex litigation matters, and has published works on the subject. *See* Rifkin Decl. ¶ 28.

As demonstrated in the accompanying Rifkin Decl., Wolf Haldenstein has more than 45 years of experience litigating securities and shareholder class actions and other complex representative litigation in state and federal courts across the country. *See* Rifkin Decl. ¶ 27. Wolf Haldenstein has been responsible for many ground-breaking decisions, and has overseen many of the largest securities cases ever prosecuted. *See* Wolf Haldenstein Firm Resume, Rifkin Decl. Ex. 8.  Mark C. Rifkin has more than 20 years of experience litigating securities, antitrust, and other complex representative actions, and has achieved a large number of noteworthy successes. *See* Rifkin Decl. ¶ 27.  Similarly, Gilman Law has prosecuted numerous complex litigation matters in both state and federal courts throughout the United States for over 30 years. *See* Gilman Law Firm Resume, Rifkin Decl. Ex. 8.  Counsel's competence and commitment to prosecuting this action have been amply demonstrated by the results obtained to date.

The requirements of Rule 23(a)(4) are satisfied.

### B. The Class Should Include Purchasers Of All Four Series Of Bear Funds In The Direxion Trust

Plaintiffs should be permitted to represent a Class consisting of the purchasers of all four series of Bear Funds in the Direxion trust.[4]  In this case, all four Bear Funds: (i) were sold in a *single* offering, (ii) by the *same* defendants, (iii) from a *single* trust, and (iv) had the *same* material risks. *See* Rifkin Decl. ¶¶ 5-6, 8-9, 26.  Moreover, all four Bear Funds were sold

---

[4] As stated above, Lead Plaintiff for the FAZ Fund, Stoopler, does not join Lead Plaintiff for the ERY Fund, Schwack, in seeking certification of the Class as to the BGZ and TZA Funds.

pursuant to the *same* Offering Documents, with the *same* misrepresentations and omissions of material fact about *all* of the series, and causing the *same* injuries. *See id.* at ¶¶ 5-6, 8-9, 13-15 and 21. Given these facts, under Rule 23, Plaintiffs – each of whom purchased shares of a series from the Direxion trust traceable to the only offering documents during the Class Period – can represent the purchasers of all four series from the Direxion trust.[5]

In *In re Citigroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 584 (S.D.N.Y. 2010) (Stein, J.), the Court recently held that purchasers of only some of 48 bond offerings, who purchased securities pursuant to each of the three separate registration statements pursuant to which the bonds were offered, had "standing to raise claims on behalf of all buyers who participated in all offerings made pursuant to those three shelf registration statements." The Court found that all three registration statements contained "at least some common information – notably, anything included in or incorporated into the initial shelf registration statement." *Id.* Because the plaintiffs alleged "actionably untrue or misleading statements or omissions in SEC filings incorporated into each of the three shelf registration statements from which all forty eight offerings identified in the complaint derive," the Court concluded that the plaintiffs had standing to assert claims on behalf of purchasers of all 48 offerings pursuant to those common shelf registration statements. *Id.* at 585.

---

[5] Plaintiffs acknowledge that the Court previously held that they "may proceed only with claims related to Funds in which they purchased shares (i.e., FAZ and ERY), and may not pursue claims relating to Funds in which they did not (i.e., BGZ and TZA)." Opinion at 17. To the extent the Court was deciding the scope of the Class, Plaintiffs respectfully submit that the decision was in the nature of a class certification determination, which is always interlocutory and subject to revision or reconsideration at any time. *See* Fed. R. Civ. P. 23(c)(1)(C); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104, n.9 (2d Cir. 2007) (district court can always modify class certification decision at any time); *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) (same).

For the same reason, in *Merrill Lynch*, 277 F.R.D. at 108, despite differences between the tranches of mortgage-backed securities sold in several offerings, the Court held that standing would not have to be determined "on a tranche-by-tranche basis."  Rather, the Court explained, because the plaintiffs alleged that the defendants" committed the same wrongful acts in the same manner, against all members of the class," the plaintiffs' claims were typical of purchasers of all tranches of securities in the same offering.  *Id.* at 109.  *See also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1166 (C.D. Cal. 2009) (plaintiff alleging untrue statements in common shelf registration statement unique to a specific offering has standing to raise claims on behalf of all purchasers from the shelf registration).  Likewise, in *Goldman Sachs*, 2012 U.S. Dist. LEXIS 13548 at *8, where the plaintiffs sought to represent purchasers of different tranches of mortgage-backed securities offered in the same trust, the Court held there was no "obvious reason why the tranches should be counted separately."

Here, of course, the Offering Documents applied equally to all four Bear Fund series in the Direxion trust.  Each Bear Fund series of the trust was affected by the same undisclosed material risks in the same way, and purchasers of all four series of the trust suffered the same injury when those risks materialized.  *See* Rifkin Decl. ¶¶ 13-15, 21.  The Offering Documents included more than just "some common information" about all four series of Bear Funds: ***all of the information*** was common to all four series.  Nothing in the Offering Documents pertained only to the FAZ or ERY series, or only to the TZA or BGZ series.

Likewise, in *In re Bank of Am.*, 2012 U.S. Dist. LEXIS 14978, at *48, the Court granted class certification and permitted the plaintiff to represent, *inter alia*, all purchasers of Bank of America's January 2011 call options between September 2008 and January 2009, even though he bought only ***one particular series*** of such securities.  The Court did so because the plaintiff

15

alleged a "common injury" with the other holders of January 2011 call options.  *Id.*  The Court rejected the defendants' argument that the plaintiff could represent only purchasers of the same series of call options, finding no "authority limiting a class to a ***particularized series*** of call options . . . ."  *Id.* (emphasis added).

Here, Plaintiffs purchased shares of two series of ETFs and suffered the exact same injury from the exact same risks as all other purchasers of not just those two series of Bear Funds, but the other two series of Bear Funds in the Direxion trust as well.  Accordingly, no authority limits the Class here to the purchasers of the two particular series of ETFs, FAZ and ERY.  *See Merrill Lynch*, 277 F.R.D. at 108; *In re Bank of Am.*, 2012 U.S. Dist. LEXIS 14978, at *48.  The Class should include purchasers of all four series of Bear Funds, since they were all injured the same way by the same undisclosed risks.

Plaintiffs respectfully submit that the cases discussed in the Opinion (at p. 17 & n.5) do not compel a different result.  Each of those cases concerned unique facts not present here:

- In *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 368-70 (S.D.N.Y. 2011) (Sullivan, J.), where the plaintiffs asserted claims on behalf of purchasers in 30 separate bond and note offerings, the Court dismissed claims relating to 14 offerings in which none of the plaintiffs purchased any securities.

- In *Pub. Emples. Ret. Sys. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 481 (S.D.N.Y. 2010) (Rakoff, J.), which held that the plaintiffs had "no standing to assert claims in relation to funds in which [they] did not personally invest," each of the mortgage pass-through certificates represented interests in a ***separate*** trust, and each was registered under a ***different*** registration statement.

- In *In re Lehman Bros. Secs. & ERISA Litig.*, 684 F. Supp. 2d 485, 490-91 (S.D.N.Y. 2010) (Kaplan, J.) (emphasis added), which held that the plaintiffs lacked standing to represent purchasers of different securities, the mortgage pass-through certificates were issued in ***separate*** trusts and were sold "in ninety-four ***separate*** offerings."  In particular, as the Court pointed out, the plaintiffs in *Lehman* did ***not*** challenge any statements "in the common registration statements."  *Id.* at 491 n.17.

- In *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*, 720 F. Supp. 2d 254, 265 (S.D.N.Y. 2010) (Baer, J.), which held that the plaintiffs lacked standing to represent purchasers of different securities, the "securities were filed in

two *separate* registration statements, and issued in fifteen *distinct* offerings." Despite the alleged similarities between the two registration statements, there were *unique* supplements for each of the 15 offerings.  *Id.*  In addition, the Court noted that the harm the plaintiffs suffered from purchasing one offering "had no bearing on any harm suffered by other investors based on alleged misstatements in *other* offering documents with *details about other offerings* that Plaintiffs did not purchase.  *Id.* (emphasis added).

- In *IndyMac Mortgage–Backed Sec. Litig.*, 718 F. Supp. 2d 495, 501 & n.40 (S.D.N.Y. 2010) (Kaplan, J.), which involved mortgage pass-through certificates sold in 106 *different* offerings pursuant to three *separate* registration statements, the Court held only that the plaintiffs lacked standing to assert claims regarding offerings in which they did not purchase certificates and could not bring claims under Section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2), on behalf of purchasers of certificates underwritten by an investment bank that was "not named as a defendant" in the litigation.

- In *N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*, No. 08Civ. 5310, 2011 U.S. Dist. LEXIS 36363, at *19 (S.D.N.Y. Mar. 31, 2011) (Batts, J.) (emphasis added), the Court held that the plaintiffs, who purchased mortgage-backed securities in only one of six offerings, had no standing to bring claims for the other offerings because "[e]ach offering . . . had its *own issuing trust* and each offering was made under a *separate* Prospectus Supplement."

- In *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781, 2010 U.S. Dist. LEXIS 32058, at *15-16 (S.D.N.Y. March 31, 2010) (Baer, J.), where the plaintiffs asserted claims on behalf of purchasers of mortgage-backed securities sold in 59 separate offerings, the Court held that the plaintiffs had no standing to assert claims relating to 55 offerings in which they did not purchase securities.  The Court reasoned that the claims "related to the details contained in the *distinct* prospectus supplements for each of the offerings," and each of the various offerings might have *different* defects.  *Id.* at *16 (emphasis added).

- In *New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2010 U.S. Dist. LEXIS 47512, at *10-12 (S.D.N.Y. Mar. 29, 2010) (Crotty, J.), the Court held that plaintiffs who had purchased securities in only one of four separate offerings by different issuing trusts did not have standing to assert claims arising from trust offerings in which they did not purchase.  The Court reasoned that the certificates in each of the offerings were "based upon a *distinct* pool of mortgages, originated largely by *different* mortgage lenders, and governed by a *different* prospectus supplement with *different* underwriting requirements and disclosures."  *Id.* at *11 (emphasis added).

Where, as here, there was a *single* offering, by the *same* defendants, to sell series of a *single* trust, which had the *same* risks, pursuant to the *same* offering documents, containing the

*same* misrepresentations and omissions of material fact about *all* of the series, and causing the *same* injuries, there is no reason why Plaintiffs cannot represent the purchasers of all four series.

### C.   The Class Also Meets The Requirements Of Rule 23(b)(3)

A class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs easily meet the requirements of Rule 23(b)(3) here because: (a) the common questions of law and fact identified in Section A above easily predominate over any questions that might affect only individual members of the Class; and (b) a class action is far superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

### 1.   Common Questions Of Law And Fact Predominate Over Any Possible Individual Questions

"Class wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010). Predominance does not require a plaintiff to show that there are no individual issues. *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. at 75. Indeed, it is expected that "individual issues will likely arise in this case as in all class actions," and a court should not allow "various secondary issues of plaintiffs' claim[s] to preclude certification of a class [that] would render the rule an impotent tool for private enforcement of securities laws." *Dura-Bilt*, 89 F.R.D. at 99.

Courts in the Second Circuit routinely find that common issues about the inaccuracy and materiality of statements in offering documents predominate over possible individual questions.

*See Goldman Sachs*, 2012 U.S. Dist. LEXIS 13548, at *17-28 (rejecting argument that individual issues predominate); *Merrill Lynch*, 277 F.R.D. at 111-20 (common questions predominate when liability issues common to class; rejecting argument that individual issues of materiality, reliance, knowledge, sophistication, loss causation, and damages predominate); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap. Inc.,* No. 08 Civ. 5653, 2011 U.S. Dist. LEXIS 92597, at *17-26 (S.D.N.Y. Aug. 16, 2011) (Crotty, J.) (rejecting argument that individual issues of knowledge, reliance, and loss causation predominate); *see also Arakis*, 1999 U.S. Dist. LEXIS 22246, at *37 (when securities fraud "is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues").  That these securities are inverse, triple-leveraged ETFs does not require a different outcome.

Common legal and factual issues overwhelmingly predominate over any individual issues in this action.  To prevail under Section 11 of the Securities Act, a plaintiff must prove that: "(1) she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under Section 11; and (3) the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (quoting 15 U.S.C. § 77k(a)).  If a plaintiff purchased a security issued pursuant to a registration statement, "he need only show a material misstatement or omission to establish a prima facie case."  *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983).  Because Section 11 liability is virtually absolute, "plaintiffs bringing claims under sections 11 and 12(a)(2) [of the Securities Act] ***need not allege scienter, reliance, or loss***

*causation*." *Id.* at 359-60 (citing *Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004)) (emphasis added).

In light of the limited scope of the inquiries required to establish liability under Sections 11 and 15, despite the possibility of "some individualized inquiry," the common issues of wrongdoing and liability will "overwhelm the individual ones." *Merrill Lynch*, 277 F.R.D. at 113. Therefore, any argument Defendants might make about potential individual issues, such as Plaintiffs' knowledge,[6] sophistication,[7] reliance,[8] or damages,[9] will "grossly overstate the differences" pertinent to the real issues in the litigation. *See id.* (rejecting similar arguments).

Defendants' liability will be established on a class-wide basis through common proof. *First*, Plaintiffs will prove that Defendants made untrue statements and omissions with common, generalized proof. *See Lapin*, 254 F.R.D. at 181 (misrepresentations susceptible to generalized

---

[6] Individual knowledge issues might dominate only if specific evidence links individuals with the offering at issue. *See Goldman Sachs*, 2012 U.S. Dist. LEXIS 13548, at *20 ("specific evidence" necessary to establish that individual investors had unique knowledge of the misstatements or omissions); *Merrill Lynch*, 277 F.R.D. at 117 (same). There will be no such evidence here. Certainly, Plaintiffs have not alleged that the risks of holding Bear Funds for longer than a single trading session or the extent of those risks were common knowledge or widely known. *Cf. In re IPO*, 471 F.3d at 43 ("claim that lack of knowledge is common to the class is thoroughly undermined by the ***Plaintiffs' own allegations as to how widespread was knowledge of the alleged scheme***") (emphasis added).

[7] *Cross v. 21st Century Holding Co.*, No. 04 Civ. 4333, 2004 U.S. Dist. LEXIS 2283, at *7-8 (S.D.N.Y. Feb. 18, 2004) (Mukasey, J.) (rejecting argument that plaintiff's sophistication rendered him atypical and inadequate) (citations omitted); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 2011 U.S. Dist. LEXIS 92597, at *7, 21-22 (sophistication no bar to numerosity or adequacy).

[8] When, as here, the defendants have not issued an earning statement covering at least twelve months beginning after the effective date of the registration statement, reliance on the registration statement is ***presumed***. *See Merrill Lynch*, 277 F.R.D. at 114; *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 2011 U.S. Dist. LEXIS 92597, at *23-24. Indeed, the Class Period ended on April 9, 2009, ***less than*** twelve months after the November 3 Supplement became effective. *See* Rifkin Decl. ¶ 4.

[9] *See* pp. 21-22 below.

proof); *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *20 (same).

*Second*, in Section 11 cases such as this, "questions of materiality and loss causation are subject to ***objective*** standards and ***generalized*** proof; they are ***more common than individual*** issues." *Goldman Sachs*, 2012 U.S. Dist. LEXIS 13548, at *27-28 (emphasis added); *Merrill Lynch*, 277 F.R.D. at 114 (quoting *Rombach*, 355 F.3d at 172 n.7) (standard of materiality under Section 11 is an ***objective*** one: "whether 'the defendants' representations, taken together, would have misled a ***reasonable investor***'") (emphasis added).   Therefore, materiality and loss causation are common issues that can and will be proven on a class-wide basis. *Dura-Bilt*, 89 F.R.D. at 94 ("materiality, rather than being an individual issue, is in fact a common issue"); *DLJ Mortg. Cap., Inc.*, 2011 U.S. Dist. LEXIS 92597, at *25-26 (loss causation is affirmative defense to Section 11 claim that does not dominate over common issues) (citations omitted).

*Third*, Defendants' liability defenses and affirmative defenses likewise raise common questions that will be subject to generalized proof.  In their Answer, for example, Defendants deny Plaintiffs' allegations about, *inter alia*, the falsity of the statements in the Registration Statements and Prospectuses (Third Defense), whether undisclosed information was publicly available (Sixth Defense), whether the alleged damages were caused by external factors instead of material omissions (Tenth Defense), whether Defendants acted with due diligence (Eleventh Defense), whether Defendants acted in good faith (Twelfth Defense), whether Defendants reasonably relied on the statements of experts in making their material misstatements and omissions (Thirteenth Defense), whether the losses suffered by the class were due to Defendants' material misstatements and omissions (Fourteenth Defense), and whether Defendants acted in good faith conformity with applicable regulations (Fifteenth Defense).  All these defenses will be subject to the same common proof as Plaintiffs' *prima facie* case.

*Fourth*, control person liability is a common question that may be established through generalized proof.  Section 15 liability is imposed on "[e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under Section 77k [Section 11] or 77l [Section 12] of this title . . . ."  15 U.S.C. § 77o(a).  Liability under Section 15 is derivative of liability under Section 11.  Whether the Individual Defendants control any person who is liable under Section 11 will be identical for all class members.  *See Menkes v. Stolt-Nielsen, S.A.*, 270 F.R.D. 80, 91 (D. Conn. 2010) ("each class member's control person claim should be identical given that Defendant's conduct alone is relevant to satisfying the applicable standard").

*Fifth*, Section 11 provides a statutory damages formula that is common for the Class.  *See* 15 U.S.C. § 77k(e).  After a reasonable opportunity for discovery, Plaintiffs will provide expert testimony substantiating that damages can be proven on a class-wide basis using available trading data and applying widely accepted methodologies to all members of the Class, just as in the vast majority of securities cases that are routinely certified as class actions.  That specific damages may vary for each class member does not defeat certification when, as here, "the method of calculating damages is common to the class."  *Lapin*, 254 F.R.D. at 181.  Even if Defendants intend to prove negative loss causation – that the investors' losses were caused by something other than the alleged misrepresentations – "Defendants will be required to rely on generalized proof to support this assertion."  *Merrill Lynch*, 277 F.R.D. at 119 ("loss causation presents a common, not an individual, issue").

In the Second Circuit, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification."  *Seijas v.*

*Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010).   Moreover, "[t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action."  *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 141 (2d. Cir. 2001).

Plaintiffs can demonstrate Defendants' liability and damages for the Class with common proof.  Because these common, core issues will predominate, Rule 23(b)(3) is satisfied.

### 2.   A Class Action Is Superior To Alternative Methods For Resolving This Dispute

Rule 23(b)(3) also requires that a class action be superior to other available methods for fairly and efficiently resolving the controversy.   In determining whether the superiority requirement is met, the Court may consider: (A) the Class members' interest in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning this controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).   In general, "'securities suits . . . easily satisfy the superiority requirement of Rule 23.'"  *Merrill Lynch*, 277 F.R.D. at 120 (quoting *Lapin*, 254 F.R.D. at 186); *accord Monster*, 251 F.R.D. at 139.  As courts in this district have explained:

> Most violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims.  Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008).

The overwhelming majority of Class members have no interest in individually controlling the prosecution of separate actions because, for the vast majority of them, their losses are far too small to justify incurring the expense of individual litigation.  The costs and expense of an individual action, when weighed against the individual recoveries potentially available, would be prohibitive.  Very few members of the Class would be in a position to litigate individually against Defendants.  *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d. Cir. 1968); *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).  This practical consideration explains why these class actions have been the only such litigation commenced so far.[10]

Even if a few members of the Class suffered losses sufficient to justify the large cost of litigating their individual claims – which is not the case – a class action would be superior to a multitude of identical individual actions.  Here, "'as is the case in most securities suits, multiple lawsuits would be inefficient and costly.'"  *Merrill Lynch*, 277 F.R.D. at 120 (quoting *Lapin*, 254 F.R.D. at 187).  Moreover, multiple actions "could also significantly reduce the prospects for recovery as it would decrease plaintiffs' bargaining power."  *Id.*  Thus, there is an obvious advantage to a "unitary adjudication . . . to determine the defendant's liability."  *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010) (internal quotation marks omitted).

Given the large number of Bear Fund investors and the fact that they are geographically dispersed throughout the country, there is an obvious advantage to concentrating the litigation in this Court.  *See Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *37 ("concentrating litigation in a single forum plainly has a number of benefits, including eliminating the risk of

---

[10] Plaintiffs are not aware of any other similar litigation concerning the Bear Funds.

inconsistent adjudications and promoting the fair and efficient use of the judicial system, and the Southern District of New York is well known to have expertise in securities law"). Efficiency interests are particularly strong here given that the Court has ruled on two motions to dismiss, is thoroughly familiar with the claims and defenses, and has scheduled a trial in only eight months. *Compare Merrill Lynch*, 277 F.R.D. at 121. Of course, trying this case once as a class action would be infinitely more efficient that multiple, repetitive trials. *See id.*

Finally, no difficulties are likely to be encountered in the management of a class action. The Court is unlikely to face unusual manageability difficulties with the class action "apart from those inherent in any hard fought battle where substantial sums are at issue and all active parties are represented by able counsel." *WorldCom*, 219 F.R.D. at 305. To the extent any management issues arise, this Court has case management tools "to see that all members of the class are protected, including but not limited to the authority to alter or amend the class certification order pursuant to Rule 23(c)(1)(C), to certify subclasses pursuant to Rule 23(c)(5), and the authority under Rule 23(d) to issue an order ensuring the fair and efficient conduct of the action." *Flag Telecom*, 574 F.3d at 37 (citations and quotation marks omitted).

Therefore, the class action is the superior method for adjudicating the claims of the Class members.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court: (1) certify this action as a class action pursuant to Rules 23(a) and 23(b)(3); and (ii) appoint Plaintiffs as representatives of the Class and Federman & Sherwood, Wolf Haldenstein, and Gilman Law as Class Counsel.

Dated:  April 30, 2012                     Respectfully submitted,

                                           /s Mark C. Rifkin

Mark C. Rifkin
rifkin@whafh.com
Maja Lukic
lukic@whafh.com
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY  10016
Phone:  (212) 545-4600
Fax:  (212) 545-4653

Kenneth G. Gilman
kgilman@gilmanpastor.com
**GILMAN LAW LLP**
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Phone: (239) 221-8301
Fax: (239) 676-8224

*Co-Lead Counsel for the ERY*
*Plaintiffs and the Class*

William B. Federman
wbf@federmanlaw.com
Stuart Emmons
swe@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112

*Lead Counsel for the FAZ*
*Plaintiffs and the Class*