Joanna A. Diakos (JD 7269)
Sarah P. Kenney (SK 5642)
K&L Gates LLP
599 Lexington Avenue
New York, New York 10022-6030
Email: joanna.diakos@klgates.com
        sarah.kenney@klgates.com
Phone: (212) 536-3900
Fax:    (212) 536-3901

Jeffrey B. Maletta (admitted *pro hac vice*)
Nicholas G. Terris (admitted *pro hac vice*)
1601 K Street, NW
Washington, DC 20006-1600
E-mail: jeffrey.maletta@klgates.com
        nicholas.terris@klgates.com
Phone: (202) 778-9000
Fax:    (202) 778-9100

*Counsel for Defendants Direxion Shares ETF Trust,*
*Daniel D. O'Neill, Daniel J. Byrne, Gerald E. Shanley, III,*
*John Weisser and Rafferty Asset Management, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re DIREXION SHARES ETF TRUST | Civil Action No. 1:09-CV-08011-KBF <br><br> **FILED UNDER SEAL** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

Table of Contents.................................................................................................ii

Table of Authorities...........................................................................................iii

PRELIMINARY STATEMENT...........................................................................1

STATEMENT OF FACTS.....................................................................................3

    A.      Procedural Posture and Remaining Claims...............................................3

    B.      The Structure and Operation of ETFs.....................................................5

    C.      The Funds' Successful Daily Tracking......................................................7

    D.      Additional Facts Pertinent to Stoopler's and Remmells' Claims.....................8

    E.      Additional Facts Pertinent to Schwack's Claims........................................9

STANDARDS FOR SUMMARY JUDGMENT MOTIONS.........................................10

ARGUMENT......................................................................................................11

I.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' TRACKING ERROR CLAIM...........................................................................11

II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST PLAINTIFFS ██████████████████████████████████████ ████████████████████████ ██████████ ████████████.................................................................13

III.   SUMMARY JUDGMENT MUST BE ENTERED AGAINST ███████████ █████████████ KNOWLEDGE AND NEGATIVE CAUSATION.....................................................................................16

IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT UNDER STATE STREET..............................................................................................18

CONCLUSION...................................................................................................21

**Table of Authorities**

Page

Akerman v. Oryx Commc'ns, Inc.,
    810 F.2d 336 (2d Cir. 1987) ...................................................................14, 17

APA Excelsior III L.P. v. Premiere Technologies, Inc.,
    476 F.3d 1261 (11th Cir. 2007)......................................................17, 18

Bastian v. Perten Res. Corp.,
    892 F.2d 680 (7th Cir. 1990) ..............................................................14

Bridge v. Phoenix Bond & Indemnity Co.,
    553 U.S. 639 (2008) ....................................................................17

Clark v. Nevis Capital Mgmt., LLC,
    No. 04 Civ. 2702, 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005)................................19

Feit v. Leasco Data Processing Equip. Corp.,
    332 F. Supp. 544 (E.D.N.Y. 1971).........................................................18

Global-Tech Appliances, Inc. v. SEB S.A.,
    131 S. Ct. 2060 (2011) .................................................................18

In re Charles Schwab Corp. Sec. Litig.,
    257 F.R.D. 534 (N.D. Cal. 2009) ........................................................14

In re Flag Telecom Holdings Sec. Litig.,
    574 F.3d 29 (2d Cir. 2009)..............................................................14

In re IPO Sec. Kitig.,
    483 F.3d 70 (2d Cir. 2007)..............................................................18

In re Morgan Stanley Mutual Fund Sec. Litig.,
    No. 03-Civ.-8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006).....................19

In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.,
    774 F. Supp. 2d 584 (S.D.N.Y. 2011) ................................................passim

Lentell v. Merrill Lynch & Co.,
    396 F.3d 161 (2d Cir. 2005).........................................................14, 16

DC-9642160 v13

iii

Mayer v. Oil Field Sys. Corp.,
803 F.2d 749 (2d Cir. 1986) …………………………………………………………………..18

McGraw-Hill Cos. V. Vanguard Index Trust,
139 F. Supp. 2d 544 (S.D.N.Y. 2001)………………………………………………………6

McMahan & Co. v. Wherehouse Entm't, Inc.,
65 F.3d 1044 (2d Cir. 1995)………………………………………………………………16, 19

Phillip Morris Inc. v. Nat. Asbestos Workers Med. Fund,
214 F.3d 132 (2d Cir. 2000)………..………………………………………………………10

Santa Fe Indus., Inv. v. Green,
430 U.S. 462 (1977)………………………………………………………………………..12

Sciallo v. Tyco International Ltd.,
03 Civ. 7770 (KBF), 2012 WL 2861340 (S.D.N.Y. July 9, 2012)…………………….......10

Wright v. Schock,
742 F.2d 541 (9th Cir. 1984)………………………………………………………………..10

## PRELIMINARY STATEMENT

This is a case alleging inadequate risk disclosures in a registration statement in violation of § 11 of the Securities Act of 1933 (the "1933 Act"). The three remaining plaintiffs -- Stoopler, Remmells, and Schwack -- are purchasers of two leveraged ETFs, the Direxion Financial Bear 3X Shares ("FAZ") and the Direxion Energy Bear 3X Shares ("ERY") (collectively, the "Funds"). The Funds are series of the Direxion Shares ETF Trust ("Trust"). FAZ and ERY seek returns that approximate triple the inverse of the performance of their respective benchmark indices on a daily basis (e.g., a daily 1% drop in each underlying index would translate to approximately a 3% gain in each of the Funds).

The operative Third Consolidated Amended Class Action Complaint (the "Complaint") alleges two defects in the Registration Statement.

Plaintiffs principally allege that the Trust's disclosures would have led a reasonable investor to expect that the Funds would provide a return equal to three times the inverse (negative) of the return on the index over the period during which each plaintiff held the Fund. 3d Am. Consol. Compl., Dckt No. 87 ("Compl.") ¶ 15. In other words, putative class members would have anticipated a *cumulative* return, rather than the product of a series of daily returns. Id. Defendants will refer to this claim as the "Cumulative Returns Claim."

The Complaint also asserts that the Funds "systematically underperformed" their actual investment objective in that they fell far short of achieving approximately three times the inverse daily return on the index. Compl. ¶ 207. The Trust allegedly failed to disclose adequately that underperformance of this magnitude might occur. See Compl. ¶¶ 25, 36-40, 207-220. Defendants will refer to this claim as the "Tracking Error Claim."

Indisputable facts demonstrate that defendants are entitled to summary judgment for four reasons.

1.     The factual predicate for plaintiffs' Tracking Error Claim – that the Funds supposedly underperformed their daily investment goals by a wide margin – is utterly baseless. Indisputable facts that were available to plaintiffs before they filed this lawsuit prove that the Funds' respective tracking errors were *de minimis*. Indeed, some of plaintiffs' tracking error allegations overstate the Funds' daily tracking error by ***approximately 80 times***. Defendants are plainly entitled to summary judgment on plaintiffs' frivolous Tracking Error Claims.

2.     The Complaint alleges that investors in the Funds willingly accepted a cumulative leveraged return from the Funds of -3X (or -300%). ████████████████████████████ ████████████ Yet the indisputable facts show that █████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████ Accordingly, defendants are entitled to summary judgment against █████████████████ because the alleged inadequacies in the Trust's disclosures did not cause plaintiffs' investment losses. See 15 U.S.C. § 77k(e). Such losses instead are attributable to plaintiffs' erroneous bets on the direction of the relevant indices.

3.     Defendants are entitled to summary judgment based on both a knowledge defense and a negative causation defense against ███████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████

---

[1]     Unless otherwise indicated all references to the "Prospectus" refer to the prospectus supplemented on December 9, 2008.

██████████████████████████████████████████

████████████████████████████████ Further, the alleged revelation of the

"truth" in the April 10 prospectus supplement (the "April 10 Prospectus") had no discernible

impact on the Funds' share prices, ████████████████████████

████████████████████████████████████████ Any alleged

inadequacies in the Trust's disclosures thus did not and could not have caused ████████████

investment losses. ██████████████████████████

████████████████████████████████████

defense available under § 11(a), 15 U.S.C. § 77k(a).

4.      Defendants are also entitled to summary judgment on negative causation grounds

pursuant to In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig., 774 F. Supp. 2d

584 (S.D.N.Y. 2011). This Court previously denied defendants' 12(b)(6) motion on this issue,

ruling that there were factual issues concerning the applicability to this case of State Street's

conclusion that "statements by a fund's issuer have no ability to 'inflate' the price of the fund's

shares." Opinion on Principal Motion to Dismiss, Dckt. No. 85 at 26 (Jan. 27, 2012) (quoting

State Street, 774 F. Supp. 2d at 595). As defendants now demonstrate, the indisputable facts

show that the alleged misstatements had no bearing on the Funds' secondary market prices,

which at all times were closely tied to the Funds' respective NAVs.

## STATEMENT OF FACTS

### A.      Procedural Posture and Remaining Claims

The Complaint identified six individuals as putative class representatives. Two have

been dismissed voluntarily, Dckt. No. 110, and plaintiffs have informed defendants that plaintiff

Killmon also intends to drop out of the case. Declaration of Nicholas G. Terris ("Terris Decl.") ¶

3(i), Ex. I.  The three remaining plaintiffs are, as to the ERY Fund, Howard Schwack, and as to FAZ Fund, Evan Stoopler and David Remmells.

The Complaint's Cumulative Returns Claim posits that, while each ETF in the Trust is designed to generate returns that approximate triple the inverse of the performance of its benchmark index *on a daily basis*, for longer time horizons, the Funds' performance likely will differ substantially from three times the inverse of the performance of the index.  See, e.g., Compl. ¶¶ 15-20.  According to plaintiffs, the risks of holding for periods longer than one day were not adequately disclosed, and certain statements in the prospectus suggested longer holding periods were appropriate.  See, e.g., Compl. ¶¶ 113, 142-151, 205-206.  As a result, reasonable investors allegedly would have expected the Fund to provide -3X (or -300%) cumulative – rather than daily – leveraged inverse returns.  Compl. ¶¶ 15-20.

The Tracking Claim contends that the Funds "significantly underperformed" their target inverse 3X return of the indices on a daily basis, Compl. ¶¶ 36, 39, 207-220, presumably because of various defects in their design and execution.  At oral argument on the Motion to Dismiss, plaintiffs' counsel expressly linked the Tracking Error Claim to subsequent allegations that expenses, in particular the purported cost of hedging the portfolio, substantially decreased the returns and caused the returns to deviate substantially from the target.  See Transcript of Motion to Dismiss Hearing at 53 (January 12, 2012), Dckt. No. 82 ("Your Honor, the hedging risk is described in paragraphs 207, 208, 209, 210, 211 to 215, 334 to 339, and one paragraph in particular I'll direct the courts' attention to is paragraph 332 . . . .").  Of course, the absence of any material tracking error also points to the absence of the purported hedging risk.

### B.    The Structure and Operation of ETFs

A leveraged inverse ETF seeks a daily return tied to a multiple of the opposite of the daily performance of the index it tracks. Compl. ¶ 92. For example, the Trust offers the Financial Bear 3X Shares, a fund designed to seek daily investment results before fees and expenses of three times (300%) the inverse (or opposite) of the price performance of the Russell 1000 Financial Services Index. Compl. ¶ 12.

Most ETFs – including the Funds – are open-end investment companies regulated by the SEC under the Investment Company Act. Exchange-Traded Funds, 73 Fed. Reg. 14618, 14619 n. 8 (proposed March 18, 2008), available at http://www.sec.gov/rules/proposed/2008/33-8901fr.pdf (hereinafter "ETF Release"); Compl. ¶ 87; O'Neill Decl. ¶ 2. Like ordinary open-end mutual funds, ETFs such as the Funds price their shares according to an SEC-prescribed formula for daily net asset value ("NAV"). See ETF Release at 14624, 14627. NAV is calculated by dividing a fund's net assets by its shares outstanding. O'Neill Decl. ¶ 3. The NAV for the Funds is computed daily by The Bank of New York Mellon, an independent third party that also holds all Fund assets as custodian and provides accounting services for the Funds. O'Neill Decl. ¶ 4. During the Class Period the NAV was published daily and was widely available, as were the Funds' market prices. O'Neill Decl. ¶ 7.

An ordinary mutual fund's or ETF's NAV is unaffected by changes in the fund's disclosures. See Conroy Decl. ¶¶ 9-12. This is because each Fund's NAV is tied to the value of the securities in the underlying index it tracks. The Funds and similar ETFs offer to sell and redeem large blocks of their shares (known as creation units) at NAV. See ETF Release at 14623, 14627; O'Neill Decl. ¶ 5.

Traditional mutual fund shares are purchased by individual investors from the fund itself and later redeemed or sold back to the fund. By contrast, except for those large financial institutions known as Authorized Participants who serve as market makers and who purchase or sell creation units directly from the funds, ETF shares are bought and sold by investors on the secondary market through brokers – much like ordinary public company shares. Compl. ¶ 87; O'Neill Decl. ¶ 6. ETF shares therefore can be bought and sold throughout the trading day, at market prices that can vary over the course of a day. ETF Release at 14619-20, 14623; O'Neill Decl. ¶ 6. "[B]ecause ETF shares may be created and redeemed by market makers at net asset value, albeit in large denominations commonly known as creation units, ETF shares typically do not trade at prices that vary greatly from their net asset values." McGraw-Hill Cos. v. Vanguard Index Trust, 139 F. Supp. 2d 544, 546-47 (S.D.N.Y. 2001). See also ETF Release at 14619 n. 9; O'Neill Decl. ¶ 6. The SEC orders and proposed rules authorizing ETFs are designed to facilitate arbitrage and otherwise ensure a close correspondence between NAV and the secondary market price. ETF Release at 14627-28. Secondary market trading has "no direct impact on the NAV of ETF shares held by other investors." ETF Release at 14629.

This correspondence between NAV and secondary market price was evident with respect to the Funds during the putative class period of November 3, 2008 through April 9, 2009. During this time, the secondary market price of FAZ and ERY hewed closely to the Funds' respective NAVs. See Declaration of Patrick E. Conroy, Ph.D. ("Conroy Decl.") ¶¶ 13-14, Exh. 3. As would be expected in light of the foregoing, the revelation of the alleged misrepresentations in this case had no apparent bearing on the secondary market price of the Funds' shares – the price at which plaintiffs and others bought and sold their shares. Id. ¶¶ 13-14, Exh. 3. This is because the Funds' secondary market prices are a function of their NAVs. Id.

¶ 13.  News about the Funds could, in theory, lead to a change in selling pressure, but arbitrageurs will act to return prices to NAV.  Id.  In any event, there was no discernible reaction in the secondary market price to the dissemination of the April 10 Prospectus.  See Conroy Decl. ¶¶ 13-14, Exh. 3.

### C.    The Funds' Successful Daily Tracking

The daily return on the respective indices was publically available from a variety of services during the class period. ██████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████ Specifically:

from the period November 6, 2008 through April 9, 2009:[2]

- ████████████████████████████████████████████████████████████
  ████████████████████████████████ See Conroy Decl. ¶ 7.

- ████████████████████████████████████████████████████████████
  ████████████████████████████████████ See
  Conroy Decl. ¶ 7.

- ████████████████████████████████████████████████████████████
  █████████ See Conroy Decl. ¶ 7.

- ████████████████████████████████████████████████████████████
  █████████ See Conroy Decl. ¶¶ 7.

The Prospectus plainly stated that the Funds' goal was to attempt to provide daily returns approximately equal to three times the inverse of the respective benchmark indices *before* fees and expenses.  See Terris Decl., Exh. F. ██████████████████████

████████████████████████████████████████████████████

---

[2]      The first available NAV for the ERY and FAZ Funds is on November 5, 2008, so the first date over which returns are calculated is November 6, 2008.  See Conroy Decl. Exh. 1A & 1B., n. 4.

█████████████████████████████████████████ Conroy

Decl. ¶ 7.

**D.    Additional Facts Pertinent to** ████████████████**Claims**

████████████████████████████████████████

███████████████████████████████████████

███████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

**E.    Additional Facts Pertinent to** ██████████**Claims**

████████████████████████████████████

█████████████████████████████████████████

---

3      All page citations to excerpts of deposition testimony refer to the page number of the original deposition transcript.



## STANDARDS FOR SUMMARY JUDGMENT MOTIONS

This Court recently summarized the standards for summary judgment as follows:

> Summary judgment is warranted if the admissible evidence submitted demonstrates an absence of a genuine issue of fact necessitating resolution at trial. The moving party bears the burden of demonstrating the absence of a triable issue of fact, and all reasonable inferences must be drawn in favor of the non-moving party.
>
> A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment, as mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist. In addition, self-serving affidavits, sitting alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment. Where it is clear that no rational trier of fact (here, a jury) could find in favor of the non-moving party, summary judgment is warranted.

Sciallo v. Tyco Int'l Ltd., 03 Civ. 7770 (KBF), 2012 WL 2861340, at *3 (S.D.N.Y. July 9, 2012)

(citations and quotations omitted).

To avoid the possibility of one-way intervention, defendants respectfully request that the Court rule on plaintiffs' motion for class certification prior to ruling on defendants' motion for summary judgment. See Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund, 214 F.3d 132, 135 (2d Cir. 2000) (class certification decisions generally should be made before merits ruling); Wright v. Schock, 742 F.2d 541, 545-46 (9th Cir. 1984) (similar, but recognizing an exception when a defendants requests a merits ruling first). See generally Fed. R. Civ. P. 23(c)(1)(A) (class certification orders should issue at "an early practicable time").

## ARGUMENT

## I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' TRACKING ERROR CLAIM

As discussed above in the Statement of Facts, the essence of plaintiffs' Tracking Error Claim is that the Trust badly missed its daily tracking goals and failed adequately to disclose the risk that underperformance of this magnitude might occur. See Compl. ¶¶ 25, 36-40, 207-220.

- 10 -

The Tracking Error Claim never leaves the starting gate because its factual predicate (that the Funds "significantly underperformed," Compl. ¶ 36, is simply false.

Among other things, defendants' motion to dismiss previously argued that: (1) the Trust's disclosures made clear that the Funds sought approximate daily tracking of -3X (or -300%) of the relevant benchmark **before fees and expenses**;[4] (2) the Trust also clearly disclosed that there were a number of reasons why the Fund might not be able to meet these (approximate) targets;[5] and (3) in any event, even a large tracking error by the Funds would be nothing more than a non-actionable claim of corporate mismanagement, see Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 477, 479 (1977), rather than the proper basis for a federal securities law claim.

For present purposes, defendants submit that they are entitled to summary judgment because it is indisputable as a matter of fact that the Funds closely tracked their approximate daily targets. Thus, there simply is no factual basis for plaintiffs' meritless Tracking Error Claim.[6] In particular, during the putative class period November 6, 2008 through April 9, 2009:

---

[4]     The Trust disclosed that the Funds were "designed to provide daily investment returns, *before fees and expenses*, that are a multiple of the returns of its index or benchmark for the stated period." Terris Decl., Ex. F, p. 3 (emphasis added) (Prospectus). Thus, for example, the Financial Bear Fund "seeks daily investment results, before fees and expenses, of 300% of the inverse (or opposite) of the price performance of the Financial Index." Terris Decl., Ex F, p. 30. A fund that seeks a particular return before fees and expenses obviously will often achieve a lower return net of fees and expenses. Other portions of the registration statement underscored that there was no expectation of exact daily tracking. See, e.g., Terris Decl., Ex. F, p. 3 ("If the Russell 1000® Index gains 2% on a given day, the Large Cap Bull 3X Shares would be expected to gain *about* 6%") (emphasis added); Terris Decl., Ex. G, p. 1 (Statement of Additional Information or "SAI") ("if the Russell 1000® Index loses 1% on a given day … the Large Cap Bear 3X Shares is designed to gain *approximately* 3%") (emphasis added).

[5]     See, e.g., Terris Decl., Ex. F, p. 3. ("[C]ertain factors will tend to cause a Fund's investment results to vary from the stated objective. A Fund may have difficulty achieving its daily target due to fees and expenses, high portfolio turnover, transaction costs and/or a temporary lack of liquidity in the markets for securities held by the Fund."); Id., pp. 7-8 ("[t]here can be no guarantee that a Fund will achieve a high degree of correlation with its investment objective relative to its benchmark index;" listing numerous factors that could result in a deviation); Id., p. 11 (similar; section entitled tracking error risk); Id., Ex. G, p. 26 (elaborating on possible reasons for tracking error).

[6]     Presumably not even plaintiffs would argue that defendants can be held liable for failing to disclose a non-existent risk.



- ████████████████████████████████████████████
  ████████████████████████ See Conroy Decl. ¶ 7.

- ████████████████████████████████████████████
  ███████████████████████████████ See Conroy
  Decl. ¶ 7.

- ████████████████████████████████████████████
  ████████████ See Conroy Decl. ¶ 7.

- ████████████████████████████████████████████
  ██████ See Conroy Decl. ¶ 7.

██████████████████████ the Funds' daily tracking goals is poles apart from

plaintiffs' unfounded allegations that the FAZ Fund (1) had a mean tracking error of 3.52% *per*

*day* during the period November 8, 2008 through December 9, 2008, Compl. ¶¶ 38-39, 207-208,

and (2) underperformed its daily tracking goals by an average of 2.39% each day from

November 6, 2008 through April 9, 2009, Compl. ¶ 212. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Compare Compl. ¶ 213 with Conroy

Decl. ¶ 7.

Indeed, plaintiffs' allegations of a daily tracking error, Compl. ¶ 208 & n.9, and of its

representations to the Court at oral argument that there was a "hedging cost" that "averaged 200

basis points," Oral Arg. Trans. at 54 (Jan. 6, 2012), Dckt. No. 92, are inexplicable.  The pertinent

facts were publicly available to plaintiffs before they filed the Complaint.  And defendants long

ago warned plaintiffs that their Tracking Error Claim is completely baseless.  See Pre-Motion

Conference Letter to the Court, dated January 11, 2011 (endorsed Jan. 25, 2011), Dckt. No. 53.

As noted above, plaintiffs nonetheless persisted in making these claims a centerpiece of their

case. See, e.g., Transcript of Hearing on Motion to Dismiss at 53 (Jan. 12, 2012), Dckt. No. 82.

███████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████ See Terris Decl., Ex. B, Nos. 1-4 (Plaintiffs' Responses to Defendants' First Set of

Requests for Admission).

Against this backdrop, defendants are finally entitled to judgment on plaintiffs' frivolous

Tracking Error Claim.

## II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST
████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

Summary judgment must be entered against ██████████████████████████

Cumulative Return Claim for another separate and independent reason: ███████████████

████████████████████████████████████████████████████

█████████████████████████████████████████

A § 11 plaintiff is not entitled to damages if and to the extent that the defendant can show

that the plaintiff's damages resulted from something other than the allegedly inadequate

disclosures. See 15 U.S.C. § 77k(e) ("[I]f the defendant proves that any portion or all of such

damages represents other than the depreciation in value of such security resulting from such part of

the registration statement, with respect to which his liability is asserted, not being true or omitting

to state a material fact required to be stated therein or necessary to make the statements therein not

misleading, such portion of or all such damages shall not be recoverable."). This is sometimes

referred to as "negative causation." Akerman v. Oryx Commc'ns, Inc., 810 F.2d 336, 341 (2d

Cir. 1987). While it is an affirmative defense, negative causation otherwise bears significant

similarities to the transaction and loss causation elements of a claim under Section 10(b) and Rule 10b-5.[7]

Even under a plaintiff-friendly view of causation that courts in this Circuit have rejected, a plaintiff's losses must at least have resulted from the materialization of a risk that defendants failed to adequately disclose. See, e.g., In re Charles Schwab Corp. Sec. Litig., 257 F.R.D. 534, 547 (N.D. Cal. 2009) (loss causation conceivably could be established where plaintiffs alleged that "the *subject* of the fraudulent statements caused their losses"; in other words "defendants misrepresented or failed to disclose portfolio risks, the materialization of which caused (or exacerbated) the losses"); Lentell v. Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005) (a misstatement "is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations . . . alleged by a disappointed investor") (emphasis in original).[8]

As detailed in Paragraphs 32 and 33 and Exhibits 7-8 of the Expert Report of Dr. Patrick Conroy dated August 6, 2012, filed with Defendants' Opposition to Plaintiffs' Motion for Class Certification, Dckt. No. 119, ███████████████████████████ ████████████████████████████████ To the contrary, as with many putative class members, ████████████████████████████████████████

---

[7]      See, e.g., Akerman, 810 F.2d at 341 ("Defendants' burden, however, is not insurmountable; section 11(e) expressly creates an affirmative defense of disproving causation.") (citing with approval a district court case granting summary judgment on section 11 claims in "light of the minimal materiality of [defendant's] nondisclosure and the market's failure to react in any discernible way to the revelations") (citations and internal punctuation omitted); Bastian v. Petren Res. Corp., 892 F.2d 680, 685 (7th Cir. 1990) ("in actions under section 11 of the 1933 Act ... absence of loss causation is an explicit defense"); In re Flag Telecom Holdings Sec. Litig., 574 F.3d 29, 35-36 (2d Cir. 2009) ("under the '33 Act, it is the defendant who bears the burden of demonstrating that something other than the misstatement at issue caused plaintiff's loss."); In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig., 774 F. Supp. 2d 584, 590 n.4 (S.D.N.Y. 2011).

[8]      In addition, as discussed below in Section IV of the Argument, there was no loss causation under the ruling in In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig., 774 F. Supp. 2d 584 (S.D.N.Y. 2011). The discussion of negative causation in this Section is unaffected by the ultimate resolution of the State Street issue.



Terris Decl., Ex. B, no. 6 (Plaintiffs' Responses to Defendants' First Set of Requests for Admission).[9]

 

While plaintiffs may allege that they would not have purchased fund shares if they knew that the funds sought to track their benchmarks on a daily basis, this is unquestionably insufficient.[10] See McMahan & Co. v. Wherehouse Entm't, Inc., 65 F.3d 1044, 1048-49 (2d Cir. 1995) (§ 11 case) ("[W]here a defendant proves that the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement, plaintiff is not entitled to recover any damages." Therefore, "as a general rule, a price decline

---

[9]

[10]   It would also be contrary to the representations of counsel that it is "crystal clear" the Funds sought daily leveraged returns.

before disclosure [of the truth] may not be charged to defendants") (citations omitted)); State Street, 774 F. Supp. 2d at 591 ("Although a false statement about the composition of the Fund in the prospectus might have induced a plaintiff into purchasing shares of the Fund, that proves only transaction causation, not loss causation.  Both are required under Lentell [v. Merrill Lynch Co., 396 F.3d 161, 173 (2d Cir. 2005)] to maintain the claims here.").

**III.   SUMMARY JUDGMENT MUST BE ENTERED AGAINST ▆▆▆▆▆▆▆ BASED ON UNDISPUTED FACTS SHOWING KNOWLEDGE AND NEGATIVE CAUSATION**

The indisputable facts also demonstrate that defendants are entitled to summary judgment with respect to plaintiff ▆▆▆▆▆▆▆ on both negative causation and knowledge grounds.

As discussed above, ▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Further, as discussed below in Section IV, in this unusual case, the Trust's disclosures had no discernible impact on the Funds' NAVs or secondary market prices, which were driven by the performance of the underlying index.

These facts clearly establish defendants' "affirmative defense of disproving causation." Akerman v. Oryx Commc'ns, Inc., 810 F.2d 336, 341 (2d Cir. 1987).  Indeed, there is simply no causal connection between the alleged inadequacies in the Trust's disclosures and ▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Cf. Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 658-59 (2008) ("In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation. . . .  Accordingly, it

- 16 -

may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation."). See also APA Excelsior III L.P. v. Premiere Techs, Inc., 476 F.3d 1261, 1276-77 (11th Cir. 2007) (§ 11 claim not viable where investor made a binding commitment to purchase securities months before the allegedly flawed registration statement).

██████████████████████████████████ that also establish defendants' entitlement to summary judgment pursuant to the knowledge defense provided by § 11: ██████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████

Knowledge is subjective defined by what each individual plaintiff knew. See 15 U.S.C. § 77k(a) (no § 11 claim for person who knew of untruth in registration statement at the time he invested). See also In re IPO Sec. Litig., 483 F.3d 70, 73 n.1 (2d Cir. 2007) (a § 11 claim will not succeed where a defendant can show that "the plaintiff knew of the untruth or omission at the time of his or her acquisition of the security"); Mayer v. Oil Field Sys. Corp., 803 F.2d 749, 755 (2d Cir. 1986) (collecting cases).

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████

██████████ Under these circumstances, defendants are entitled to summary judgment on their knowledge defense. See, e.g., Feit v. Leasco Data Processing Equip. Corp., 332 F. Supp. 544, 575 (E.D.N.Y. 1971) (indicating that a plaintiff may not recover under Section 11 if it "knew [of]

- 17 -

or had available" information that would have revealed the relevant facts); APA Excelsior III

L.P., 476 F.3d at 1277 (citing with approval this aspect of Feit).[11]

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT UNDER STATE STREET

In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig., 774 F. Supp. 2d 584

(S.D.N.Y. 2011), provides another basis for summary judgment on loss causation grounds.

As discussed above, the price of shares of ETFs is not determined purely by the forces of

supply and demand as in traditional open-market securities trading, where misstatements or

omissions might distort the market's perception of the value of the security. Instead, the market

prices of the shares of the funds track the funds' NAV. Because the NAV of the Funds is

determined by the price of the underlying securities, alleged misrepresentations regarding a

fund's investment objective – rather than the inputs into the NAV calculation – can have no

effect on a fund's share price. See State Street, 774 F. Supp. 2d at 592 ("Unlike an ordinary

share of stock traded on the open market, the value of a mutual fund share is calculated

according to a statutory formula.") (quoting In re Morgan Stanley Mutual Fund Sec. Litig., No.

03-Civ.-8208, at *9, 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)). See also Clark v. Nevis

Capital Mgmt., LLC, No. 04 Civ. 2702, 2005 WL 488641, at *18 (S.D.N.Y. Mar. 2, 2005) (the

price of "shares in a mutual fund … [is] unaffected by alleged misrepresentations and omissions

concerning the fund itself").

---

11

[redacted]

Here, none of the misstatements or omissions alleged by plaintiffs caused the Funds'

NAV and thus the share price to be inflated, only to decline later as a result of the "truth"

becoming known through a corrective disclosure. Instead, the NAV declines that caused

plaintiffs' losses were due to the decline in the value of the Funds' underlying investments –

which were tied to the relevant stock indices – regardless of what was disclosed about the

investment objective of the Funds. The securities held in each Fund's portfolio would have

experienced the same market value losses, causing the same depreciation in the Fund's NAV,

regardless of what was disclosed.

In short, where as here "the NAV does not react to any misstatements in the Fund's

prospectus, no connection between the alleged material misstatement and a diminution in the

security's value has been or could be alleged." State Street, 774 F. Supp. 2d at 596. See also

McMahan & Co. v. Wherehouse Entm't, Inc., 65 F.3d 1044, 1049 (2d Cir. 1995) (§ 11 case) ("as

a general rule, a price decline before disclosure [of the truth] may not be charged to defendants")

(quotation omitted).

This Court previously denied defendants' 12(b)(6) motion on the State Street issue.

Opinion on Principal Motion to Dismiss at 26-27 (Jan. 27, 2012), Dckt. No. 85. This Court ruled

that, because (unlike ordinary mutual funds) the Funds were sold on the secondary market, there

was a factual issue concerning the applicability of State Street's conclusion that "statements by a

fund's issuer have no ability to 'inflate' the price of the fund's shares." Id. at 26 (quoting State

Street, 774 F. Supp. 2d at 595).

Now, however, as discussed in the Statement of Facts, defendants have demonstrated as a

matter of fact that the alleged misstatements or omissions in the Trust's registration statement

had no discernible impact on the Fund's secondary market price, which at all relevant times was

closely tied to the Funds' NAV. <u>See</u> Conroy Decl. ¶¶ 13-14, Exh. 3.  Accordingly, plaintiffs

may no longer rest on their pleadings or the benefit of the inferences drawn from them, but must

adduce admissible evidence that the supposed misrepresentations or omissions somehow caused

their losses.  Since there is no such evidence, Defendants are entitled to summary judgment.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, defendants are entitled to summary judgment.


Dated: August 31, 2012          K&L GATES LLP
     New York, New York
                                 By:

Joanna A. Diakos (JD 7269)
Sarah P. Kenney (SK 5642)
K&L Gates LLP
599 Lexington Avenue
New York, New York  10022-6030
Email:  joanna.diakos@klgates.com
          sarah.kenney@klgates.com
Phone: (212) 536-3900
Fax:    (212) 536-3901

Jeffrey B. Maletta (admitted *pro hac vice*)
Nicholas G. Terris (admitted *pro hac vice*)
1601 K Street, NW
Washington, DC 20006-1600
E-mail:  jeffrey.maletta@klgates.com
          nicholas.terris@klgates.com
Phone: (202) 778-9000
Fax:    (202) 778-9100

*Counsel for Defendants Direxion Shares ETF*
*Trust, Daniel D. O'Neill, Daniel J. Byrne,*
*Gerald E. Shanley, III, John Weisser and*
*Rafferty Asset Management, LLC*