UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re DIREXION SHARES ETF TRUST

Civil Action No. 1:09-CV-08011-KBF

**FILED UNDER SEAL**

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

William B. Federman
wbf@federmanlaw.com
Stuart Emmons
swe@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112

*Lead Counsel for the FAZ Plaintiffs and the Class*

Kenneth G. Gilman
kgilman@gilmanpastor.com
**GILMAN LAW LLP**
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Phone: (239) 221-8301
Fax: (239) 676-8224

Mark C. Rifkin
rifkin@whafh.com
Maja Lukic
lukic@whafh.com
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY  10016
Phone:  (212) 545-4600
Fax:  (212) 545-4653

*Co-Lead Counsel for the ERY Plaintiffs and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

PLAINTIFFS' COUNTER-STATEMENT OF FACTS ...................................... 2

ARGUMENT ...................................................................................................... 8

    A.    Standards Applicable to Motion for Summary Judgment ...................... 8

    B.    There is a Genuine Dispute of Material Fact Concerning
        Whether The Funds Tracked -3X Their Underlying Benchmarks......................... 9

    C.    There Is Considerable Evidence That  Plaintiffs Lost Money
        When The Risk Of Holding  Bear Funds For More Than One
        Day Materialized.......................................................................... 14

    D.    There is a Genuine Dispute of Material Fact  Concerning
        How Much of Plaintiffs' Losses Are Attributable to the
        Incorrect "Directional" Choice ................................................... 20

    E.    Defendants Have Not Established Any Other Affirmative
        Defense To ████████ Claim ....................................................... 24

CONCLUSION.................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**                                                                    Page(s)

*Acumen v. General Security National Insurance,*
   09 CV 01796 (GBD), 2012 U.S. Dist. LEXIS 127809 (S.D.N.Y. Sept. 7, 2012) .......................8

*Albee Tomato, Inc. v. A.B. Shalom Produce Corp.,*
   155 F.3d 612 (2d Cir. 1998) ...........................................................................................9, 16

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ..............................................................................................................8

*AUSA Life Insurance Co. v. Ernst & Young,*
   206 F.3d 202 (2d Cir. 2000) ...............................................................................................17

*Brady v. Town of Colchester,*
   863 F.2d 205 (2d Cir. 1988) .................................................................................................9

*In re Charles Schwab Corp. Securities Litigation,*
   257 F.R.D. 534 (N.D. Cal. 2009) ...................................................................................17, 18

*In re Dreyfus Aggressive Growth Mutual Fund Litigation,*
   No. 98 Civ. 4318 (HB),
   2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000) (Baer, J.) ........................................25

*Feit v. Leasco Data Processing Equipment Corp.,*
   332 F. Supp. 544 (E.D.N.Y. 1971) .......................................................................................21

*Goldkrantz v. Griffin,*
   No. 97 Civ. 9075 (DLC), 1999 U.S. Dist. LEXIS 4445 (S.D.N.Y. Apr. 6, 1999) ...................22

*Gucci America, Inc. v. Guess?, Inc.,*
   843 F. Supp. 2d 412 (S.D.N.Y. 2012) ...................................................................................14

*Harris v. Provident Life & Accident Insurance Co.,*
   310 F.3d 73 (2d Cir. 2002) ..................................................................................................13

*Hutchison v. Deutsche Bank Securities, Inc.,*
   647 F.3d 479 (2d Cir. 2011) ................................................................................................15

*Iowa Public Employees' Retirement System v. MF Global, Ltd.,*
   620 F.3d 137 (2d Cir. 2010) ...........................................................................................16, 21

*Lentell v. Merrill Lynch & Co.,*
   396 F.3d 161 (2d Cir. 2005) ...........................................................................................16, 17

*McMahan & Co. v. Wherehouse Entertainment,*
  65 F.3d 100 (2d Cir. 1995).................................................................................15, 18, 22

*In re Morgan Stanley Information Fund Securities Litigation,*
  592 F.3d 347 (2d Cir. 2010)..................................................................................16, 21

*In re Mutual Funds Investment Litigation,*
  590 F. Supp. 2d 741 (D. Md. 2008) ...........................................................................17

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
  No. 11-2762-cv, 2012 U.S. Dist. App. LEXIS 18814 (2d Cir. Sept. 6, 2012) ...................16, 21

*New Jersey Carpenters Health Fund v. DLG Mortgage,*
  08-Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011) ......................25

*In re Omnicom Group, Inc. Securities Litigation,*
  597 F.3d 501 (2d Cir. 2010)..................................................................................17, 18

*In re Oppenheimer Rochester Funds Group Securities Litigation,*
  838 F. Supp. 2d 1148 (D. Colo. 2012)..........................................................................17

*Optigen, LLC v. International Genetics, Inc., et. al.,*
  No. 5:09-cv-6 (GTS/ATB), 2010 U.S. Dist. LEXIS 37808 (N.D.N.Y. Apr. 16, 2010) .............12

*In re Parmalat Securities Litigation,*
  375 F. Supp. 2d 278 (S.D.N.Y. 2005)...........................................................................17

*Polaroid Corp. v. Eastman Kodak Co.,*
  No. 76-1634-MA, 1990 U.S. Dist. LEXIS 17968 (D. Mass. Oct. 12, 1990)............................12

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co.,*
  277 F.R.D. 97 (S.D.N.Y. 2011) .................................................................................25

*Seneca Beverage Corp. v. HealthNow New York, Inc.,*
  200 F. App'x 25 (2d Cir. 2006) .................................................................................12

*In re TCW/DW North American Government Income Trust Securities Litigation,*
  941 F. Supp. 326 (S.D.N.Y. 1996)..............................................................................25

*Trebor Sportswear Co. v. Limited Stores, Inc.,*
  865 F.2d 506 (2d Cir. 1989).....................................................................................12

*Tsveitel v. Geoghegan,*
  No. 05-cv-5721, 2009 U.S. Dist. LEXIS 62219 (E.D.N.Y. July 21, 2009)..............................14

*Vincent v. Essent Healthcare,*
  470 F. Supp. 2d 140 (D. Conn. 2007)................................................................9, 16


**STATUTES**

Fed. R. Civ. P. 56(d) ..........................................................................................12

Section 11 of the Securities Act of 1933,
  15 U.S.C. § 77k(e) ...................................................................................4, 16, 21
  15 U.S.C. § 77k(e)(3)....................................................................................15


**OTHER AUTHORITIES**

17 J.W. Hicks, *Civil Liabilities: Enforcement & Litigation Under the 1933 Act,* § 4:73..............25

Rawson, Michael, "Don't Abuse the Benefits of ETFs",
*Morningstar Advisor* (June 21, 2010) ..............................................................3, 4

Court-appointed Lead Plaintiffs Evan Stoopler and Howard Schwack and named Plaintiff David Remmells, by and through their undersigned counsel, hereby submit this Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.

## INTRODUCTION

Defendants have moved for summary judgment on four issues: (i) that Plaintiffs cannot prove there was *any* "tracking error" in the Bear Funds (defined below) during the period from November 8, 2008, through April 9, 2009 (the "Class Period"); (ii) that Defendants' misrepresentations regarding the nature and magnitude of the risk of holding Bear Fund shares for longer than one day had no effect on the price of the shares; (iii) that Plaintiffs█████ and ████████ suffered no damages because they would have lost more money if the FAZ Fund shares they purchased had returned -3X the return of the Russell 1000 Financial Services Index for the entire length of their holding periods; and (iv) that Plaintiff ██████ was not aware of Defendants' misrepresentations when he bought ████████████████.

Defendants' motion for summary judgment must be denied for four separate reasons. *First*, Plaintiffs have presented admissible evidence (including Defendants' own documents, documents from third-party Alaric (which performed compliance for Direxion), and a detailed expert report from Paul J. Seguin, Ph.D.) that: ███████████████████ ████████████████████████ ██ ███████████ ████████████████████████████████ *Second*, Plaintiffs were harmed, not by any inflation in the prices they paid for Bear Fund shares, but rather when the risk of holding those shares for longer than a day materialized. *Third*, Plaintiffs have presented admissible evidence (including a detailed expert report from Candace L. Preston) that ████████ and ██████████ losses far exceed the amounts they lost by making incorrect "directional" choices on the first day of their investments. The remainder of their

losses ███████████████████████████████████████████████

██████ are recoverable under Section 11 of the Securities Act of 1933.  And *fourth*, Defendants are

not entitled to summary judgment on ████████████ claim because Section 11 does not require

that he relied upon or even knew of the misrepresentations before he bought ████ Fund shares.

Clearly, genuine disputes of material fact exist that can only be resolved by a jury.

     For all of these reasons, more fully explained below, Defendants' motion for summary

judgment must be denied and this case permitted to proceed to a trial on the merits.

## PLAINTIFFS' COUNTER-STATEMENT OF FACTS

     Direxion Shares ETF Trust ("Direxion Trust" or "Direxion") is a Delaware statutory trust

and a registered investment company which offered for sale to the public four triple leveraged

exchange-traded funds ("ETFs"), the FAZ Fund, ERY Fund, BGZ Fund, and TZA Fund

(collectively, the "Bear Funds").  Third Consol. Am. Class Action Complaint ("Compl.") ¶ 74;

Answer to Third Consol. Am. Class Action Complaint ("Ans.") ¶ 74.  The Bear Fund shares

were registered for sale to the public pursuant to a registration statement filed with the SEC on

October 3, 2008 (the "Prospectus) and supplemented on November 8, 2008 (the "November

2008 Supplement"), December 9, 2008 (the "December 2008 Supplement"), and again on April

10, 2009 (the "April 2009 Supplement").  *See* Declaration of Mark C. Rifkin in Support of

Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class

Counsel ("Rifkin Class Cert. Decl."), April 30, 2012, Exs. 3 -4, 7, ECF No. 105.

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████ Direxion 30(b)(6) Tr. at 19, 21 (attached as Exhibit A to the

Declaration of Mark C. Rifkin in Opposition to Defendants' Motion for Summary Judgment

("Rifkin Decl.")).  Bear Fund shares also trade on an organized secondary market, the NYSE

Arca.   Compl. ¶ 74; Ans. ¶ 74.   During the Class Period, Plaintiff Stoopler purchased FAZ shares, Plaintiff Remmells purchased FAZ shares, and Plaintiff Schwack purchased ERY shares on the secondary market traceable to either the November 2008 Supplement or the December 2008 Supplement (collectively, the "Offering Documents").[1]

According to the cover page of the December 2008 Supplement, the Bear Funds "seek[] *daily leveraged* investment results."   Rifkin Class Cert Decl., Ex. 4 (emphasis original). Consequently, as stated in the April 2009 Supplement (issued after the Class Period ended), the "return of each Fund for periods longer than a single day, especially in periods of market volatility, may be *completely uncorrelated to the return of the Fund's benchmark for such longer period*."  Rifkin Class Cert. Decl., Ex. 7 (emphasis original).

The Bear Funds were exposed to unique risks, both because they were leveraged and because they were inverse funds.   According to the April 2009 Supplement, the length of the holding period and underlying index volatility influenced the performance of the Bear Funds far more than the performance of each Fund's benchmark.   Indeed, because of the pronounced effect of daily rebalancing, volatility, and compounding on the performance of the Bear Funds for holding periods longer than one day, over a one-year holding period, "if annualized volatility of the benchmark is 90%, *both a Bull and a Bear Fund targeted to the same benchmark* would be expected to lose more than 90% of their value even if the cumulative benchmark return for the year was 0%."[2]   Rifkin Class Cert. Decl., Ex. 7 at 8 (emphasis added).   In periods of high

---

[1] Plaintiffs allege that both Supplements failed to disclose the nature and magnitude of the risk of holding Bear Fund shares for longer than one day.   In that regard, there is *no material difference between the disclosures in the two supplements*.   The disclosures were not materially changed until the April 2009 Supplement was filed with the SEC.   *See* Opinion and Order dated Jan. 27, 2012 [Dkt. No. 85] at 6 n.3 ("defendants concede that the two [supplements] 'contained generally similar relevant disclosures.'") (quoting Defs. Mem. of Law in Supp. of Mot. to Dismiss [Dkt. No. 65] at 7).

[2] Because they were so susceptible to volatility risk, Michael Rawson, an ETF analyst with *Morningstar*, suggested they "should come with a black box warning that they are really making a bet on the underlying

volatility – such as during the Class Period – over a year, ***both*** long (bull) and short (bear) investors would be expected to lose 90% of their investment linked to the ***same benchmark***.[3]

According to Defendants, "indisputable facts show that ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ As they did in their opposition to Plaintiffs' motion for class certification, Defendants' summary judgment motion argues that ████████████████████████████████████████████████████████ ████████████████████████████████████████████ ███████ ███████████████████ vigorously dispute Defendants' mischaracterization of their claims and of the damages they seek.

Plaintiffs' expert Candace L. Preston has calculated the losses suffered by ██████ ███████████████████ and also the amounts that might be attributed to their making the incorrect "directional" investment ████████████████████████████████████████ ████████████████.[4]   Now that Plaintiffs have produced all their documents (including all their brokerage statements) to Defendants, there is no dispute that ████████████████ ████████████████████████████████████████████████ *See* Expert Report



---

***volatility of the index***."   Rawson, Michael, "Don't Abuse the Benefits of ETFs", *Morningstar Advisor* (June 21, 2010).  *See* Rifkin Decl., Ex. B (emphasis added).

[3]  During the Class Period, from November 8, 2008, through April 9, 2009, the volatility of the benchmarks for the four Bear Funds were as follows: for FAZ, the volatility of the Russell 1000 Financial Services Index was approximately 95%; for ERY, the volatility of the Russell 1000 Energy Index was approximately 60%; for BGZ, the volatility of the Russell 1000 Index was approximately 48%; and for TZA, the volatility of the Russell 2000 Index was approximately 62%.

[4]  Under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k(e), Plaintiffs need only prove their actual out-of-pocket loss (subject to certain limitations on the purchase price and the market price on the date when the litigation was commenced).  At that point, ***Defendants*** may seek to prove that a portion of the out-of-pocket loss is attributable to anything other than the alleged misrepresentation or omission (such as making the wrong "directional" choice on the day of the purchase).  Defendants have ***not*** sought to attribute any portion of Plaintiffs' losses to anything other than changes in the underlying indices (*i.e.*, their incorrect "directional" investments).

of Dr. Patrick Conroy ("Conroy Report"), Exhibit 7.A; Rebuttal Report of Candace L. Preston ("Preston Rebuttal Report"), ¶¶ 23-25.   According to Defendants' own expert, Dr. Conroy ███ ██████████████████████████████████████████████ Conroy Report, Exhibit 7.B.   For purposes of this motion, Plaintiffs do not oppose Dr. Conroy's calculation of ███ ██████ losses.  *See* Preston Rebuttal Report, ¶ 26.   According to Dr. Conroy, ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ ███

███████████████████████████████████████████████████████████

████████████ █ ██████ ███████████████████████████████████████

█████████████████████████████████████████████.

   There is also no dispute that ████████████████████████████████

████████████████████████   The parties agree that ████████████████

██████████████████████████████████████████████████████████.

██████████████████████████ █ ██████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████,[5]

---

[5]   According to Defendants' expert, over that ████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████   *See* Conroy Report ¶ 33 & Ex. 8.  In fact, as Plaintiffs' rebuttal expert, Paul J. Seguin, Ph.D., explains in his Rebuttal Report ("Seguin Rebuttal Report"), such an illogical result is impossible.  Seguin Rebuttal Report, ¶ 12, attached as Ex. H to the Supplemental Declaration of Mark C. Rifkin in Further Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel ("Rifkin Class Cert Supp. Decl."), dated Sept. 6, 2012.

While Defendants may be entitled to offset a portion of █████████████████

██████████ losses by the much smaller amounts they would have lost from an incorrect

"directional" choice **on the first day of their investments**, the remainder of their losses during the

extended holding period are not attributable to the wrong "directional" choice, but rather to their

incorrect holding periods. *See* Preston Rebuttal Report, ¶¶ 14-15.

There is no dispute regarding ██████████████ loss on his purchase of ████████ Fund shares:

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████[6] *See* Supplemental Declaration of Candace

L. Preston ("Preston Decl."), ¶ 3 and Exhibit B (attached as Exhibit C to the Rifkin Decl.).

Also according to Defendants, "indisputable facts that were available to plaintiffs before

they filed this lawsuit prove that the Funds' respective tracking errors were *de minimus*." Def.

Mem. at 2. In a word, Defendants are ***wrong***. The evidence – including documents produced by

Defendants and by third-party Alaric as well as expert evidence – easily establishes there is no

substance to their argument. For example, although Defendants' document production is not yet

complete and no substantive depositions have been taken, Defendants have produced several

documents ████████████████████████████ during the Class Period:

- ████████████████████████████████████████████████████████

---

[6] Defendants have not disputed either ██████████████ actual loss or the calculation of his damages in this
manner.



Plaintiffs' expert Paul J. Sequin, Ph.D., has explained in great detail precisely how the Bear Funds could not and did not benefit from daily compounding. During the Class Period, all four Bear Funds experienced significant daily compound underperformance (*i.e.*, tracking errors) ***directly attributable to rebalancing***. Seguin Rebuttal Report, ¶¶ 11-20. Thus, Dr. Seguin calculated mean daily underperformance during the holding period from November 8, 2008 through April 9, 2009, for all four Funds as follows:



Seguin Rebuttal Report, ¶ 20.[8]

---

[7] True and correct copies of the above documents are attached as Exhibits E-J to the Rifkin Decl., filed herewith.

[8] Dr. Seguin also calculated mean daily underperformance of the FAZ and ERY Funds during the shortened period that Dr. Conroy purportedly analyzed to explain that losses during the later part of the Class Period (from March 6, 2009, through April 9, 2009) were attributable to a rise in value of the

Dr. Seguin also has explained that the actual mean daily underperformance of the four Bear Funds during the Class Period is fully consistent with peer-reviewed economic theory that, for holding periods longer than one day, it is theoretically **impossible** for the Funds not to underperform -3X the index. *See* Seguin Rebuttal Report ¶¶ 7-10.

## ARGUMENT

### A.   Standards Applicable to Motion for Summary Judgment

The standards for summary judgment are well-settled and familiar.  Summary judgment may be granted only where:

> the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008).  The burden of proof rests upon the moving party to show that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A "material" fact is one that will affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  For there to be a "genuine" issue of material fact, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party." *Id.*  In determining whether there is a genuine issue of material fact, the court is required to resolve all ambiguities and draw all inferences in favor of the non-moving party. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

*Acumen v. Gen. Sec. Nat'l Ins. Co.*, No. 09 CV 01796 (GBD), 2012 U.S. Dist. LEXIS 127809, at *15 (S.D.N.Y. Sept. 7, 2012) (Daniels, J.).

When deciding if a genuine factual dispute exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," and "the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-55 (1986); *see Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).  "Where the

---

underlying indices for the two funds.  During the shortened period that Dr. Conroy chose, using NAVs, FAZ underperformed by ███████████████████████ and ERY underperformed by ███████████████████████████.  Seguin Rebuttal Report, ¶¶ 12 & 16.

movant has the burden [of proof at trial], its own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998) (citing *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986)). "In moving for summary judgment on an issue on which the movant bears the burden of proof at trial (*e.g.*, when a defendant moves for summary judgment on an affirmative defense), the movant must make a strong showing. . . . [the] showing must be sufficient for the court to hold that ***no reasonable trier of fact could find other than for the moving party***." *Vincent v. Essent Healthcare*, 470 F. Supp. 2d 140, 143 (D. Conn. 2007) (emphasis added) (citations and internal quotation marks omitted).

**B.    There is a Genuine Dispute of Material Fact Concerning Whether The Funds Tracked -3X Their Underlying Benchmarks**

Defendants have moved for summary judgment on Paragraphs 25, 36-40, and 207-220 of the Complaint, alleging that they failed to disclose the risk of tracking error in the Bear Funds (which Defendants refer to as the "Tracking Error Claim"). *See* Def. Mem. at 1. The parties vigorously dispute whether there were significant tracking errors in the Funds. The ***only*** evidence offered by Defendants to support their argument that the tracking errors were "*de minimus*" is the Declaration of Patrick E. Conroy, Ph.D. ("Conroy Decl."), ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

Conroy Decl., ¶ 7.  Dr. Conroy's calculations, however, are contradicted by documentary evidence that ██████████████████████████████████████████

██████████████████████████████████████████████

███████████████████.

Defendants have produced two documents that directly refute their argument that they are entitled to summary judgment on the "Tracking Error Claim" because the tracking errors in the FAZ and ERY Funds were purportedly "*de minimus*."  The first document, the 4Q2008 Tracking Report, which compares the cumulative performance of the Bear Funds relative to their expected return of -3X the returns of the underlying indices for the last two months of 2008.  █████

████████████████████████████████████████████████████████████████

███████████████████████████████████  ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████.[9]  ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████  ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████  █  ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[9] Although discovery is not complete and no depositions have been taken, Plaintiffs understand that █

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████



The second document, the 1Q2009 Tracking Report, likewise compares the cumulative performance of the Bear Funds relative to their expected return of -3X the returns of the underlying indices for the first three months of 2009.

See Rebuttal Report of Paul J. Seguin, Ph.D. ("Seguin Rebuttal Report"), ¶¶ 7-11 (submitted in further support of Plaintiffs' motion for class certification).

Thus, the documentary evidence produced by Defendants in this action demonstrates that,



In any event, the two Tracking Reports easily raise a genuine dispute of material fact whether the tracking errors were so "*de minimus*" that Plaintiffs may not proceed to trial on their "Tracking Error Claim."

For these reasons alone, Defendants' motion for summary judgment on Plaintiffs' "Tracking Error Claim" must be denied.[11]

---

[11] Plaintiffs have yet to complete discovery on the Tracking Error Claim" or on any other claims in the litigation. They have not, for example, taken any substantive depositions. *See* Rifkin Decl., ¶ 6. ███████████████████████████████████████████████ Because Plaintiffs have been denied the opportunity to complete discovery, the Court should not grant summary judgment for this additional reason as well. Summary judgment may not be granted where the respondent "shows . . . that he cannot at the time present facts essential to justify his opposition. The nonmoving party should not be railroaded into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Trebor Sportswear Co. v. Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(d); *Seneca Bev. Corp. v. HealthNow N.Y., Inc.*, 200 F. App'x 25, 28 (2d Cir. 2006) (summary judgment denied where nonmovant "point[s] to potential facts that might raise an issue of material fact, that it has been unable to obtain without discovery"); *Optigen, LLC v. Int'l Genetics, Inc., et al.*, No. 5:09-cv-6 (GTS/ATB), 2010 U.S. Dist. LEXIS 37808, at *15-16 (N.D.N.Y. Apr. 16, 2010) (summary judgment denied so that plaintiff may be given "opportunity to complete discovery so it can contest the factual statements on which [defendant's] summary judgment motion is based, before that motion is resolved").

In addition, Plaintiffs' expert, Dr. Seguin, has computed significant daily compound underperformance (including daily tracking error) in the four Bear Funds – ███████████ ██████████████████ – that were ***directly attributable to rebalancing***.  Seguin Rebuttal Report, ¶¶ 11-20.  Plainly, the tracking errors that Dr. Seguin calculated ██████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████  This genuine dispute of material fact precludes Defendants from summary judgment on the "tracking error" portion of Plaintiffs' claim.

Defendants' expert, Dr. Conroy, attempts to explain the differences between his conclusion that there was virtually no tracking error in the FAZ and ERY Funds with Dr. Seguin's conclusion that there was tracking error.  Dr. Conroy hypothesizes that Dr. Seguin's tracking errors "appear to be calculated by computing the difference between minus 300% of the natural logarithmic returns of the underlying indices for the FAZ and ERY, and the natural logarithmic returns of the Funds' daily net asset value ('NAV')."[12]  Conroy Report, ¶ 4.  Despite Dr. Conroy's speculation, Dr. Seguin did ***not*** use natural logarithms to calculate any tracking errors.[13]  *See* Seguin Decl., ¶ 3 (attached as Exhibit D to Rifkin Decl.).  To the contrary, Dr. Seguin's calculation of daily compound underperformance included tracking errors that he computed using only arithmetic returns.  *See id.* at ¶ 4.

The Court cannot resolve these disputed issues of fact by summary judgment.  "Where, as here, there are conflicting expert reports presented, courts are wary of granting summary

---

[12] The natural logarithm of any number is the power to which the irrational constant $e$ (which is approximately 2.7182818) would have to be raised to equal that number.  It is the inverse of an exponential function.

[13] Dr. Conroy claims to have "confirmed" his assumption by "replicating" Dr. Seguin's calculations using natural logarithmic returns.  Conroy Report, ¶ 6.  However, Dr. Conroy has not provided any support for his claim, which would ***not*** have confirmed his assumption.

judgment."  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 79 (2d Cir. 2002)
(internal quotation marks omitted).  "[D]eciding whether an expert report raises a genuine issue
of material fact is a task left to the sound discretion of the court.  In cases where credible expert
reports conflict the case for summary judgment on the disputed issue is **very weak**."  *Gucci Am.,
Inc. v. Guess?, Inc.*, 843 F. Supp. 2d 412, 418 (S.D.N.Y. 2012) (emphasis added) (Scheindlin,
J.).  There, Judge Scheindlin denied Guess's motion for summary judgment on Gucci's Lanham
Act claim because Gucci's expert's report raised a genuine issue of material fact as to whether
Guess's use of a particular design was likely to dilute Gucci's mark.  *See id.* at 429.  *See also
Tsveitel v. Geoghegan*, No. 05-cv-5721, 2009 U.S. Dist. LEXIS 62219, at *24-25 (E.D.N.Y. July
21, 2009) (conflicting medical expert reports raised issues of material fact concerning causation
of plaintiff's injuries that precluded summary judgment).

Here, Dr. Seguin's thorough expert testimony is compelling evidence that the Bear Funds
significantly underperformed -3X their benchmarks on a mean daily compound basis,
particularly in light of █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████; and (ii) the academic literature Dr. Seguin cites in his report.
Certainly, it cannot be said on the basis of this record that Plaintiffs will present no evidence on
which the jury might find in their favor that the Bear Funds substantially underperformed -3X
their benchmarks during the Class Period.

For this additional reason, Defendants' motion for summary judgment on the "Tracking
Error Claim" must be denied.

### C.     There Is Considerable Evidence That Plaintiffs Lost Money When The Risk Of Holding Bear Funds For More Than One Day Materialized

In simple terms, Plaintiffs bought Bear Fund shares that were appropriate to hold for no

longer than a single trading session.  However, the Offering Documents did not adequately disclose the nature and magnitude of the risk of holding Bear Fund shares for more than a day.  Thus, Plaintiffs reasonably did not understand the potential adverse consequence to them if they held their Bear Fund shares for more than a day, or that they might lose most of their principal regardless of whether they bought long (bull) or short (bear) funds linked to the same benchmark because of the high volatility in the indices at the time.  Since Plaintiffs did not know the nature and magnitude of the risk of doing so, they held onto their shares for longer than one day.  Plaintiffs suffered losses **when the risk of holding Bear Fund shares for more than a day materialized**, even if a portion of their loss could be attributed to making the wrong "directional" choice on the first day of their investment (after which they should have sold their shares).

Under Section 11 of the Securities Act, a plaintiff who alleges and proves any misstatement or omission of material fact in a registration statement is entitled to recover statutory damages equal to the difference between the price he paid for the security minus either the price he received when he sold the security or the price at which the security was trading when he commenced the action if he did not sell.  15 U.S.C. § 77k(e)(3).  "The plain language of section 11(e) prescribes the method of calculating damages, *see* 15 U.S.C. § 77k(e), and the court must apply that method in every case."  *McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1048 (2d Cir. 1995) (citations omitted).  Where, as here, the record shows a decline in market prices after the plaintiffs purchase their shares, they are entitled to recover damages under the statutory scheme.  *See id.*

Loss causation is ***not*** an element of a claim under Section 11 of the Securities Act.  *See* 15 U.S.C. § 77K(e); *Hutchison v. Deutsche Bank Sec., Inc.*, 647 F.3d 479, 484 (2d Cir. 2011); *Iowa Pub. Emps. Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010); *In re Morgan*

*Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (same).  Plaintiffs need only prove that they suffered an actual loss pursuant to the formula set forth in Section 11(e) of the Securities Act, 15 U.S.C. § 77k(e).[14]  Defendants, however, may then prove the absence of loss causation as an affirmative defense to limit their liability.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 11-2762-cv, 2012 U.S. App. LEXIS 18814, *27 n.8 (2d Cir. Sept. 6, 2012); *MF Global*, 620 F.3d at 145; *Morgan Stanley*, 592 F.3d at 359 n.7.

Defendants bear the burden of proof on the "negative loss causation" affirmative defense. *Goldman Sachs*, 2012 U.S. App. LEXIS 18814, at *27 n.8; *Morgan Stanley*, 592 F.3d at 359 n.7. Consequently, to prevail on their summary judgment motion raising "negative loss causation," Defendants must prove that they are entitled to judgment as a matter of law, *Albee Tomato*, 155 F.3d at 618, and that ***no reasonable jury could find for Plaintiffs***, *Vincent*, 470 F. Supp. 2d 140 at 143.  Defendants have fallen far short of these demanding standards, and for that reason, their motion for summary judgment must be denied.

In *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010), the Second Circuit held that loss causation may be established ***either*** by (1) a corrective disclosure ***or*** (2) a materialization of the concealed risk.  In *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005), the Second Circuit held that loss causation is satisfied where (i) "the loss is foreseeable" and (ii) "the loss is caused by the ***materialization of the concealed risk***."  396 F.3d

---

[14] The statutory formula for damages is as follows:

the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.

15 U.S.C. § 77k(e).

at 173 (expressly adopting the "materialization of risk" approach to pleading and proving loss causation) (emphasis added).[15]

Citing *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009), Defendants argue that courts in this Circuit have rejected the "materialization of the risk" theory of loss causation. Def. Br. at 14. The district court said no such thing in *Charles Schwab*. To the contrary, quoting the Second Circuit's decision in *Lentell*, it **held exactly the opposite**:

> Although the loss causation inquiry often hinges on the timing of purchases and sales in relation to the typical inflation-disclosure-deflation cycle, *loss causation is not limited to that scenario*. . . .
>
>    . . . . Loss causation, however, is *not limited to the common "corrective disclosure-price drop" scenario*. . . .
>
>    As courts in other circuits have explained, a plaintiff may establish loss causation by alleging "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered;" that defendants' "misstatements and omissions concealed the price-volatility risk (or some other risk) that *materialized and played some part in diminishing the market value of*" the security. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173, 177 (2d Cir. 2005) (citation omitted; emphasis in original).

*Charles Schwab*, 257 F.R.D. at 547.[16]

There is abundant, undisputed evidence in the record that **all three Plaintiffs lost money**

---

[15] Loss causation is met when there is a causal relationship between the plaintiff's loss and the concealed risk. *Lentell*, 396 F.3d at 174 (citing cases). While there must be some relationship "between the plaintiff's investment loss and the information misstated or concealed by the defendant," *id.*, loss causation does not require that the *defendant's own words* – rather than the circumstances misrepresented or concealed – cause the plaintiff's loss. The risk that caused the loss must be within the zone of risk concealed by the alleged misrepresentations or omissions. *See AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 238 (2d Cir. 2000) (Winter, J., dissenting).

[16] Defendants' argument is directly contrary to the Second Circuit's decisions in *Lentell* and *Omnicom*. *See also In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 307 (S.D.N.Y. 2005) (fact that fraud was not revealed until "*after Parmalat shares were worthless*" was deemed "immaterial" to whether plaintiffs alleged loss causation because "the *risk* allegedly concealed by defendants materialized [before the subsequent disclosure] and arguably caused the decline in shareholder and bondholder value") (emphasis added); *see also In re Mutual Funds Inv. Litig.*, 590 F. Supp. 2d 741, 747-48 (D. Md. 2008) (rejecting defendants' argument that loss causation may only be met by inflation-disclosure-deflation scenario); *Oppenheimer Rochester Funds Group Sec. Litig.*, 838 F. Supp. 2d 1148, 1174-77 (D. Colo. 2012) (same).

on their investments. ███████████████████████████████████████████

████████ Conroy Report, Exhibit 7.B. ███ ████████████████████████████

████████████████████████████. *See* Preston Rebuttal Report, ¶ 32. ███ ███ ████████

████████████████████████████████ Preston Supp. Decl., ¶ 3 and Exhibit

A.  Those market losses are "***presumed*** to be caused by the misrepresentation in the registration

statement."  *McMahan*, 65 F.3d at 1048 (emphasis added and citation omitted).  To prevail on

their "negative loss causation" affirmative defense, Defendants must prove either that Plaintiffs'

losses were not foreseeable or they were not caused by a materialization of the risk of holding

Bear Fund shares for more than one day.  Defendants have done neither.

Although Defendants did not disclose the nature or magnitude of the risk, it was plainly

foreseeable that the Bear Funds would not deliver -3X the benchmark returns over longer

holding periods. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ ████████████████ ████████████████████████████████

████████████████████████████████████████████████████████████████ -

████████████████████████[17]████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ ████████████████ ████████████████████████ -

--------

[17] *See* Seguin Rebuttal Report, ¶¶ 11-20, for a more complete discussion of the reasons for the large
underperformance attributable to daily rebalancing.  The tracking error is discussed in Section B above.

██████████████████████████████████████████████████

The Bear Funds continued to substantially underperform -3X their benchmarks for the duration of the Class Period. █████████████████████████████████

█████████████████████████████████████████████████

████████  ███████████████████  ███████████  ██  ████████████  ████████

███████████████████████████████  █  ███████████████████████

█████████████  ███████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

███████████████

Moreover, as Dr. Seguin discussed in his rebuttal report, the academic literature indicates that over holding periods of longer than one day, the Bear Funds (as leveraged ETFs) necessarily would **have to underperform** their targeted returns as long as volatility was greater than zero – which it certainly was when the Bear Funds were sold to Plaintiffs. *See* Seguin Rebuttal Report, ¶¶ 7-11. Thus, there is no doubt that Plaintiffs' losses were foreseeable.

In addition, there is no genuine dispute that Plaintiffs suffered their losses when the concealed risk of holding Bear Fund shares for longer than one day materialized. Indeed, ██

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████[18]   The remainder of Plaintiffs' losses was caused by daily tracking errors, the reasons for which have not yet been explained.

---

[18] T█████████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████████████████

It is impossible to conclude anything other than that Plaintiffs were harmed by some amounts when that risk materialized.  As Ms. Preston has demonstrated, ***most*** of the losses that Plaintiffs incurred were the direct result of holding the shares for longer than one day.  *See* Preston Rebuttal Report, ¶¶ 26-27, 32; Preston Decl. ¶ 3.  Certainly, Defendants have not proven that ***none*** of Plaintiffs' losses were attributable to their holding the shares for more than a day.  At a minimum, therefore, there is a genuine dispute of fact whether ***any*** of Plaintiffs' losses were caused by the materialization of the concealed risk of holding Bear Fund shares for longer than one day.[19]

For these additional reasons, Defendants' motion for summary judgment must be denied.

## D.     There is a Genuine Dispute of Material Fact Concerning How Much of Plaintiffs' Losses Are Attributable to the Incorrect "Directional" Choice

The parties also vigorously dispute ***how much*** of Plaintiffs' losses may be attributed to their having made an incorrect "directional" investment choice.  On the one hand, Defendants insist that all of ████████████████████████ losses should be eliminated because, in their view of Plaintiffs' claims, both of them would have lost even more than they did if the ███ Fund had earned -3X its benchmark over the entire length of their respective holding periods. Plaintiffs, on the other hand, have explained that Defendants are entitled to a reduction in the amount of their statutory damages for only that portion of their loss attributable to the incorrect "directional" choice on the first day of their investments.

After the Class Period ended, Direxion belatedly disclosed in the April 2009 Prospectus that, over holding periods longer than a day, the returns earned by the Bear Fund shares may be "***completely uncorrelated***" to their underlying indices (*i.e.*, completely uncorrelated to -3X the

---

[19] Certainly, at this point, before discovery is completed and ████████████████████████
████████████████████████████████████████████████████████
████████████, it is premature to grant summary judgment to Defendants.  *See* note 11 above.

returns of those indices).  Defendants' argument that Plaintiffs' losses should be reduced by -3X the benchmark returns *over their entire holding periods* is fundamentally inconsistent with their own belated disclosure that the Bear Funds should not be expected to earn -3X the benchmark returns for any holding period longer than a day.

As discussed in Section C above, Plaintiffs need only prove that they suffered an actual loss on their investments under the formula set forth in Section 11(e), 15 U.S.C. § 77k(e). Unquestionably, they have done so: ███████████████████████████████ ███████████████████████████  ███████████████████████████ ███████████████████████████████ █ ███████████████████████ ███████████████████████████████████████ ██████████.  For the reasons discussed in Section C above, at least a *portion* of those losses were suffered because Plaintiffs held their investments longer than one day.

Defendants have not met their heavy burden to prove that *all* of Plaintiffs' losses were caused by the incorrect "directional" investment.  *See NECA-IBEW Health & Welfare Fund*, 2012 U.S. App. LEXIS 18814, at *27 n.8; *MF Global*, 620 F.3d at 145; *Morgan Stanley*, 592 F.3d at 359 n.7.  Defendants' argument is that Plaintiffs' actual losses should be compared with the hypothetical returns that they would have earned if the Bear Funds had earned -3X the index returns over their entire holding periods.  Defendants' argument assumes that the Bear Fund shares *could or should have been held for longer holding periods* and that the returns over such longer holding periods would be correlated to the benchmarks.  That is not so.

"The keystone of the Securities Act of 1933, and of the entire legislative scheme of the securities laws, is disclosure. The 1933 Act is almost exclusively preoccupied with accurate disclosure of facts, favorable and unfavorable."  *See Feit v. Leasco Data Processing Equip.*

21

*Corp.*, 332 F. Supp. 544, 563 (E.D.N.Y. 1971). Plaintiffs allege that Defendants failed to disclose the nature and magnitude of the risk of holding Bear Fund shares for longer than a day, and they claim damages under the statutory formula of Section 11 for their market losses caused by the materialization of that risk. Plaintiffs' claims are ***not*** based on any frustrated expectation that the Bear Funds would provide returns equal to -3X the index returns over extended holding periods. A plaintiff may ***not*** recover "benefit-of-the-bargain damages" under Section 11(e). *McMahan*, 65 F.3d at 1046 & 1048 (reversing district court order "to the extent that it allowed benefit-of-the-bargain damages under section 11").

Despite this controlling Second Circuit precedent, Defendants' argument replaces the statutory damages formula with a different standard based on their own "benefit-of-the-bargain" analysis. A plaintiff may not seek "benefit-of-the-bargain" damages under Section 11 of the Securities Act, and an affirmative defense of "negative loss causation" based on the same "benefit-of-the-bargain" analysis is equally unavailable. Since Plaintiffs are not seeking damages based on any "benefit of the bargain" theory, Defendants cannot reduce the amount of statutory damages for which they are liable by trying to prove that Plaintiffs would have been worse off if they had gotten the "benefit of their bargain" with Direxion.

There is abundant evidence in the record that Defendants did not intend the Bear Funds to be held for longer than one day. ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████  ████████████████████████████ ██████  ████████████████ In addition, as Defendants themselves said in the April 2009 Prospectus, over holding periods longer than a day, the returns earned by the Bear Fund shares

may be "*completely uncorrelated*" to their underlying indices (*i.e.*, completely uncorrelated to -3X the returns of those indices). Defendants cannot reverse course now and ask the Court to rule, as a matter of law, that Plaintiffs have suffered no damages because their actual losses were less than what they would have been *had the Bear Funds done something Defendants never intended them to do*. As Ms. Preston has explained, the proper adjustment for Plaintiffs' incorrect "directional" choices is to reduce their total losses by the amounts they would have lost on the first day of their investments, since that is how the Bear Funds should have been used. Preston Supp. Report, ¶¶ 26, 31; *see also* ¶¶ 21-22. Those *first-day losses* were not caused by the materialization of the risk of holding Bear Fund shares for longer than one day.

After the first day of their investments, however, Plaintiffs were exposed to the risk of holding Bear Fund shares for longer holding periods, including the combined effects of compounding, volatility, rebalancing, and tracking error.[20] Ms. Preston computed the Plaintiffs' damages by reducing their actual losses by the amounts attributable to their first-day incorrect "directional" investments: ███████████████[21] ████████████████ ████████████████████ Preston Rebuttal Report, ¶¶ 27 and 32; Preston Supp. Decl., ¶ 3.

Even if the Court were to find that Plaintiffs are not entitled to statutory damages for *all* of their losses after the first day of trading, the Court cannot determine on summary judgment that Plaintiffs are entitled to *none* of their losses during the subsequent holding periods. ███

---

[20] Dr. Seguin has explained that those risks had pronounced effects on the performance of the Bear Funds, and that the Bear Funds in fact *substantially underperformed -3X their benchmarks* over longer holding periods. Seguin Rebuttal Report, ¶¶ 11-20. Dr. Seguin also explained that, because the Bear Funds were leveraged and volatility was greater than zero, the Bear Funds *had to underperform* their target results. *Id.* at ¶¶ 7-8. In addition, Dr. Seguin explained that the risk of underperformance increased as the holding period increased. *Id.* at ¶¶ 8-9.

[21] Although Ms. Preston disagrees with Defendants' approach to negative loss causation, she computes that ████████████████████████████████████ ████████████████████████ *See* Preston Supp. Decl., ¶ 4. This alone raises a genuine dispute of material fact that precludes summary judgment for Defendants.



Dr. Conroy's analysis comparing results over entire holding periods grossly oversimplifies a complicated question, and would have the Court ignore the undisputed evidence before it that Plaintiffs suffered *some loss* on every trade they held longer than a day directly as a result of daily rebalancing (*i.e.*, as compounding, volatility, and holding period risk materialized) and from daily tracking error. This alone precludes summary judgment for Defendants.

Thus, at a minimum, there is a genuine dispute of material fact concerning how much Plaintiffs' losses should be reduced to account for their incorrect "directional" investments. That dispute precludes summary judgment for Defendants.

**E.    Defendants Have Not Established Any Other Affirmative Defense To ▮▮▮▮▮▮ Claim**

Despite previously acknowledging that reliance and loss causation are not elements of a claim under Section 11, Defendants nonetheless argue that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

As Defendants have admitted, all the Bear Fund shares were purchased before Direxion issued an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement. *See* Rifkin Class Cert. Supp. Decl. Ex. E. Indeed, the Class Period ended on April 9, 2009, *less than* twelve months after the November 3

Supplement became effective.  *See* Rifkin Class Cert. Decl. ¶ 4.  In such a case under Section 11, reliance on the defective registration statement is **presumed**.  *See Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 114 (S.D.N.Y. 2011); *N.J. Carpenters Health Fund v. DLJ Mortg.*, No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597, at *23-24 (S.D.N.Y. Aug. 16, 2011).[22]  Defendants have not cited any case in which a Section 11 claim was dismissed because the plaintiff had not read or relied upon a prospectus before a 12-month earning statement had been issued, and Plaintiffs believe there is no such case.  Plaintiffs need not prove at trial that they ever saw or relied (directly or indirectly) upon the Offering Documents to recover under Section 11.  ████████████████████████████████████████████

Whether ██████████ knew about the risk of holding Bear Fund shares for more than a day might be an affirmative defense to his claims.  However, Defendants do not argue – and certainly they offer **no evidence** to prove – that ███████  ██████  ██████████ ████████████████████████████████████████████████ ██████████████████████████████████████ ████[23]

## CONCLUSION

For all the foregoing additional reasons, Plaintiffs respectfully request that the Court deny

---

[22] *See also In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 337 (S.D.N.Y. 1996) (Leisure, J.) (reliance presumed; plaintiff need not even allege he received prospectus); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *18 (S.D.N.Y. Sept. 19, 2000) (Baer, J.) (fact that plaintiff never read prospectus is irrelevant; Sections 11 and 12 of Securities Act impose liability without regard to whether the buyer relied on the misrepresentation). "Consequently, a purchaser of a registered security is not foreclosed from suing under Section 11 because he did not read the prospectus or rely on the misleading information prior to purchase. In such cases, reliance is presumed." 17 J.W. Hicks, *Civil Liabilities: Enforcement & Litig. Under the 1933 Act*, § 4:73.

[23] ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████.

Defendants' motion for summary judgment and allow this case to proceed to a trial on the merits.

Dated:  September 17, 2012                          Respectfully submitted,

_____
Mark C. Rifkin
rifkin@whafh.com
Maja Lukic
lukic@whafh.com
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY  10016
Phone:  (212) 545-4600
Fax:  (212) 545-4653

Kenneth G. Gilman
kgilman@gilmanpastor.com
**GILMAN LAW LLP**
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Phone: (239) 221-8301
Fax: (239) 676-8224

*Co-Lead Counsel for the ERY
Plaintiffs and the Class*

William B. Federman
wbf@federmanlaw.com
Stuart Emmons
swe@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112

*Lead Counsel for the FAZ
Plaintiffs and the Class*