UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re DIREXION SHARES ETF TRUST | 09 CV 08011 (KBF) |

# INDEPENDENT TRUSTEES' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

David B. Tulchin
John L. Hardiman
Matthew A. Schwartz
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Counsel for Defendants Daniel J. Byrne, Gerald E. Shanley, III, and John Weisser*

November 15, 2012

Defendants Daniel J. Byrne, Gerald E. Shanley III, and John Weisser ("Independent Trustees") respectfully submit this supplemental Memorandum of Law in support of their motion for summary judgment.

## PRELIMINARY STATEMENT

The Independent Trustees, who have recently retained separate counsel in anticipation of trial, respectfully request the opportunity to bring to the Court's attention an important disclosure in the December 8, 2008 prospectus supplement at issue in this case ("Prospectus"; a copy of which is submitted hereto as Exhibit B to the Declaration of David B. Tulchin, dated November 14, 2012 ("Tulchin Decl.")) that has not heretofore been highlighted for the Court and that irrefutably rebuts plaintiffs' claims.

Specifically, the Prospectus, at pages 3-4, contains an example of an investor named "Mary," which explains without ambiguity that holding shares of the Direxion funds at issue ("Funds") for more than one day could result in losses in the event of market volatility, even if the underlying benchmark index for the Funds remains flat. This is the risk that plaintiffs claim was not sufficiently disclosed in the Prospectus. (*See, e.g.*, 3d Am. Compl. ¶ 113 (alleging that defendants failed to disclose that "the negative effect of compounding on cumulative returns is magnified in the Direxion Funds since they use triple leverage" and that "[v]olatile markets exacerbated the negative effect of compounding and leverage"); ¶ 131 (alleging that defendants "failed to disclose the effect of volatility on performance of the Bear Funds"); ¶¶ 201-02 (alleging plaintiff's failed to disclose that, in the event of high volatility, an investor could lose money on his investment even "when the market was flat"); ¶ 206 (alleging that defendants did not disclose the "dangerous consequences of index volatility on the performance of the Bear

Funds"); and ¶ 243 (alleging that defendants did not disclose that "volatility erodes returns" and volatility "matters even more [] where triple leverage is employed").)

The "Mary" example is that of a hypothetical investor who holds her shares for two days during which the benchmark index goes up by 5% on one day, and down by 5% on the next day. In this example, there is no change in the benchmark index after two days, yet Mary loses money because of the effect of volatility, compounding and rebalancing on her investment. The Mary example, along with the other disclosures in the Prospectus, informed plaintiffs (as sophisticated investors) of the very risks that they allege were not sufficiently disclosed.

## ARGUMENT

There is no dispute that the Prospectus states right on its cover that the Funds are suitable only for sophisticated investors pursuing daily leveraged investment goals: "The Funds are not suitable for all investors. The Funds should be utilized only by sophisticated investors who . . . understand the consequences of seeking daily leveraged investment results." (Tulchin Decl. Ex. B at 1.) The Prospectus also states that, because of compounding and rebalancing, holding shares of the Funds for more than one day could result in losses in the event of volatility, even if the underlying benchmark index remained flat. The "Mary" example on pages 3-4 explains this in a fashion that cannot be misunderstood:

> Mary is considering investments in two Funds, Fund A and Fund B. Fund A is a traditional index ETF which seeks (before fees and expenses) to match the performance of the XYZ index. Fund B is a leveraged ETF and seeks daily investment results (before fees and expenses) that correspond to 300% of the daily performance of the XYZ index.
>
> On Day 1, the XYZ index increases in value from $100 to $105, a gain of 5%. On Day 2, the XYZ index declines from $105 back to $100, a loss of 4.77%. In the aggregate, the XYZ index has not moved.

An investment in Fund A would be expected to gain 5% on Day 1 and lose 4.76% on Day 2 to return to its original value. The following example assumes a $100 investment in Fund A when the index is also valued at $100:

| Day | Index Value | Index Performance | Value of Investment |
|---|---|---|---|
|  |  |  | $100.00 |
| 1 | $105.00 | 5.00% | $115.00 |
| 2 | $100.00 | -4.76% | $100.00 |

The same $100 investment in Fund B, however, would be expected to gain 15% on Day 1 (300% of 5%) but decline 14.28% on Day 2.

| Day | Index Performance | 300% of Index Performance | Value of Investment |
|---|---|---|---|
|  |  |  | $100.00 |
| 1 | 5.00% | 15.0% | $115.00 |
| 2 | -4.67% | -14.28% | $98.57 |

Although the percentage decline is smaller on Day 2 than the percentage gain on Day 1, the loss is applied to a higher principal amount so the investment in Fund B has a loss even when the index value has not declined. (These calculations do not include the charges for expense ratio and the financing charges.)

As you can see, an investment in Fund B has higher rewards and risks due to the effects of leverage and compounding.

The Funds are exchange−traded funds that seek *daily leveraged* investment results. The Funds are intended to be used as short−term trading vehicles. The pursuit of leveraged investment goals means that the Funds are riskier than alternatives which do not use leverage. Further, the pursuit of *daily* leveraged investment goals means that the return of a Fund for a period longer than a single day will be the product of the series of daily leveraged returns for each day during the relevant period. As a consequence, especially in periods of market volatility, the path of the benchmark during the period may be at least as important to the Fund's return for the period as the cumulative return of the benchmark for the relevant period. . . .

(Tulchin Decl. Ex. B at 3-4 (emphasis in original).)[1]

---

[1] The "Mary" example illustrates the effect of compounding, rebalancing and volatility on the value of shares held by an investor in "bull" funds, not "bear" funds, but the inverse of the Mary example is obviously true with respect to the "bear" funds as well. (*See* Tulchin Decl. Ex. B at 30 ("The Financial Bear 3X Shares seeks daily investment results, before fees and expenses, of 300% of the *inverse (or opposite)* of the price performance of the Financial Index.") (emphasis added).)

The Mary Example alone demonstrates that there is not "a genuine issue of fact necessitating resolution at trial." *Sciallo* v. *Tyco Int'l Ltd.*, 03 Civ. 7770 (KBF), 2012 WL 2861340, at *3 (S.D.N.Y. July 9, 2012) (citations omitted). Based on the Mary example, there can be no doubt that plaintiffs were aware of the "compounding risks, rebalancing risks, [and] volatility risks" that form the basis for each of plaintiffs' claims. (3d Am. Compl. ¶ 21; *see also supra* pp. 1-2.)

Faced with this disclosure, as well as the other disclosures set out in the Prospectus (*see, e.g.*, Defs.' Mem. of Law in Support of their Mot. For Summary Judgment, Docket No. 126, at 11; *see also* Defs.' Mem. of Law in Support of Their Mot. to Dismiss, Docket No. 65, at 7-9), plaintiffs—who the Prospectus clearly warned should be sophisticated investors in order to invest in the Funds (*see* Tulchin Decl. Ex. B at 1)—cannot prove at trial that they were misled. *See In re Proshares Trust Sec. Litig.*, No. 09 Civ. 6935, 2012 U.S. Dist. LEXIS 128542, at *22 (S.D.N.Y. Sept. 10, 2012) ("When a registration statement warns of the exact risk that later materialized, a Section 11 claim will not lie as a matter of law."); *Panther Partners, Inc.* v. *Ikanos Communic'ns, Inc.*, 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008) ("An accurate statement coupled with the precise disclosure of a risk later realized cannot adequately form the basis for a securities claim."); *Freedman* v. *Value Health, Inc.*, 135 F. Supp. 2d 317, 338 (D. Ct. 2001) (granting summary judgment because, "[i]n the context of the entire Prospectus . . . the Risk Disclosure was not misleading"), *aff'd*, 34 Fed. Appx. 408, 411 (2d Cir. 2002).

## **CONCLUSION**

The motion for summary judgment should be granted.

Dated: New York, New York
November 15, 2012

Respectfully submitted,

/s/ David B. Tulchin
David B. Tulchin
John L. Hardiman
Matthew A. Schwartz
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Email: tulchind@sullcromm.com
hardimanj@sullcrom.com
schwartzmatthew@sullcrom.com
Phone: (212) 558-4197
Fax:    (212) 558-3588

*Counsel for Defendants Daniel J. Byrne, Gerald E. Shanley, III, and John Weisser*