**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re DIREXION SHARES ETF TRUST

Civil Action No. 1:09-cv-08011 (KBF)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION**

Mark C. Rifkin
Maja Lukic
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Phone: (212) 545-4600

*Co-Lead Counsel for the ERY Plaintiffs
and the Proposed Class*

Kenneth G. Gilman
**GILMAN LAW LLP**
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Phone: (239) 221-8301

*Co-Lead Counsel for the ERY Plaintiffs
and the Proposed Class*

William B. Federman
Stuart Emmons
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560

*Lead Counsel for the FAZ Plaintiffs
and the Proposed Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iv

INTRODUCTION AND BACKGROUND .............................................................................1

REASONS FOR THE SETTLEMENT.....................................................................................2

PROCEDURAL BACKGROUND ...........................................................................................4

    A.    Procedural Background ...........................................................................4

    B.    Plaintiffs' Substantive Allegations ..........................................................4

ARGUMENT.............................................................................................................................5

I.    FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED ...................6

    A.    Applicable Standard ...............................................................................6

    B.    The Settlement Was Negotiated at Arm's-Length and is Supported by Plaintiffs and Experienced Counsel.....................................................6

    C.    The Settlement Terms are Fair, Reasonable and Adequate Under the *Grinnell* Factors .................................................................................7

        1.    The Complexity, Expense and Likely Duration of the Action Justifies the Settlement ...............................................................8

        2.    The Reaction of the Class to the Settlement..............................11

        3.    Plaintiffs had Sufficient Information to Make Informed Decisions as to Settlement........................................................12

        4.    Plaintiffs Faced Significant Risks in Establishing Liability .....................13

        5.    Plaintiffs Faced Significant Risks in Establishing Damages....................16

        6.    Risks of Maintaining Class Action Status Through Trial..........................18

        7.    Ability of Defendants to Withstand Greater Judgment .............................19

        8.    The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation ...............................................................20

    D.    The Plan of Allocation is Fair, Reasonable, and Adequate ...................20

E.     Notice to the Class Satisfies Due Process Requirements ...................................24

CONCLUSION .............................................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*In re "Agent Orange" Product Liability Litigation,*
   597 F. Supp. 740 (E.D.N.Y. 1984),
   *aff'd,* 818 F.2d 145 (2d Cir. 1987).............................................................................20

*In re "Agent Orange" Product Liability Litigation,*
   611 F. Supp. 1396 (E.D.N.Y. 1985)...........................................................................23

*In re Alloy, Inc. Securities Litigation,*
   No. 03 Civ. 1597 (WHP),
   2004 U.S. Dist. LEXIS 24129 (S.D.N.Y. Dec. 2, 2004) ...........................................14

*In re American International Group, Inc. Securities Litigation,*
   No. 04 Civ. 8141 (DAB),
   2012 U.S. Dist. LEXIS 13784 (S.D.N.Y. Feb. 2, 2012)......................................22-23

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation,*
   No. MDL 1500, 02 Civ. 5575 (SWK),
   2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .................................8, 12, 14

*In re Bear Stearns Cos., Inc. Securities and ERISA Litigation,*
   08 MDL No. 1963,
   2012 U.S. Dist. LEXIS 161269 (S.D.N.Y. Nov. 8, 2012)....................................*passim*

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
   No. 07 Civ. 2207 (JGK),
   2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010)...........................................12

*In re Cendant Corp. Litigation,*
   264 F.3d 201 (3d Cir. 2001) ....................................................................................17

*Chatelain v. Prudential-Bache Securities, Inc.,*
   805 F. Supp. 209 (S.D.N.Y. 1992) ..........................................................................19

*Cinelli v. MCS Claim Services, Inc.,*
   236 F.R.D. 118 (E.D.N.Y. 2006)..............................................................................13

*Comcast Corp. v. Behrend,*
   No. 11-864,
   2013 U.S. Dist. LEXIS 2544 (Mar. 27, 2013)............................................................9

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ..............................................................................6, 7, 19

iv

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ....................................................................................... 14

*In re Direxion Shares ETF Trust,*
    No. 09 Civ. 8011 (KBF),
    2012 U.S. Dist. LEXIS 29709 (S.D.N.Y. Mar. 6, 2012) ............................................... 4

*Eisen v. Carlisle & Jaquelin,*
    417 U.S. 156 (1974) ........................................................................................... 24, 25

*In re Excess Value Insurance Coverage Litigation,*
    No. M-21-84 (RMB), MDL-1339,
    2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) ........................................... 12

*In re Flag Telecom Holdings, Ltd. Securities Litigation,*
    No. 02-CV-3400 (CM) (PED),
    2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) .......................................... 11

*In re Global Crossing Securities & ERISA Litigation,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................. 8, 10, 12, 14

*Hicks v. Morgan Stanley & Co.,*
    No. 01 Civ. 10071 (RJH),
    2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ........................................... 10

*In re IMAX Securities Litigation,*
    283 F.R.D. 178 (S.D.N.Y. 2012) ......................................................................... 7, 8, 19

*In re Independent Energy Holdings PLC Securities Litigation,*
    No. 00 Civ. 6689 (SAS),
    2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003) .......................................... 16

*In re Ivan F. Boesky Securities Litigation,*
    948 F.2d 1358 (2d Cir. 1991) ....................................................................................... 6

*Jermyn v. Best Buy Stores, L.P.,*
    No. 08 Civ. 214 (CM),
    2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012) ............................................ 6

*Joel A. v. Giuliani,*
    218 F.3d 132 (2d Cir. 2000) ......................................................................................... 6

*Law v. National Collegiate Athletic Association,*
    105 F. Supp. 2d 1193 (D. Kan. 2000) ......................................................................... 23

*In re Lucent Technologies Inc., Securities Litigation,*
   307 F. Supp. 2d 633 (D.N.J. 2004).............................................................................23

*In re MicroStrategy, Inc. Securities Litigation,*
   148 F. Supp. 2d 654 (E.D. Va. 2001) .........................................................................23

*In re Michael Milken & Associates Securities Litigation,*
   150 F.R.D. 46 (S.D.N.Y. 1993) ...........................................................................16, 23

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) ...................................................................................................25

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.,*
   No. 08 Civ. 5653 (PAC),
   2011 U.S. Dist. LEXIS 92597 (S.D.N.Y. Aug. 16, 2011).........................................18

*New Jersey Carpenters Health Fund v. Residential Capital,*
   272 F.R.D. 160 (S.D.N.Y. 2011)..........................................................................17, 18

*In re PaineWebber Ltd. Partnerships Litigation,*
   171 F.R.D. 104 (S.D.N.Y. 1997),
   *aff'd,* 117 F.3d 721 (2d Cir. 1997)...................................................................6, 7, 17

*In re Portal Software, Inc. Securities Litigation,*
   No. C-03-5138 VRW,
   2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) .........................................23

*Public Employees Retirement System of Mississippi v.*
*Merrill Lynch & Co.,*
   277 F.R.D. 97 (S.D.N.Y. 2011)..................................................................................18

*In re Sapiens Securities Litigation,*
   No. 94 Civ. 3315,
   1996 U.S. Dist. LEXIS 17644 (S.D.N.Y. Nov. 26, 1996).........................................23

*Schwartz v. TXU Corp.,*
   No. 3:02-CV-2243,
   2005 U.S. Dist. LEXIS 2707 (N.D. Tex. Nov. 8, 2005).............................................23

*Seijas v. Republic of Argentina,*
   606 F.3d 53 (2d Cir. 2010) .........................................................................................18

*In re Sony SXRD Rear Projection TV Class Action Litigation,*
   No. 06 Civ. 5173 (RPP),
   2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ...........................................10

*Strougo v. Bassini,*
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ........................................................................ 10

*In re Sturm, Ruger, & Co., Inc. Securities Litigation,*
  No. 3:09-cv-1293 (VLB),
  2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012) ......................................... 22

*In re Telik, Inc. Securities Litigation,*
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................7, 21

*In re Union Carbide Corp. Consumer Products Business Securities Litigation,*
  718 F. Supp. 1099 (S.D.N.Y. 1989) ............................................................................ 6

*In re Veeco Instruments Securities Litigation,*
  No. 05 MDL 01695,
  2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) .........................................11, 20, 21, 23

*In re Visa Check/MasterMoney Antitrust Litigation,*
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ......................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ...........................................................................6, 12, 20

*In re Warner Communications Securities Litigation,*
  618 F. Supp. 735 (S.N.Y. 1985),
  *aff'd,* 798 F.2d 35 (2d Cir. 1986) ............................................................................. 17

*Williams v. Vukovich,*
  720 F.2d 909 (6th Cir. 1983) ................................................................................11-12

## STATUTES & RULES

Federal Practice and Procedure § 1797.1 ..................................................................... 11

Federal Rules of Civil Procedure
  23 ...........................................................................................................................1, 25
  23(c) ........................................................................................................................... 19
  23(e)(1)-(2) .................................................................................................................. 6

Securities Act of 1933
  Section 11(e) ............................................................................................................... 16

## **OTHER AUTHORITIES**

www.DirexionFundSettlement.com (the "Website")......................................................................25

4 Newberg on Class Actions § 11:58 (4th ed. 2002)......................................................................11

Court-appointed Lead Plaintiffs Evan Stoopler and Howard Schwack and named Plaintiff David Remmells, by and through their undersigned counsel, hereby submit this Memorandum of Law in Support of the Motion for Final Approval of Proposed Class Action Settlement and Approval of Plan of Allocation.

## INTRODUCTION AND BACKGROUND

Plaintiffs[1] and their counsel respectfully submit that the proposed $8 million settlement of the above-captioned class action (the "Action") easily satisfies all of the relevant standards for final approval under Federal Rule of Civil Procedure 23.  The Settlement resulted from intensive arm's-length negotiations that ended in a day-long mediation session before a former federal judge, the Hon. Layn Phillips ("Judge Phillips" or the "Mediator"), and was achieved only after the parties had nearly completed discovery in the Action.

The Settlement reflects a reasoned and fully informed compromise based on Plaintiffs' and Lead Counsel's knowledge of the strengths and weaknesses of the case gained through an extensive pre-complaint investigation, motion practice, consultations with experts, and voluminous discovery.  Joint Decl.[2] at ¶¶ 6, 12-28.  It appropriately reflects the risks and expense of continued litigation and the heavily contested factual and legal issues in the Action, including whether the Defendants disclosed the nature and magnitude of the risk of holding Direxion Fund shares for longer than a single trading sessions, whether the Class Members' losses were caused by any of Defendants' alleged wrongdoing, whether Plaintiffs could represent a Class of all other

---

[1] All capitalized terms not otherwise defined have the meaning set forth in the Stipulation and Agreement of Settlement, dated January 31, 2013 (the "Stipulation"), filed with the Court on January 31, 2013 (Dkt. No. 188), and preliminarily approved by the Court's February 5, 2013 order.  (Dkt. No. 190).

[2] "Joint Decl." refers to the concurrently-filed Joint Declaration in Support of (I) Plaintiffs' Unopposed Motion for Final Approval of Settlement and (II) Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Reimbursement Awards.

purchasers of Direxion Fund shares, and the proper measure of damages for Plaintiffs and the absent Class Members. Significantly, unlike most other settlements of securities class actions, this Settlement exhausts the Defendants' underlying insurance *and* includes a substantial payment by Defendants in addition to the insurance available.  Moreover, after extensive notice and an opportunity for Class Members to request exclusion or object, to date no Class Members have opted out and no Class Members have objected to the Settlement, the Plan of Allocation, the request for attorneys' fees and reimbursement of expenses, or the request for reimbursement awards for Plaintiffs.  Joint Decl. ¶¶ 7, 69-70.

By any and all measures, the Settlement is an excellent recovery for the Class.

## REASONS FOR THE SETTLEMENT

The principal reason for the Settlement is the significant benefit it provides to the Class now.  This benefit must be weighed against the risk that the Class would receive a much smaller recovery or no recovery at all had Plaintiffs elected to continue litigating through class certification, summary judgment, trial, and inevitable appeals, to say nothing of the years of delay that such continued litigation would cause.

Plaintiffs' decision to settle this matter was informed by a thorough understanding of the strengths and weaknesses of the claims and defenses in the Action, gained through extensive and rigorous prosecution of this matter.  In assessing whether the Settlement is in the best interest of the Class, Plaintiffs and Lead Counsel evaluated, among other things: (i) the cash benefit to Settlement Class Members under the terms of the Stipulation; (ii) the difficulties and risks involved in proving the elements of these complex and highly technical claims to a jury, such as the falsity and materiality of the alleged misstatements and omissions, and whether the alleged misstatements and omissions in fact caused the Class's losses; (iii) the likelihood of defeating Defendants' summary judgment motion and any *Daubert* motion, and ultimately prevailing at

2

trial; (iv) the delays inherent in such litigation, including appeals; and (v) the uncertainty in Plaintiffs' theory of damages, even assuming that Plaintiffs could establish Defendants' liability.

Although Plaintiffs believe that Defendants misrepresented the nature and extent of the risk of holding Direxion Fund shares for more than one trading session, Defendants have raised multiple factual and legal challenges increasing the uncertainty of a favorable outcome absent settlement. Securities actions are notoriously complex and difficult to prove, and this case is no exception to the general rule. In particular, although Plaintiffs are confident in the merits of their claims, an appeal from the District Court's dismissal of a similar action, *In re ProShares Trust*, could well cause this Court to reconsider its prior decision denying Defendants' motion to dismiss. Moreover, even though Plaintiffs' claims survived dismissal, Plaintiffs still faced the possibility that the Court would not grant or would limit class certification or reject Plaintiffs' damages analysis, or that Defendants would prevail on summary judgment or at trial.

By settling the Action now, Plaintiffs and the Class can share in what Plaintiffs believe to be the largest cash settlement of any case involving the issuance of exchange traded funds. Further, although Defendants deny each and all of Plaintiffs' claims and contentions, they have concluded that it is desirable to fully and finally resolve this Action in the manner and on the terms set forth in the Stipulation. For Defendants, resolution of the Action limits further expense and inconvenience and eliminates the uncertainty and risks inherent in any litigation.

Having considered the foregoing and evaluating Defendants' defenses, Plaintiffs and Lead Counsel respectfully submit that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class. At minimum, the Settlement appropriately balances the substantial risks, costs, and delays inherent in complex cases, falls within the range of reasonableness, and thus warrants judicial approval. The Settlement provides significant all-cash

3

compensation for the Class and eliminates the genuine and significant risk that continued litigation may result in a smaller recovery or possibly no recovery at all.

The proposed Plan of Allocation provides that claimants are to recover *pro rata* from the Net Settlement Fund based on their "Recognized Losses," as that term is defined in the Plan of Allocation. Joint Decl. at ¶ 50. The Plan of Allocation provides that the Recognized Losses for purchasers of TZA and BGZ shares will be discounted to 20% of their computed value in recognition of the Court's prior dismissal of those Funds from the Action. Thus, the proposed Plan of Allocation will fairly allocate the Net Settlement Fund among the Class Members who timely submit valid Proofs of Claim in proportion to their Recognized Losses and will appropriately take into account the status of the TZA and BGZ claims.

For all the reasons discussed more fully below, Plaintiffs and Lead Counsel respectfully request that the Court approve the proposed Settlement and the proposed Plan of Allocation.[3]

## PROCEDURAL BACKGROUND

### A.  Procedural Background

The Joint Declaration, which accompanies this motion, sets forth in detail the factual and procedural background of this case and the events that led to the Settlement.

### B.  Plaintiffs' Substantive Allegations

The factual allegations of the Complaint have been set forth at length in the Court's decision on Defendants' motion to dismiss. *See In re Direxion Shares ETF Trust*, No. 09 Civ. 8011 (KBF), 2012 U.S. Dist. LEXIS 29709 (S.D.N.Y. Mar. 6, 2012). This case is a putative class action in which Plaintiffs alleged that Direxion's registration statement and prospectus

---

[3] Concurrently, Plaintiffs are filing a motion for approval of attorneys' fees and reimbursement of litigation expenses together with a supporting memorandum of law.

supplements (the "Offering Documents") contained false and misleading statements and omissions regarding the Direxion Funds.   Specifically, Plaintiffs alleged that Defendants materially misrepresented or failed to disclose the risk that investors who held Direxion Fund shares for longer than a single trading period were subject to undisclosed volatility risks, compounding and rebalancing risks, holding period risks, and hedging risks.   Plaintiffs further alleged that investors who held Direxion Fund shares for longer than a single trading period suffered losses when these risks materialized.   Although the Action was initially brought on behalf of a class consisting of all persons or entities who acquired shares of the Direxion Bear Funds FAZ, ERY, BGZ and TZA, the Court dismissed the claims on behalf of TZA and BGZ holders because none of the individual Plaintiffs had personally invested in those Funds.

Defendants countered Plaintiffs' allegations by arguing that (i) the offering documents did not contain any material misrepresentations or omissions; (ii) the risks of investing in Direxion Funds were adequately disclosed; (iii) the Funds closely tracked their underlying indices on a daily basis; (iv) that the Direxion Funds could appropriately be held for periods much longer than a single trading session; and (v) Plaintiffs would be unable to disprove Defendants' negative causation arguments and establish damages.   Defendants vigorously denied that *any and all* of Plaintiffs' losses after the first trading session should or could be attributed to *any* alleged misstatement in or omission from the Direxion Funds Prospectuses.[4]

## ARGUMENT

---

[4] The parties' disagreement over damages is the subject of Defendants' pending motion for summary judgment.

## I.     FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

### A.     Applicable Standard

The settlement of claims brought by a certified class is subject to court approval after reasonable notice and hearing. *See* Fed. R. Civ. P. 23(e)(1)-(2). A court will approve a class action settlement if it is "fair, adequate, and reasonable and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). This determination falls within the Court's sound discretion. *See Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000); *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991); *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003). The Court must examine both the substantive terms and the negotiating process leading to the settlement, *see Wal-Mart*, 396 F.3d at 116 (citations omitted), while keeping in mind the strong judicial policy in favor of settlements, particularly in the class action context. *See id.* at 116-17; *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 214 (CM), 2012 U.S. Dist. LEXIS 90289, at *11 (S.D.N.Y. June 27, 2012). In complex class actions, "courts have long recognized that such litigation 'is notably difficult and notoriously uncertain,' and that compromise is particularly appropriate." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (internal citations omitted).

### B.     The Settlement Was Negotiated at Arm's-Length and is Supported by Plaintiffs and Experienced Counsel

A strong presumption of procedural fairness attaches to a class action settlement reached in "arms' length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *In re Bear Stearns Cos. Inc. Sec., Derivative and Erisa Litig.*, 08 MDL No. 1963, 2012 U.S. Dist. LEXIS 161269, at *12 (S.D.N.Y. Nov. 8, 2012); *also In re PaineWebber*

*Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)

The recommendations of counsel who negotiated the settlement are accorded great weight. *See*

*In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012).

That presumption of fairness and adequacy easily applies here. The Settlement was

negotiated at arm's-length by sophisticated counsel with experience in class action and complex

securities litigation before an experienced mediator and near the end of an extensive discovery

process. Those negotiations were mediated by Judge Phillips, an experienced and highly

qualified mediator in the field of complex securities litigation. *See D'Amato*, 236 F.3d at 85

("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings

were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570,

576 (S.D.N.Y. 2008) (judge's involvement supports a finding of procedural fairness).

Further, the Settlement was reached after the parties had engaged in extensive and

meaningful discovery, thereby acquiring a firm and thorough understanding of the strengths and

weaknesses of their respective positions. Both sides produced and reviewed over 100,000 pages

of documents, subpoenaed documents from over a dozen third parties, took numerous

depositions, and exchanged extensive and complex expert reports and analyses. Except for

expert depositions, discovery was substantially complete. Joint Decl. ¶¶ 18-26. *See Best Buy*

*Stores*, 2012 U.S. Dist LEXIS 90289, at \*11-\*12 (holding that a settlement reached after full

discovery and arm's-length negotiations between experienced counsel was procedurally fair).

Under these circumstances, the Settlement meets the standard for procedural fairness.

**C.     The Settlement Terms are Fair, Reasonable and Adequate Under the**
         ***Grinnell* Factors**

To determine whether the substantive terms of the settlement are fair, reasonable and

adequate, Second Circuit courts consider the "*Grinnell* factors": (1) the complexity, expense and

likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *See Wal-Mart*, 396 F.3d at 117 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). Not every factor must be satisfied; the Court should consider the totality of the factors in light of the particular circumstances of the case. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).

The Settlement satisfies the *Grinnell* factors and warrants the Court's final approval.

### 1.   The Complexity, Expense and Likely Duration of the Action Justifies the Settlement

"[I]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *IMAX*, 283 F.R.D. at 189 (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)) (internal quotation marks omitted); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006) ("Due to its notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials.").

Settlement is appropriate at this time in light of the sheer complexity of the claims and defenses in this Action and the complex and unique financial instruments at issue. The parties have disagreed throughout the litigation on a number of key factual and legal issues, including

whether Direxion's Offering Documents adequately described the nature of and magnitude of the risks of investing in Bear Funds for periods longer than a day, whether the alleged misstatements and omissions caused Plaintiffs' losses, and the proper method for calculation of damages (including in particular whether Defendants could or should be liable for all of Plaintiffs' losses after the first day of their investments).

Further, there is considerable uncertainty regarding the future trajectory of this litigation. At the time of the Settlement, both Plaintiffs' motion for class certification and Defendants' motion for summary judgment had been fully briefed and were awaiting decisions from the Court. Although Plaintiffs believe a class could properly be certified, the Court's decision on the issue was uncertain given the complexities of the issues raised with respect to damages and loss causation. Even presuming Plaintiffs' class certification motion was granted, additional issues relating to damages and loss causation would require extensive expert discovery and testimony, adding considerably to the complexity, expense and duration of this Action and calling on the jury to determine a "battle" of experts. In addition to the hotly contested substantial questions concerning the adequacy of Defendants' disclosure regarding these highly technical investments, there was considerable risk that the Court would reject Plaintiffs' argument that Defendants could be liable for all of their losses after the first day of their investments. Ultimately, regardless of how the Court decided either Plaintiffs' motion for class certification or Defendants' summary judgment motion, appeals to the Second Circuit were highly likely.[5] In

---

[5] To complicate matters further, at the time of Settlement, Judge Koeltl's decision dismissing another case concerning leveraged ETFs, *In re ProShares Trust Securities Litigation*, 1:09-cv-06935-JGK, was on appeal to the Second Circuit. Although Plaintiffs believe that the disclosures in *ProShares* are different (as echoed by both this Court and Judge Koeltl), the pendency of the *ProShares* appeal adds to the uncertainty. Likewise, the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, No. 11-864, 2013 U.S. LEXIS 2544 (Mar. 27, 2013), raised the risk that the Plaintiffs' inability to prove damages on a (continued...)

sum, continuing with this Action would have necessitated expert depositions, pre-trial proceedings, trial itself, and almost certainly appeals.

Finally, continued litigation would significantly delay or reduce any recovery Plaintiffs might hope to eventually obtain. The litigation expenses incurred to date exceed $ 367,891.53. By protracting litigation, counsel on both sides would be required to expend significantly more time and to incur significant additional expenses, which would only serve to dissipate the limited insurance proceeds. Thus, even if Plaintiffs were to prevail on appeal, there might be little or nothing to recover. Moreover, any potential recovery, in the absence of a settlement, would occur years in the future, substantially delaying payment to Class Members.

By contrast, a settlement at this time greatly maximizes the recovery of available insurance proceeds for the Class, *see In re Global Crossing*, 225 F.R.D. at 456-57, and offers the opportunity to provide definite recompense to the Class now, rather than at some point in the future. *See In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *17-*18 (S.D.N.Y. May 1, 2008); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) (noting that "even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery") (citation omitted).[6]

---

(...continued)

class-wide basis might have precluded class certification had this case not been settled pursuant to an agreed-upon Plan of Allocation.

[6] *See also Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be (continued...)

In short, this case has been pending for nearly four years, but recovery by any means other than settlement would be difficult, complex, uncertain, and would certainly require additional, protracted and highly adversarial litigation. Accordingly, an $8 million settlement at this juncture represents an immediate and substantial tangible recovery without the considerable risk, expense and delay of trial and likely appeals.

### 2.     The Reaction of the Class to the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *45 (S.D.N.Y. Nov. 5, 2010); *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695, 2007 U.S. Dist. LEXIS 85629, at *21-*22 (S.D.N.Y. Nov. 7, 2007). Pursuant to the Court's Preliminary Approval Order, Class Members were notified that they had until April 19, 2013 to request exclusion from the Class or object to the Settlement.

Thus far, the Class' reaction to the Settlement has been overwhelmingly positive. To date, only two investors have sought exclusion from the Class. In addition, to date, no member of the Class has objected to the Settlement. *See* Affidavit of Edward J. Sincavage Regarding (A) Mailing of the Notice and Proof of Claim, (B) Publication of the Summary Notice, and (C) Report on Requests for Exclusion and Objections, ("Sincavage Aff.") ¶ 13, attached as Exhibit 1 to the Joint Decl.

Following preliminary approval, a class action settlement is considered "presumptively reasonable" and those objecting to the Settlement bear "a heavy burden of demonstrating that [it]

---

(...continued)

best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action").

is unreasonable." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) (citations omitted); *see also* 4 NEWBERG ON CLASS ACTIONS § 11:58 (4th ed. 2002) (general objections without factual or legal substantiation do not carry weight); Fed. Prac. & Proc. § 1797.1 (proving that in class action settlement dispute "[o]nly clearly presented objections . . . will be considered"). Presently, one month after notice was furnished to the Class and just two weeks prior to the deadline to object, no Class Member has objected to the Settlement. On or before May 3, 2013, Plaintiffs will respond to any objections that may be filed hereafter.

### 3. Plaintiffs had Sufficient Information to Make Informed Decisions as to Settlement

The third *Grinnell* factor, the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, considers whether "the parties have 'obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.'" *In re Bear Stearns*, 2012 U.S. Dist. LEXIS 161269, at *17 (quoting *In re AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *37); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679, at *9-*10 (S.D.N.Y. Aug. 6, 2010).[7]

Plaintiffs and Lead Counsel entered into the Settlement with a full understanding of the Action's strength and weaknesses. That understanding is derived from Lead Counsel's efforts in

---

[7] *See also See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *36-*37 ("relevant inquiry . . . is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement"); *Global Crossing*, 225 F.R.D. at 458 ("question is whether the parties had adequate information about their claims"); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), MDL-1339, 2004 U.S. Dist. LEXIS 14822, at *40 (S.D.N.Y. July 30, 2004) ("The investigation, discovery, and motion practice conducted to date provide Plaintiffs with sufficient information to make an informed judgment on the reasonableness of the settlement proposal.") (internal quotation marks and citation omitted).

this litigation, which included, among other things: (1) a comprehensive, intensive, original and independent pre-filing investigation; (2) the filing of the initial consolidated complaint, the Second Consolidated Amended Class Action Complaint, and the Third Consolidated Amended Class Action Complaint; (3) preparing and filing extensive briefing in opposition to two motions to dismiss by Defendants; (4) propounding and serving extensive discovery on Defendants and over a dozen third-parties; (5) reviewing and analyzing tens of thousands of pages of documents and data; (6) retaining and consulting with financial and mathematics experts; (7) preparing and taking the depositions of Defendants and relevant third parties; (8) defending the depositions of the individual Plaintiffs; (9) fully briefing and arguing a motion for class certification, which included the submission of several supporting expert reports and analyses; (10) preparing an extensive brief in opposition to Defendants' Motion for Summary Judgment; (11) preparing a brief in opposition to Defendants' motion for a stay or to certify for interlocutory appeal; (12) participating in two separate mediation sessions – the first with Michael Young, Esquire, an experienced and well-regarded mediator, and a second successful session with Judge Phillips; (13) negotiating the terms of the Stipulation; and (14) preparing papers in support of preliminary approval of the Settlement.  Joint Decl. ¶¶ 6, 12-36.  Thus, the late stage of the litigation and the amount of discovery completed to date factor in heavily in favor of the Settlement.

Given the foregoing, Lead Counsel was extremely knowledgeable of the relevant issues, strengths and weaknesses of the Action, and had abundant information to intelligently negotiate the terms of the Settlement.

### 4.    Plaintiffs Faced Significant Risks in Establishing Liability

In analyzing the risk to Plaintiffs in establishing liability, the Court does not "need to decide the merits of the case or resolve unsettled legal questions." *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006) (internal quotations and alterations omitted).  Rather,

the Court weighs the likelihood of success on the merits against the relief provided by the Settlement. *Id.* Courts routinely approve settlements where plaintiffs would face such significant legal and factual obstacles to success. *See Global Crossing*, 225 F.R.D. at 459.

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of substantially contested litigation. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in a securities action presented significant hurdles to proving liability).

Although Plaintiffs successfully defended Defendants' motion to dismiss, Plaintiffs nonetheless would have faced significant risks in establishing liability at trial in front of a jury. At the time the proposed Settlement was reached, Plaintiffs' motion for class certification was fully briefed and pending before the Court. In the event that the motion was granted, there remained an inherent uncertainty that Plaintiffs and Lead Counsel would face in proving that the Offering Documents contained material misstatements and omissions for their Securities claim. Defendants forcefully argued that the "daily" feature of the ETFs was fully and adequately disclosed in the original registration statement and in the November 3, 2008, December 9, 2008, and especially the voluminous April 10, 2009, prospectus supplements and detailed Statements of Additional Information.

As the Court recognized in its January 27, 2012, Opinion & Order denying Defendants' motion to dismiss, the April 10 Supplement fully disclosed that the Funds were "not appropriate

14

for investors who intend to hold positions" for longer than a single trading day.  The Court
referred to the bold-face warnings on the cover page of the April 10 Supplement, which were
reiterated throughout the April 10 Supplement.  *See* Jan. 27, 2012, Opinion at 7-10 [Dkt. No.
85].[8]  Even the cover page of  the December 9, 2008 Prospectus Supplement disclosed, among
other things, that the Funds "seek ***daily leveraged*** investment results."  In a bold-face section
entitled "Daily Rebalancing and Market Volatility Risk," the December 9 Supplement stated:

> "[e]ach Fund seeks to provide a return which is multiple of the daily
> performance of its benchmark. No Fund attempts to, and no Fund should be
> expected to, provide returns which are a multiple of the return of benchmark
> for periods longer than a single day."

December 9 Supplement, at 12 (emphasis original).

Additionally, Defendants argued that additional, enhanced disclosures would not have
made any difference as evidenced by the fact that one of the Plaintiffs did not read the
disclosures prior to purchase while other Plaintiffs and certainly other putative class members
continued to invest in the ETFs after enhanced disclosures were provided in the April 10, 2009
prospectus supplement.

Plaintiffs would also bear the burden of showing that the evidence they elicited during
discovery was sufficient to establish their claims despite any credible defenses.  Although
Plaintiffs believe that the documentary and testimonial evidence would support their claims,
there is no way to determine without substantial additional litigation whether such evidence
would withstand Defendants' summary judgment motion, and convince a jury to accept
Plaintiffs' theory over Defendants' competing narrative.  Jury reactions to Plaintiffs' proofs (and

---

[8] Certainly, in light of those disclosures, there was no basis for Plaintiffs to allege that the April 10
Supplement itself misstated or omitted any material information concerning the Direxion Funds.

the Defendants' responses thereto) on the type of complex issues in this Action are inherently difficult to predict. Although Plaintiffs were optimistic that they would have been able to support their claims with qualified and persuasive expert testimony, Defendants would have presented highly experienced experts to support their various defenses to liability.

### 5.   Plaintiffs Faced Significant Risks in Establishing Damages

Loss causation and damages in securities litigation are often difficult to establish and proof is typically reduced to a battle of the experts. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 29, 2003) (noting that "proof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury"); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) ("Typically, the magnitude of damages becomes a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury.").

Even if Plaintiffs were successful at proving liability at trial, there would have been significant challenges in proving damages. Plaintiffs initially would have had a challenge in tracing the losses in the investments to the alleged misstatements and omissions in the offering documents. Defendants vigorously disputed whether Plaintiffs would be entitled to recover ***all*** their damages after the first day of trading, arguing instead that their recovery should be reduced by -3 times the underlying index movements during their entire holding periods. The dispute over the method of calculation had dramatic effects on damages: as the Court is aware, Defendants argued in their motion for summary judgment that some Plaintiffs' (and presumably many Class members') damages would disappear entirely. Additionally, the damages provisions of Section 11(e) of the Securities Act gave Defendants a right to set off any amount of loss caused by factors other than the omissions and misstatements in the offering documents, which would necessitate complex (and potentially confusion) expert testimony at trial.

The parties' respective experts also differed on the method and amount by which Defendants would be permitted to offset the Plaintiffs' damages. Plaintiffs' expert argued that, consistent with Plaintiffs' allegations regarding the deficiencies in the disclosures of the appropriate holding period in the Funds, Defendants could reduce an investor's loss by the amount attributable to an incorrect directional investment only on the first day of the investment. Under that theory, any losses after the first day were attributable to Defendants' failure to disclose the nature and magnitude of the risks of holding investments in the Bear Funds beyond a single trading session. By contrast, Defendants' expert argued that Defendants would be entitled to seek a reduction in the investors' statutory damages for the amounts attributable to any incorrect directional investment decision for each investor's entire holding period. Given that the parties' experts differed widely concerning these issues and the proper calculation of damages, Plaintiffs faced a great risk that a jury might be swayed by Defendants' expert (or merely unable to resolve the "battle of experts"). *See Bear Stearns*, 2012 U.S. Dist. LEXIS 161269, at *21. Thus, even if the Action were permitted to go to trial, it is not possible to determine which expert (if either) the jury would find more credible.[9]

Finally, Plaintiffs' experts have been unable to calculate aggregate damages for the Class as a whole. The fact that damages may have to be ascertained on an individual basis would not have been sufficient to defeat the pending motion for class certification. *See N.J. Carpenters*

---

[9] *See e.g. In re PaineWebber*, 171 F.R.D at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad non-actionable factors such as general market conditions."). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

*Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 167 (S.D.N.Y. 2011) (noting that Rule 23 does not expressly require a comprehensive damage model and "in this context, 'the plain language of section 11(e) prescribes the method of calculating damages . . . and the statutory scheme requires courts to apply the prescribed formula in every section 11 case.'") (quoting *McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1048 (2d Cir. 1995)). *See also Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010) (noting, in a non-section 11 case, that "the hunt for assets capable of satisfying [defendant's] obligations to the plaintiffs is at present a predominant concern and is common to all the members of all the classes"); *See N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 U.S. Dist. LEXIS 92597, at *12 (S.D.N.Y. Aug. 16, 2011); *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 108 (S.D.N.Y. 2011). However, it certainly would have raised practical difficulties in enforcing a potential judgment against Defendants.

Accordingly, there was a very real risk that, if litigation were to continue, the Class would have recovered an amount significantly less than the $8 million – or even nothing at all. In light of the risks in calculating and proving damages, approval of the Settlement is warranted.

### 6.   Risks of Maintaining Class Action Status Through Trial

Although Plaintiffs moved to certify the Class and believe that the case is appropriate for class treatment, the class certification motion was hotly contested by Defendants. As the Court is aware, Defendants raised several challenges to class certification and even if Plaintiffs' motion were granted, it is entirely plausible that Defendants would move to decertify the class before trial or on appeal at the conclusion of trial. A district court has the discretion to reevaluate the appropriateness of class certification at any time, and there is no assurance it would have been

maintained if initially certified.[10] Thus, there is always a risk that Plaintiffs would not have been able to maintain class status through trial or that, at the very least, the continued challenges to the appropriateness of class certification would lead to further battles of the experts. *See Bear Stearns*, 2012 U.S. Dist. LEXIS 161269, at *22.

### 7. Ability of Defendants to Withstand Greater Judgment

The Court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement. However, the ability to withstand a greater judgment alone does not render the Settlement unreasonable. *See D'Amato*, 236 F.3d at 86 (the ability to withstand higher judgment, "standing alone, does not suggest that the settlement is unfair"); *In re IMAX Sec. Litig.*, 283 F.R.D. at 191 ("[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate.") (quoting *In re Sony SXRD Rear Projection TV Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *23).

The settlement amount represents almost all that Plaintiffs could hope to achieve under the circumstances. Were this case not settled now and were it to proceed to trial and likely post-trial appeals, it is uncertain whether Defendants would be able to withstand a moderately greater judgment at the end of the litigation, whether there would be any remaining insurance proceeds at that point, and what the financial condition of each individual Defendant might be. Thus, resolving the case now, while Defendants can afford to pay, is another benefit of the Settlement.

---

[10] *See* Fed. R. Civ. P. 23(c); *Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification. This factor indicates that settlement is advantageous to the class at this time.").

8.     **The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The "range of reasonableness" for a settlement "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Bear Stearns*, 2012 U.S. Dist. LEXIS 161269, at *23-*24 (quoting *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012)). *Accord Wal-Mart*, 396 F.3d at 119. In evaluating the adequacy of the settlement amount, "the Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *33 (citation omitted). *See also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) (the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

With this standard in mind, the proposed settlement amount represents a substantial percentage of the best possible recovery Plaintiffs could hope to achieve under the circumstances. The proposed settlement amount is also eminently reasonable in light of all the attendant risks of litigation discussed above, including the risk of non-recovery. As detailed above, Plaintiffs would face significant challenges in establishing liability and, even if the liability question were answered favorably, there would be considerable, if not insurmountable, difficulties in demonstrating and proving damages to the Class.

D.     **The Plan of Allocation is Fair, Reasonable, and Adequate**

To be approved, the Plan of Allocation also must be fair, reasonable, and adequate. An allocation plan formulated and recommended by experienced and competent class counsel, such as the one here, "'need only have a reasonable, rational basis.'" *Bear Stearns*, 2012 U.S. Dist.

LEXIS 161269, at *27 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). There is no requirement that a plan of allocation must adhere strictly to the statutory formula for calculating damages.

In addition, "[a]llocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39 (quoting *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 429 (S.D.N.Y. 2001)); *Telik*, 576 F. Supp. 2d at 580 ("reasonable plan may consider the relative strength and values of different categories of claims") (quoting *Global Crossing*, 225 F.R.D. at 462 (internal quotation marks omitted)).

If approved by the Court, the proposed Plan of Allocation, fully described in the Notice, will govern how the Net Settlement Fund will be distributed among the Class members who submit timely and valid Claim Forms (the "Authorized Claimants"). Lead Counsel developed the Plan of Allocation in close consultation with Plaintiffs' damages expert. The Plan of Allocation reflects Plaintiffs' damages expert's analyses, including a review of publicly available information and trading records subpoenaed from the Authorized Participants in the Direxion Funds during the Class Period. Plaintiffs and Lead Counsel believe the Plan provides a fair and reasonable method to equitably allocate the Net Settlement Fund among the Authorized Claimants. Joint Decl. ¶¶ 48-51.

The Net Settlement Fund will be distributed *pro rata* to Authorized Claimants based upon their Recognized Losses (to be calculated by the Claims Administrator). The proposed Plan of Allocation is consistent with Plaintiffs' theory of the case. Only shares held for two trading sessions or longer are eligible to receive settlement benefits and all shares held for less than two trading sessions are excluded from the loss calculation, regardless of whether there was

a gain or a loss. The two-day holding period is fully consistent with Plaintiffs' theory that Direxion Fund purchasers were exposed to an increasing risk of loss as their holding period grew longer. While it might be theoretically possible to compute losses after just one day, the cost of doing so – which would require the Claims Administrator to obtain intra-day pricing data for all four Direxion Funds for each and every day of the Class Period to compare each Claimant's actual loss to the expected return of -3x the underlying market movements – would overwhelm the Settlement Fund and leave little or nothing for distribution to Authorized Claimants. Further, under the Plan, all short transactions (short sales and covers) are excluded from the loss calculation. For all remaining transactions, a Claimant's Recognized Loss depends on the purchase price, the NAV on the date of purchase, the expected return based on the benchmark index performance if shares were sold one day after purchase, the holding period, the sale price, and the actual return on the investment.

Each Authorized Claimant's Recognized Loss is also based in part on which Direxion Fund shares he or she acquired. The Plan of Allocation provides that the Recognized Losses on TZA and BGZ shares will be discounted to 20% of their computed value, while the Recognized Losses on FAZ and ERY shares will not be discounted. Such discounts that take into consideration the relative strengths and weaknesses of particular claims are appropriate.

Courts routinely approve plans of allocation where the distribution of settlement proceeds weighs in favor of one set of class members. *See In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09-cv-1293 (VLB), 2012 U.S. Dist. LEXIS 116930, at *23-*24 (D. Conn. Aug. 20, 2012) ("Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim.") (internal quotation marks and citations omitted); *In re Am. Int'l Grp., Inc. Sec. Litig.*,

No. 04 Civ. 8141 (DAB), 2012 U.S. Dist LEXIS 13784, at \*17 (S.D.N.Y. Feb. 2, 2012)

(approving plan of allocation in which "[t]hose who purchased common stock and options will

recover a larger portion of the Settlement than those who purchased the bonds, in recognition of

the particular risks involved in establishing loss causation and market efficiency for the bonds");

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, at

\*15 (N.D. Cal. Nov. 26, 2007) (approving proposed plan of allocation in which '33 Act class

members received 95% of the net settlement fund and '34 Act class members received five

percent of the net settlement fund because the '34 Act claims were dismissed with prejudice but

the '33 Act claims were still active at the time of settlement.).[11]

Accordingly, the discount here is appropriate because at the time of settlement, the Court

had ruled that Plaintiffs did not have the authority to assert claims on behalf of purchasers in

TZA and BGZ and those Funds were dismissed. Essentially, these Funds were no longer part of

---

[11] *See also Veeco,* 2007 U.S. Dist. LEXIS 85629, at \*39 ("Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim.") (internal quotation marks and citations omitted); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243, 2005 U.S. Dist. LEXIS 27077, at \*77-78 (N.D. Tex. Nov. 8, 2005) (plan of allocation does not have to treat all class members equally); *In re Lucent Techs. Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004) (approving a plan of allocation that provided for different recoveries to class members depending on whether their stock was sold before or after partial disclosures); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668-69 (E.D. Va. 2001) (plan of allocation that included a 10% discount for one set of class members and a 5% premium for another "sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue"); *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000) ("appropriate to weigh 'distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set' that was more likely to succeed") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 133; *In re Sapiens Sec. Litig.*, No. 94 Civ. 3315, 1996 U.S. Dist. LEXIS 17644, at \*6-7 (S.D.N.Y. Nov. 26, 1996) (approving plan of allocation providing for 30% discount for shares sold during portion of class period); *In re Michael Milken.*, 150 F.R.D. at 54-55 (approving global settlement in which one class received benefits not received by other two classes); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1411 (E.D.N.Y. 1985) ("If one set of claims had a greater likelihood of ultimate success than another set of claims, it is appropriate to weigh distribution of the settlement in favor of plaintiffs whose claims comprise the set that was more likely to succeed.") (internal quotation marks and citations omitted).

the Action and TZA and BGZ shareholders would have had no recovery if Plaintiffs were ultimately successful in litigation.

Plaintiffs and Lead Counsel submit that the Plan of Allocation represents a fair and equitable method for allocating the Net Settlement Amount among members of the Class, and should be given final approval by the Court.

### E.    Notice to the Class Satisfies Due Process Requirements

The Notice program provides the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quoting Fed. R. Civ. P. 23(c)(2)).  In accordance with the Preliminary Approval Order, the Claims Administrator Heffler Claims Group LLC ("Heffler") caused the Court-approved Notice and Proof of Claim forms to be mailed by first class mail to potential Class Members.  Sincavage Aff. ¶¶ 4-8; *see also* Joint Decl. ¶ 38.  As of April 4, 2013, Heffler has disseminated a total of 79,027 Notice Packets to Potential Class Members.  Sincavage Aff. ¶ 8.

On March 8, 2013, the Court-approved Summary Notice was published in *Investor's Business Daily* and issued electronically over PR Newswire.  *Id.* at ¶ 12; *see also* Joint Decl. ¶ 39.  The Notice and Proof of Claim, along with other important documents related to the Settlement, were also posted on the Claims Administrator's website www.DirexionFundSettlement.com (the "Website") for easy downloading by interested investors.  Sincavage Aff. ¶ 9.  The Website includes an email link that allows Class Members to obtain information about the Settlement, request a Notice Packet, or seek assistance from Heffler with their claims.   As of the date of the accompanying Sincavage Affidavit, Heffler has handled 26 emails from claimants.  *Id.* at ¶ 11.  Although the deadline for submitting claims will not

24

expire until May 17, 2013, as of the date of the accompanying Sincavage Affidavit, Heffler already has received 4,128 claims. *Id.*

Heffler also established a toll-free telephone hotline with live operators to assist potential Class members with questions about the Settlement during business hours and an option to leave voice messages after business hours. *Id.* at ¶ 10. As of the date of the Sincavage Affidavit, Heffler has received 111 telephone calls. *Id.* at ¶ 11.

Moreover, as is required in class actions, the Class has been given notice of the proposed Settlement and Plan of Allocation, as well as the rights of Class members and the method and dates by which they can object to, or opt-out of, the Settlement. *Id.* at ¶¶ 8-9, 12. The Class has been advised of the date of the final fairness hearing, at which time they will have an opportunity to be heard with respect to any objection raised. Joint Decl. ¶ 40; *see also* Sincavage Aff. ¶ 9.

Lastly, the notice procedures utilized in this case – publication and direct mail – were "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). Thus, the method of notice described above satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. *See Eisen*, 417 U.S. at 173.

**CONCLUSION**

For all the foregoing reasons set forth herein and in the Joint Declaration, Plaintiffs respectfully request that the Court: (1) approve the proposed Settlement as fair, reasonable, and adequate; (2) approve the proposed Plan of Allocation as fair, reasonable, and adequate; and (3) enter the accompanying proposed Final Judgment and Order of Dismissal with Prejudice.

Dated: April 5, 2013                                     Respectfully submitted,

                                                        /s/ Mark C. Rifkin

Mark C. Rifkin
rifkin@whafh.com
Maja Lukic
lukic@whafh.com
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY  10016
Phone:  (212) 545-4600
Fax:  (212) 545-4653

Kenneth G. Gilman
kgilman@gilmanpastor.com
**GILMAN LAW LLP**
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Phone: (239) 221-8301
Fax: (239) 676-8224

*Co-Lead Counsel for the ERY
Plaintiffs and the Class*

William B. Federman
wbf@federmanlaw.com
Stuart Emmons
swe@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112

*Lead Counsel for the FAZ
Plaintiffs and the Class*